1
2
3
4
5
6

**STEPHEN F. HENRY, ESQ.**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@SHenrylaw.com

**Attorney for Plaintiff**

7
8
9

UNITED STATES DISTRICT COURT

FOR

THE NORTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19

| | |
|---|---|
| PAUL SOMERS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DIGITAL REALTY TRUST INC., a Maryland corporation, ELLEN JACOBS, an individual, and DOES ONE through TEN, inclusive,<br><br>Defendants. | Case No.<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES FOR**<br>1. **Disparate Treatment and Retaliation in Violation of Title VII;**<br>2. **Whistleblower Retaliation (18 U.S.C.§ 1514A(a)(1); 15 U.S.C. § 78u-6(h);**<br>3. **Wrongful Termination In Violation of Public Policy;**<br>4. **Breach of Contract;**<br>5. **Defamation**<br><br>**AND DEMAND FOR JURY TRIAL** |

20
21
22

Plaintiff PAUL SOMERS ("Plaintiff"), for causes of action against defendants DIGITAL REALTY TRUST, INC., ELLEN JACOBS, and Does One through Ten, inclusive, alleges in this Complaint for Damages ("Complaint") as follows:

23

**THE PARTIES**

24
25

1.      Plaintiff, a citizen of the United States of America, is and at all relevant times to this litigation has been a resident of the Country of Singapore.

26
27
28

2.      Defendant Digital Realty Trust Inc. ("Defendant Digital") is a corporation incorporated in the State of Maryland with its principal place of business in San Francisco, California.

3.     Defendant Ellen Jacobs ("Defendant Jacobs") is a n individual conducting business in San Francisco, California

4.     Plaintiff is ignorant of the true names and capacities of the defendants sued in this litigation as Does One through Ten, inclusive and, as a result, sues these defendants by these fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities of these defendants once they have been ascertained.  Plaintiff is informed and believes and thereupon alleges that each of the fictitiously named defendants is in some manner responsible for the injuries and damages to Plaintiff alleged in this litigation.

5.     Plaintiff is informed and believes and thereupon alleges that at all times relevant to this litigation, defendants, and each of them, were the agents, servants, and employees of their codefendants, and that these defendants, in doing the things mentioned in this Complaint, were acting within the course and scope of their authority as such agents, servants, and employees, and were acting with the permission and consent of their codefendants.

## JURISDICTION AND VENUE

6.     Plaintiff incorporates by reference each of the allegations contained in paragraphs 1 through 5 above, as well as facts currently unknown.

7.     This case arises, in part, under federal statutes including  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000C, et. seq. Therefore, this court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1331.

8.     Jurisdiction over the defendants, and each of them, exists because each of the defendant entities named in this litigation are present and operating within the jurisdictional limits of the County of San Francisco and the judicial jurisdiction of this Court, and each of the individual defendants named in this litigation are employed within the jurisdictional limits of the County of San Francisco and the judicial jurisdiction of this Court.

9.     Venue is proper because the employment relationship between Plaintiff and defendants, and each of them, that gave rise to some of the claims in this litigation was directed, and ultimately terminated, by employees of Defendant within this judicial district and most or all of the wrongful acts and omissions complained of in this litigation took place here.  Venue is

also proper because most or all of the acts and omissions that occurred outside of the above employment relationship and are complained of in this litigation took place within this judicial district.

## FACTUAL ALLEGATIONS

10.    On or about July 6, 2010, Defendant Digital hired Plaintiff as Vice President, Portfolio Management.

11.    Plaintiff has 25 years of experience in the development, operations and financial reporting of institutional-grade real estate globally.

12.    Plaintiff is openly gay.

13.    Defendant Digital operates as a real estate investment trust. It owns, acquires, develops and manages technology-related real estate, has an enterprise value of $14 billion and annual revenues of over $1.5 billion.  Defendant's 145 properties are located in North and South America, Europe and Asia Pacific supported by approximately 800 employees.

14.    At the time of his termination, Plaintiff was paid an annual salary of $203,641.50. In addition, Mr. Somers earned greater than his annual target bonus 35% of his salary every year of employment. Plaintiff was holding stock grants valued at $628,967 as of April 9, 2014.

15.    After he was hired by Defendant Digital, Plaintiff was assigned to Defendant's European operation and thereafter, as a result of his successful performance, assigned to the number two position in Singapore in order to grow the Asian Pacific (APAC) business. In Singapore he reported to head of the region, Kris Kumar, Senior Vice-President, APAC.

16.    In Asia Pacific, Plaintiff was responsible for establishing and running the daily operations and financial reporting of a highly technical portfolio of 24/7 mission critical multi-tenant data centers.  Under Plaintiff's leadership, the APAC region grew from 10 to 100 employees and the region's real estate square footage from zero to nearly one million square feet; Defendant Digital invested nearly $850 million dollars new buildings and driven in large part by Plaintiff's efforts.

17.     On numerous occasions, Kumar praised Plaintiff s performance and said Plaintiff would be well rewarded when APAC was spun-off in an imminent public offering and when Defendant Digital started investing in a new separate company to invest in emerging properties.

18.     Throughout his career with Defendant Digital, Plaintiff established a consistently superlative record of achievement.

19.     Upon the hiring of Grant Yabsley as VP Sales in late 2012, Plaintiff noticed a distinctly homophobic and discriminatory attitude on the part of Kumar.

20.     Yabsley is single and heterosexual, with no prior data center experience. Nevertheless, Kumar began siphoning of Plaintiff's responsibilities and delegating them to Yabsley and Amandine Wang, another heterosexual new hire with no prior data center experience.

21.     Kumar also began openly antagonizing Plaintiff, and actively sought to isolate him from public events. Kumar stopped asking Plaintiff to attend outside customer events, conferences and data center grand openings because he did not believe that Plaintiff's homosexuality would be publicly accepted.  By contrast, Kumar brought Yabsley, his new inexperienced heterosexual employee, to such events while Plaintiff was not even permitted (though required by company policy) to be involved in or view customer proposals that went out to clients, as he always had done before.  At internal senior-level meetings Kumar took great pains to belittle Plaintiff role in the organization in an effort to render him obsolete. Kumar further undertook a campaign to discredit Plaintiff in the eyes of Defendant Digital, even forcing Plaintiff and his team to engage in a humiliating, three hour "brainstorming session" to justify their purpose in the region.

22.     Shortly before Plaintiff's wrongful termination by Defendant Digital, Plaintiff made complaints to senior management regarding actions by Kumar which eliminated internal controls over certain corporate actions in violation of Sarbanes Oxley.

23.     Shortly before Plaintiff's wrongful termination by Defendant Digital, Plaintiff made complaints to senior management regarding actions by Kumar which were discriminatory and in violation of anti-discrimination laws.

24.    Despite his record of superior achievement, on April 9, 2014, Plaintiff was summarily terminated based on vague, trivial, and false allegations of misconduct, including allegations that he secretly steered a small video contract to a vendor that employed his brother (who was not an owner) and failing to disclose the relationship - a fact that had been widely disclosed by Plaintiff, though not required.

25.    Plaintiff was terminated within 36 hours of being advised of an investigation into the false allegations described above, without being formally interviewed or being provided an opportunity to tell his side of the story.

26.    Defendant Digital's Code of Conduct, explicitly states that: "An employee accused of violating this Code will be given an opportunity to present his or her version of the events at issue prior to any determination of appropriate discipline."

27.    During his tenure with Defendants, Plaintiff made numerous firsthand observations of serious misconduct by heterosexual males. One example Plaintiff reported to Human Resources involved an employee who owned and ran a chain of yogurt shops on company time.  In fact Mr. Kumar admitted to having proof of this Code of Conduct violation but refused to take action or report the matter, also a violation of the Code of Conduct. Another example involved no-bid contracts given by Mr. Kumar to friend long-time friends and unsubstantiated payments to others in his hometown of Sydney, Australia. Another example involved the hiding of seven million dollars in cost overruns on a development in Hong Kong and a lack of transparency on a new project in Osaka, Japan

28.    Not one of the foregoing matters resulted in discipline of the employee and, in one case, the employee was actually promoted after revealing his costly errors.

29.    Plaintiff was therefore a victim of disparate treatment because of his failure to conform to a male sex-stereotype.

# FIRST CAUSE OF ACTION

## FOR DISPARATE TREATMENT IN VIOLATION OF

## TITLE VII OF THE CIVIL RIGHTS ACT

## INCLUDING RETALIATION

### (Against Defendant Digital and Does One through Ten)

30.     Plaintiff incorporates by reference each of the allegations contained in paragraphs 1 through 29 above, as well as facts currently unknown.

31.     Plaintiff is a gay man.

32.     This cause of action is brought pursuant to Title VII of the Civil Rights Act prohibiting termination of an employee from employment on the basis of gender, which includes sexual orientation. Title VII of the Civil Rights Act prohibits, among other things, discrimination based on gender, including sexual orientation or non-conformance with sex-stereotypes.

33.     Defendant Digital violated Title VII of the Civil Rights Act because Plaintiff, as a gay man suffered an adverse employment action as a result of sex stereotyping, i.e., a failure to conform to a male sex-stereotype, experienced hostile, intimidating and embarrassing conduct from others including his superior Kumar and Ellen Jacobs, Vice President of Human Resources and Corporate Services (IT).. For example:

a.) At a customer event in Singapore, Kumar forced Plaintiff and Adil Atlassey, Vice President of Technology, to accompany him to a well-known brothel and strip club in Singapore known as the "Four Floors of Whores", knowing that Plaintiff, a gay man, would be especially uncomfortable in that setting;

b.) Jacobs unreasonably blocked Plaintiff from rejoining his partner by disallowing his move to London from Dublin where his partner would have been granted a visa by right;

c.) Despite being the second highest ranking executive in the region, Plaintiff was not invited by Kumar to the openings of data centers and other customer functions. ;

d.) Kumar acted contrary to Digital's policies to remove Plaintiff from important job functions and shifted duties to Grant Yabsley and Amandine Wang .  Both Yabsley and Wang were new, lower ranking heterosexual company officers with no data center experience

e) Kumar also began openly antagonizing Plaintiff, and actively sought to isolate him from public events. Kumar stopped asking Plaintiff to attend outside customer events, conferences and data center grand openings because he did not believe that Plaintiff's homosexuality would be publicly accepted.  By contrast, Kumar brought Yabsley, his new inexperienced heterosexual employee, to such events while Plaintiff was not even permitted (though required by company policy) to be involved in or view customer proposals that went out to clients, as he always had done before.

f) At internal senior-level meetings Kumar took great pains to belittle Plaintiff' role in the organization in an effort to render him obsolete. Kumar further undertook a campaign to discredit Plaintiff in the eyes of Defendant Digital, even forcing Plaintiff and his team to engage in a humiliating, three hour "brainstorming session" to justify their purpose in the region.

g) Defendant Digital terminated Plaintiff for pretextual reasons.

34.    Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. On or around August 27, 2014, Plaintiff received a Notice of Right To Sue.

35.    At all times mentioned in this complaint Plaintiff was fully qualified for Plaintiff's position.

36.    Defendant discriminated against Plaintiff because of Plaintiff's sexual orientation in that he was treated differently than straight persons.

37.    Plaintiff believes and alleges that Plaintiff's sexual orientation was a substantial and determining factor in defendant employer's decision to terminate Plaintiff.

38.    Defendant's termination and other adverse employment actions towards Plaintiff as alleged in this complaint constitute an unlawful employment practice in violation of Title VII of the Civil Rights Act.

39.    Further, pursuant to 42 USC § 2000e–3(a), Defendant was precluded from retaliating against and/or terminating Plaintiff "because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  In response to Plaintiff's complaints, Defendant and its agents have retaliated against and refused to gainfully employ Plaintiff, to Plaintiff's detriment.

CASE NO.                                          7               COMPLAINT FOR DAMAGES

40.     As a direct, foreseeable, and proximate result of defendants' discriminatory acts, Plaintiff has suffered and continues to suffer substantial losses in earnings and job benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount in excess of $1,000,000 plus benefits and stock options, the precise amount of which will be proven at trial.

41.     Because the acts taken toward Plaintiff were carried out by, condoned by and or ratified by managerial employees or managing agents acting in a deliberate, cold, callous, fraudulent, malicious, oppressive, and intentional manner in order to injure and damage Plaintiff, Plaintiff requests the assessment of punitive damages against Defendant in an amount appropriate to punish and make an example of Defendant.

42.     Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

43.     WHEREFORE, Plaintiff requests relief as hereinafter provided.

## SECOND CAUSE OF ACTION

## FOR WHISTLEBLOWER RETALIATION

### 18 U.S.C.§ 1514A(a)(1); 15 U.S.C. § 78u-6(h)

### (Against Defendant Digital and Does One through Ten)

44.     Plaintiff repeats and realleges para. 1 through 29, and incorporates them by reference as though fully reproduced in this cause of action.

45.     At all relevant time periods, Plaintiff was an employee of Defendant Digital.

46.     Plaintiff complained to Defendant Digital's officers, directors, and/or managing agents that certain of Kumar's activities violated requirements for internal controls established by of the Sarbanes-Oxley Act of 2002.

47.     Defendant's termination of Plaintiff was in violation of the Sarbanes-Oxley Act of 2002 which makes it illegal to fire or otherwise discriminate against an employee for providing information of a violation of a rule of the Securities and Exchange Commission or any provision of federal law relating to fraud against shareholders, 18 U.S.C.§ 1514A(a)(1), including when the

employee provides information or assistance to someone with "supervisory authority over the employee" or with authority to "investigate, discover, or terminate misconduct" as Plaintiff did.

48.     The Dodd-Frank Act protects all covered employees from retaliation for … (c) "making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002," the Securities Exchange Act of 1934, or "any other law, rule, or regulation subject to the jurisdiction of the [SEC]." 15 U.S.C. § 78u-6(h).

49.     The Dodd-Frank anti-retaliation provision, 15 U.S.C. § 78u-6(h)(1)(A), provides that "[n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower."

50.     On April 9, 2014, Defendant Digital terminated Plaintiff, substantially motivated by the complaints detailed above.

51.     As a legal and proximate result of Defendants' actions, Plaintiff has suffered special and general damages in an amount to be proven, but in excess of $1,000,000 plus benefits and stock options.  In addition, Plaintiff is entitled to two times the amount of back pay otherwise owed with interest; and (iii) compensation for litigation costs, expert witness fees, and reasonable attorneys' fees.

### THIRD CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

#### (Against Defendant Digital and Does One through Ten)

52.     Plaintiff incorporates by reference each of the allegations contained in paragraphs 1 through 51 above, as well as facts currently unknown.

53.     Plaintiff alleges that Plaintiff's termination was wrongful because it was in violation of the public policy of the United States in that Plaintiff's termination was in retaliation for Plaintiff's opposing and reporting illegal activity, as described in preceding allegations.

54.     Plaintiff further alleges that Defendant's termination of Plaintiff was in violation of The Sarbanes-Oxley Act of 2002 which makes it illegal to fire or otherwise discriminate against an employee for providing information of a violation of a rule of the Securities and

Exchange Commission or any provision of federal law relating to fraud against shareholders. 18 U.S.C.§ 1514A(a)(1), including when the employee provides information or assistance to someone with "supervisory authority over the employee" or with authority to "investigate, discover, or terminate misconduct" as Plaintiff did.

55.     Plaintiff further alleges that Defendant's termination of Plaintiff was in violation of the public policy as expressed in Title VII of the Civil Rights Act prohibiting termination of an employee from employment on the basis of gender.

56.     As a direct, foreseeable, and proximate result of defendant's wrongful termination of Plaintiff in violation of the public policy of the State of California, Plaintiff has lost and will continue to lose income and benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort all to Plaintiff's damage, in excess of $1,000,000 plus benefits and stock options, the precise amount of which will be proven at trial.

57.     Because the acts taken toward Plaintiff were carried out by, condoned by and or ratified by managerial employees or managing agents acting in a deliberate, cold, callous, malicious, oppressive, and intentional manner in order to injure and damage Plaintiff, Plaintiff requests the assessment of punitive damages against Defendant in an amount appropriate to punish and make an example of Defendant.

**FOURTH CAUSE OF ACTION**

**BREACH OF CONTRACT OF EMPLOYMENT**

**(Against Defendant Digital and Does One through Fifty)**

58.     Plaintiff incorporates by reference each of the allegations contained in paragraphs 1 through 29 above, as well as facts currently unknown.

59.     Plaintiff was employed with Defendant under a contract that was partly written and partly implied.

60.     The terms of the contract relied on by Plaintiff included but were not limited to:

1.     Personnel policies which provided that:

     i.     If an employee was performing unsatisfactorily the employee would be

1        disciplined in accordance with defendant employer's progressive

2        disciplinary steps;

3     ii.   Employees would be treated fairly and in accordance with applicable

4        employment laws;

5     iii.   Plaintiff had a contract of employment for so long as Plaintiff performed

6        Plaintiff's job in a satisfactory manner, and demotion or discharge could

7        only be for good cause proven and then would be carried out only in

8        accordance with the stated written policies of Defendant.

9     iv.   Defendant would pay appropriate Cost of Living Allowances for residence

10       in more expensive cities.

11     v.   Defendant would arrange and pay for all activities related to repatriation to

12       the United States after termination of employment.

13   61.   Defendant breached its contract with Plaintiff by:

14     i.   Refusing to give Plaintiff the opportunity to succeed at Plaintiff's job;

15     ii.   Failing to treat Plaintiff in accordance with Defendant's stated policies;

16     iii.   Terminating Plaintiff in breach of the promises made to Plaintiff;

17     iv.   Terminating Plaintiff without following Defendant employer's policies and

18       practices

19     v.   Terminating Plaintiff without good cause;

20     vi.   Failing to reimburse Plaintiff's expenses upon termination;

21     vii.   Failing to pay appropriate Cost of Living Allowances for residence in

22       Dublin and Singapore;

23     viii.   Failing to recognize the validity of Plaintiff's relationship with partner by

24       paying Cost of Living Allowances for residence in Dublin and

25       Singapore at similar rates to single employees in region.

26     ix.   Failing to properly address financial and legal issues created by Defendant

27       Digital's wrongful termination, including:

28       a.   allowing the IRS to seize Plaintiff's bank account;

b. refusal to pay travel expenses owed to Plaintiff;

c. failing to pay state unemployment insurance and file wages reports for 46 consecutive months and for failing to register Plaintiff as a new hire in the first 20 days of employment with the Illinois Department of Employment Security;

d. refusing to assume lease obligation payments and cost monthly maintenance of expat apartment;

e. failing to file submittals to Singapore 's tax authority resulting in Plaintiff's being stranded in Singapore for 90 days .

f. failing to acknowledge Singapore tax and custom laws by demanding Plaintiff risk crossing immigration and customs checkpoint  prior to receiving proper legal clearance.

62.     Defendant has refused and continues to refuse to allow Plaintiff the benefits of the employment contract and to perform under this contract in the agreed on manner.

63.     As a direct, foreseeable, and proximate result of Defendant's breach, Plaintiff has suffered and continues to suffer substantial losses in earnings, bonuses, and job benefits, and expenses incurred in the search for comparable employment in an amount not less than $1,000,000 plus the value of benefits and stock options, the precise amount of which will be proven at trial

64.     WHEREFORE, Plaintiff demands judgment against Defendant and Does One through Fifty, and each of them, as set forth in this Complaint.

### FIFTH CAUSE OF ACTION

### DEFAMATION

### (Against Defendant Digital, Ellen Jacobs, and Does One through Ten)

65.     Plaintiff incorporates by reference each of the allegations contained in paragraphs 1 through 29 above, as well as facts currently unknown.

66.     Plaintiff complains against Defendant Digital, Jacobs, and Does 1 through 10,

inclusive, and realleges all the allegations contained in the complaint, and incorporates them by reference into this cause of action as though fully set forth herein.

67.     Plaintiff is informed and believes Defendants, and each of them, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally caused excessive and unsolicited internal and external publications of defamation, of and concerning Plaintiff, to third persons and to the community. These false and defamatory statements included express and implied: accusations that Plaintiff violated company policies, that he was a poor performer, that he was violating Singapore law by "squatting", and that he was violating immigration laws.  These and other similar false statements expressly and impliedly stated that Plaintiff was a poor performer.

68.     While the precise dates of these publications are not known to Plaintiff, he believes the publications may have started in March 2014, for the improper purpose of retaliating against him and were later published and foreseeably republished to first cause, and then justify, Plaintiff's wrongful and illegal termination. These publications were outrageous, negligent, reckless, intentional, and maliciously published and republished by Defendants, and each of them. Plaintiff is informed and believes that the negligent, reckless, and intentional publications by Defendants, and each of them, were and continue to be, foreseeably published and republished by Defendants, their agents and employees, recipients, in the community. Plaintiff hereby seeks damages for these publications and all foreseeable republications discovered up to the time of trial.

69.     During the above-described time-frame, Defendants, and each of them, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know. Those third person(s) to whom these Defendants published this defamation are believed to include, but are not limited to, other agents and employees of Defendants, and each of them, and the community, all of whom are known to Defendants, and each of them, but unknown at this time to Plaintiff.

70.     The defamatory publications consisted of oral and written, knowingly false and

unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation. These publications included the following false and defamatory statements (in violation of Civil Code §§ 45 and 46(3)(5)) with the meaning and/or substance that Plaintiff: violated company policies, that he was a poor performer, that he was violating Singapore law by "squatting", and that he was violating immigration laws.. These and similar statements published by Defendants, and each of them, expressly and impliedly asserted that Plaintiff was a poor employee.

71.     Plaintiff is informed, believes and fears that these false and defamatory per se statements will continue to be published by Defendants, and each of them, and will be foreseeably republished by their recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal reputations. Plaintiff also seeks redress in this action for all foreseeable republications, including him own compelled self-publication of these defamatory statements.

72.     The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendants, and each of them, but unknown to Plaintiff at this time.

73.     None of Defendants' defamatory publications against Plaintiff referenced above are true.

74.     The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and each of them, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

75.     Each of these false defamatory per se publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in

order to justify the illegal and cruel actions of Defendants, and each of them, to cause further damage to Plaintiff's professional and personal reputation, to cause him to be fired, to justify his firing, and to retaliate against Plaintiff.

76.    Each of these publications by Defendants, and each of them, were made with knowledge that no investigation supported the unsubstantiated and obviously false statements. The Defendants, published these statements knowing them to be false, unsubstantiated by any reasonable investigation and the product of hostile witnesses. These acts of publication were known by Defendants, and each of them, to be negligent to such a degree as to be reckless. In fact, not only did Defendants, and each of them, have no reasonable basis to believe these statements, but they also had no belief in the truth of these statements, and in fact knew the statements to be false. Defendants, and each of them, excessively, negligently, and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

77.    The above complained-of publications by Defendants, and each of them, were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, him reputation, employment and employability. Defendants, and each of them, published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy him reputation. Therefore, no privilege existed to protect any of the Defendants from liability for any of these aforementioned publications or republications.

78.    As a proximate result of the publication and republication of these defamatory statements by Defendants, and each of them, Plaintiff has suffered injury to him personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

79.    Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for

an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights. All actions of Defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the Defendants, and each of them. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendants, and each of them, for these wanton, obnoxious, and despicable acts in an amount based on the wealth and ability to pay according to proof at time of trial.

80.     WHEREFORE, Plaintiff requests relief as hereinafter provided.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     For monetary damages against Defendants, and each of them, in an amount sufficient to compensate Plaintiff for loss of income, loss of benefits, loss of use, for emotional distress, and for the injury and damage that Defendants have caused to Plaintiff's name and reputation;

2.     For double back pay damages for all violations of the Sarbanes Oxley Act;

3.     For punitive damages against Defendants in an amount sufficient to deter them from engaging in similar misconduct toward other employees, and to make an example of them to others who may otherwise be inclined to engage in such wrongful conduct;

4.     For costs of suit incurred herein, including Plaintiff's reasonable attorneys' fees, expert witness expenses and fees, and other costs and expenses that Plaintiff has been forced to incur to prosecute this action under all applicable statutory or contractual bases;

5.     For injunctive relief, as the Court may deem proper.

6.     For such other, further relief, as the Court may deem proper.

Dated: November 21, 2014

STEPHEN F. HENRY, ESQ.

By: /s/ Stephen Henry_____
STEPHEN F. HENRY
Attorney for Plaintiff

CASE NO.                                16        COMPLAINT FOR DAMAGES

1

Plaintiff demands trial by jury in this action.

2

Dated: November 21, 2014

3                                    STEPHEN F. HENRY, ESQ.

4

5                                    By: /s/ Stephen Henry_____

6                                    STEPHEN F. HENRY
                                     Attorney for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28