UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SOMERS,<br><br>    Plaintiff,<br><br>    v.<br><br>DIGITAL REALTY TRUST INC, et al.,<br><br>    Defendants. | Case No. 14-cv-05180-EMC  (KAW)<br><br>**ORDER REGARDING FIFTH DISCOVERY LETTER; DENYING DEFENDANTS' MOTION TO STRIKE FIFTH DISCOVERY LETTER**<br><br>Re: Dkt. Nos. 164, 165 |

On November 28, 2016, Plaintiff Somers filed a joint discovery letter, regarding a dispute over the deposition of Mr. Scott Peterson. (Discovery Letter, Dkt. No. 164.) Mr. Peterson is a co-founder of Defendant Digital Realty Trust, Inc., and its Chief Investment Officer. (*Id.* at 4.) Plaintiff seeks to compel Mr. Peterson's deposition, while Defendants request that the Court enter a protective order prohibiting Plaintiff from noticing Mr. Peterson's deposition. (*Id.* at 4, 5.) On November 29, 2016, Defendants filed objections and a motion to strike, on the ground that the joint discovery letter filed by Plaintiff made material omissions and substantive changes, including modifying the order of paragraphs and omitting a declaration by Mr. Peterson. (Mot. to Strike, Dkt. No. 165.) The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b). Having reviewed the papers filed by the parties and the relevant legal authority, the Court resolves the parties' discovery disputes as set forth below.

**I.    LEGAL STANDARD**

Federal Rule of Civil Procedure 30(a)(1) provides that, subject to certain limitations, "[a] party may, by oral questions, depose any person, including a party, without leave of court . . . ." Per Rule 26(c)(1), however, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." The party

1   seeking the protective order has the burden of showing good cause by "demonstrating harm or
2   prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th
3   Cir. 2004).
4       "When a party seeks the deposition of a high-level executive (a so-called 'apex'
5   deposition), the court may exercise its discretion under the federal rules to limit discovery."
6   *Affinity Labs of Tex. v. Apple, Inc.*, No. C 09-4436 CW, 2011 WL 1753982, at *15 (N.D. Cal. May
7   9, 2011); *see also Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). Such
8   discretion may be warranted because "such discovery creates a tremendous potential for abuse or
9   harassment." *Apple Inc.*, 282 F.R.D. at 263 (internal quotation omitted). In deciding whether an
10  apex deposition may proceed, courts consider: (1) whether the deponent has unique, first-hand,
11  non-repetitive knowledge of the facts at issue in the case, and (2) whether the party seeking the
12  deposition has exhausted less intrusive discovery methods. *Id.* Thus, "[w]here a high-level
13  decision maker removed from the daily subjects of the litigation has no unique personal
14  knowledge of the facts at issue, a deposition of the official is improper." *Groupion, LLC v.*
15  *Groupon, Inc.*, No. 11-870 MEJ, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012) (internal
16  quotation omitted). This is especially the case where the information sought can be obtained
17  through less intrusive discovery methods, such as by interrogatory or depositions of lower-level
18  employees with more direct knowledge of the facts at issue. *Id.* Courts in this district have,
19  however, reiterated that "it is very unusual for a court to prohibit the taking of a deposition
20  altogether absent extraordinary circumstances. When a witness has personal knowledge of facts
21  relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *Apple Inc.*,
22  282 F.R.D. at 263 (internal quotation omitted); *see also Powertech Tech., Inc. v. Tessera, Inc.*, No.
23  C 11-6121 CW, 2013 WL 3884254, at *1 (N.D. Cal. July 26, 2013).

## II.   DISCUSSION

25      In the instant case, Plaintiff seeks to depose Mr. Peterson, who is a co-founder and senior
26  executive of Digital Realty. (Discovery Letter at 4.) Plaintiff contends that following Plaintiff's
27  termination, Mr. Peterson called Plaintiff on his personal cell phone to try and resolve the situation
28  before a lawsuit could be filed. (*Id.* at 3.) During this phone call, Mr. Peterson allegedly

"communicate[d] his dismay at Plaintiff's termination," "assist[ed] in getting meetings set up with the CEO in San Francisco and the new regional head in Singapore," "discuss[ed] the circumstances of Plaintiff's termination and the false allegation of misconduct against Plaintiff," "g[a]ve Plaintiff insight into his views on employees in human resources," and "discuss[ed] a settlement agreement" with Plaintiff. (*Id.* at 3-4.) Mr. Peterson, in turn, has submitted a declaration which states that he was not involved in the decision to hire or terminate Plaintiff, and that he has no personal knowledge of the circumstances resulting in Plaintiff's termination. (Peterson Decl. ¶¶ 3-4, Dkt. No. 165-2.) Mr. Peterson also states that his phone call with Plaintiff was done solely to explore a settlement possibility, and that he did not communicate dismay, assist in setting up any meetings, discuss the circumstances of Plaintiff's termination, or give Plaintiff insight into employees in human resources. (Peterson Decl. ¶¶ 5-6.)

The Court finds that Mr. Peterson does not have first-hand knowledge of the relevant facts in this case. Plaintiff's complaint concerns his termination on the basis of allegedly false claims of misconduct, which occurred after Plaintiff complained to senior management about discriminatory actions by his superior, Mr. Kris Kumar. (First Amended Compl. ¶¶ 15, 22, 23, 24, FAC, Dkt. No. 51.) He also alleges disparate treatment "because of his failure to conform to a male sex-stereotype," and that Defendants engaged in defamation by stating that Plaintiff violated company policies, was a poor performer, violated Singapore law, and violated immigration laws. (FAC ¶¶ 29, 68.) Based on Plaintiff's own description of Mr. Peterson's relevant knowledge, however, there is no showing that Mr. Peterson has first-hand knowledge of any of these events.[1] (*See* Discovery Letter at 4.) Mr. Peterson has also stated under penalty of perjury that he was not involved in hiring Plaintiff, managing his performance, or terminating his employment. (Peterson Decl. ¶ 3.) At most, Mr. Peterson contacted Plaintiff to discuss his termination and a possibility of settlement, but Plaintiff does not suggest that Mr. Peterson had any unique, first-hand information

---

[1] Plaintiff cites to "[c]opies of Plaintiff's interactions with Mr. Peterson" in support of his request to depose Mr. Peterson, but does not attach any of these exhibits. (*See* Discovery Letter at 4.) Because Plaintiff did not provide these exhibits to either the Court or Defendants, the Court cannot consider these exhibits. (*See* Discovery Letter at 6 ("Defendants note that Defendants have not seen Plaintiff's exhibits").

about the events that occurred prior to his termination, or about the termination itself. Instead, Mr. Peterson's unique, first-hand knowledge is, based on Plaintiff's own description of Mr. Peterson's expected testimony, limited solely to his post-termination communications with Plaintiff, when Mr. Peterson was attempting to settle Plaintiff's claims. Such communications would not be admissible in this action to prove liability for any claim that Mr. Peterson was attempting to settle. *See* Fed. R. Evid. 408 ("Evidence of [a settlement offer or negotiations regarding a claim] is not admissible . . . to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount").

Moreover, even if Mr. Peterson had first-hand information regarding the circumstances of Plaintiff's termination and any alleged defamation, the Court is not persuaded that Mr. Peterson has *unique* knowledge of such events. Plaintiff's complaint focuses on actions taken by other individuals such as Mr. Kumar, Mr. Grant Yabsley, Ms. Amandine Wang, Mr. Adil Atlassey, and Defendant Jacobs. (*See* FAC ¶ 33.) Thus, Plaintiff can depose individuals who were directly involved or witnesses to the alleged discriminatory events and termination, or the claimed defamation. In the alternative, Plaintiff can notice a Rule 30(b)(6) deposition directed to Digital Realty itself, who would then be required to designate an individual to testify on its behalf. Such a deposition, however, would not require Mr. Peterson to be the designated individual. In short, there are less-intrusive discovery methods that Plaintiff can engage in to obtain relevant information.

Accordingly, the Court DENIES Plaintiff's request to depose Mr. Peterson, and GRANTS Defendants' request for a protective order.

///
///
///
///
///
///
///

1      The Court has also reviewed Defendants' motion to strike the discovery letter.  Following
2 the filing of Defendants' motion, Plaintiff filed Mr. Peterson's declaration, which Plaintiff states
3 was inadvertently left out of the original filing.  (Dkt. No. 166.)  Because the Court has ruled on
4 the joint discovery letter, the Court DENIES Defendants' motion to strike as moot.  The parties are
5 advised, however, that joint letters must be approved and signed by *both* parties *prior* to filing, and
6 that parties are not to make modifications to the other party's portion of a joint letter absent
7 express permission by the other party.

IT IS SO ORDERED.

Dated: December 8, 2016

_____
KANDIS A. WESTMORE
United States Magistrate Judge