FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PAUL SOMERS,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>DIGITAL REALTY TRUST INC.,<br>a Maryland corporation;<br>ELLEN JACOBS,<br>*Defendants-Appellants*. | No. 15-17352<br><br>D.C. No.<br>3:14-cv-05180-EMC<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted November 16, 2016
San Francisco, California

Filed March 8, 2017

Before: Mary M. Schroeder, Kim McLane Wardlaw, and
John B. Owens, Circuit Judges.

Opinion by Judge Schroeder;
Dissent by Judge Owens

## SUMMARY[*]

### Dodd-Frank Act

The panel affirmed the district court's denial of the defendant's motion to dismiss a whistleblower claim brought under the Dodd-Frank Act's anti-retaliation provision.

Following the approach of the Second Circuit, rather than the Fifth Circuit, the panel held that, in using the term "whistleblower," Congress did not intend to limit protections to those who disclose information to the Securities and Exchange Commission. Rather, the anti-retaliation provision also protects those who were fired after making internal disclosures of alleged unlawful activity under the Sarbanes-Oxley Act and other laws, rules, and regulations. The panel agreed with the Second Circuit that, even if the use of the word "whistleblower" in a last-minute addition to the anti-retaliation provision created uncertainty, an SEC regulation resolved any ambiguity, and was entitled to deference.

Dissenting, Judge Owens agreed with the Fifth Circuit. He wrote that *King v. Burwell*, 135 S. Ct. 2480 (2015) (holding that terms can have different operative consequences in different contexts), on which the majority and the Second Circuit relied in part, should be quarantined to the specific facts of that case.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Brian T. Ashe (argued) and Tamara H. Fisher, Seyfarth Shaw LLP, San Francisco, California; Kyle A. Petersen, Seyfarth Shaw LLP, Chicago, Illinois; for Defendants-Appellants.

Stephen F. Henry, Esq. (argued), Berkeley, California, for Plaintiff-Appellee.

Stephen G. Yoder (argued), Senior Litigation Counsel; Anne K. Small, General Counsel; Sanket J. Bulsara, Deputy General Counsel; Michael A. Conley, Solicitor; Thomas J. Karr, Assistant General Counsel; Security and Exchange Commission, Washington D. C.; as and for Amicus Curiae.

**OPINION**

SCHROEDER, Circuit Judge:

**INTRODUCTION**

This appeal presents an issue of securities law that has divided the federal district and circuit courts. It results from a last-minute addition to the anti-retaliation protections of the Dodd-Frank Act ("DFA") to extend protection to those who make disclosures under the Sarbanes-Oxley Act and other laws, rules, and regulations. 15 U.S.C. § 78u-6(h)(1)(A)(iii). The underlying issue is whether, in using the term "whistleblower," Congress intended to limit protections to those who come within DFA's formal definition, which would include only those who disclose information to the Securities and Exchange Commission ("SEC"). *See* 15 U.S.C. § 78u-6(a)(6). If so, it would exclude those, like the

plaintiff in this case, who were fired after making internal disclosures of alleged unlawful activity.

The Fifth Circuit was the first to weigh in on the question and strictly applied DFA's definition of "whistleblower" to the later anti-retaliation provision, so as to require dismissal of the plaintiff's action in that case because he did not make his disclosures to the SEC. *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 621 (5th Cir. 2013). It therefore rejected the SEC's regulation adopting a contrary interpretation. *Id.* at 630.

The Second Circuit, viewing the statute itself as ambiguous, applied *Chevron* deference to the SEC's regulation. *Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 155 (2d Cir. 2015). That regulation, in effect, interprets the provision to extend protections to all those who make disclosures of suspected violations, whether the disclosures are made internally or to the SEC. 17 C.F.R. § 240.21F-2.

The district court in this case followed the Second Circuit's approach, denied Defendant's motion to dismiss, and certified an interlocutory appeal. We agree with the district court that the regulation is consistent with Congress's overall purpose to protect those who report violations internally as well as those who report to the government. This intent is reflected in the language of the specific statutory subdivision in question, which explicitly references internal reporting provisions of Sarbanes-Oxley and the Securities Exchange Act of 1934 ("Exchange Act"). In view of that language, and the overall operation of the statute, we conclude that the SEC regulation correctly reflects congressional intent to provide protection for those who make

internal disclosures as well as to those who make disclosures to the SEC. We therefore affirm.

## BACKGROUND

Plaintiff-Appellee, Paul Somers, was employed as a Vice President by Defendant-Appellant, Digital Realty Trust, Inc. ("Digital Realty"), from 2010 to 2014. According to Somers's complaint in district court, he made several reports to senior management regarding possible securities law violations by the company, soon after which the company fired him. Somers was not able to report his concerns to the SEC before Digital Realty terminated his employment.

Somers subsequently sued Digital Realty, alleging violations of various state and federal laws, including Section 21F of the Exchange Act. That section, entitled "Securities Whistleblower Incentives and Protection," includes the anti-retaliation protections created by DFA. Digital Realty sought to dismiss the DFA claim on the ground that, because Somers only reported the possible violations internally and not to the SEC, he was not a "whistleblower" entitled to DFA's protections.

The district court, in a published opinion, denied Digital Realty's motion to dismiss the DFA claim. The court conducted an extensive analysis of the statutory text, DFA's legislative history, and the procedural and practical implications of harmonizing the narrow definition of "whistleblower" with the broad protections of the anti-retaliation provision. *Somers v. Dig. Realty Tr. Inc.*, 119 F. Supp. 3d 1088, 1100–05 (N.D. Cal. 2015). The court observed that "[a]t bottom, it is difficult to find a clear and simple way to read the statutory provisions of Section 21F in

perfect harmony with one another." *Id.* at 1104. Having analyzed the tension between the definition and anti-retaliation provisions, the district court deferred to the SEC's interpretation that individuals who report internally only are nonetheless protected from retaliation under DFA. *Id.* at 1106. The district court certified the DFA question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), *id.* at 1108, and we subsequently granted Digital Realty's Petition for Permission to Appeal.

## DISCUSSION

The case must be seen against the background of twenty-first century statutes to curb securities abuses. Congress enacted the Sarbanes-Oxley Act in 2002, following a major financial scandal. Its purpose was "[t]o safeguard investors in public companies and restore trust in the financial markets following the collapse of Enron Corporation." *Lawson v. FMR LLC*, 134 S. Ct. 1158, 1161 (2014). As a key part of its safeguards, Sarbanes-Oxley requires internal reporting by lawyers working for public companies. *See* 15 U.S.C. §7245. This is in addition to internal reporting by auditors, which was already mandated by the Exchange Act. *See* 15 U.S.C. § 78j-1(b). Further, Sarbanes-Oxley requires that companies maintain internal compliance systems that include procedures for employees to anonymously report concerns about accounting or auditing matters. *See* 15 U.S.C. § 78-j-1(m)(4), 7262. It also provides protections to these and other "whistleblower" employees in the event that companies retaliate against them. 18 U.S.C. § 1514A(a). Sarbanes-Oxley expressly protects those who lawfully provide information to federal agencies, Congress, or "a person with supervisory authority over the employee." *Id.*

SOMERS V. DIGITAL REALTY TRUST 7

Like Sarbanes-Oxley, DFA was passed in the wake of a financial scandal—the subprime mortgage bubble and subsequent market collapse of 2008. *See* Samuel C. Leifer, Note, *Protecting Whistleblower Protections in the Dodd-Frank Act*, 113 MICH. L. REV. 121, 129–30 (2014) (discussing the mortgage crisis and Congress's response). In enacting DFA, Congress said the main purposes included "promot[ing] the financial stability of the United States by improving accountability and transparency in the financial system" and "protect[ing] consumers from abusive financial services practices." Pub. L. No. 111-203, 124 Stat. 1376, 1376 (2010). DFA provided new incentives and employment protections for whistleblowers by adding Section 21F to the Securities Exchange Act of 1934. Section 21F defines a whistleblower as, "any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission." 15 U.S.C. § 78u-6(a)(6). This definition thus describes only those who report information to the SEC.

The anti-retaliation provision in question in this case is found in a later subsection of Section 21F. It provides broad protections and states:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> (i) in providing information to the Commission in accordance with this section;

>     (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
>
>     (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 *et seq*.), this chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

15 U.S.C. § 78u-6(h)(1)(A). The issue in this case concerns subdivision (iii), which gives whistleblower protection to all those who make any required or protected disclosure under Sarbanes-Oxley and all other relevant laws.

Subdivision (iii) was added after the bill went through Committee. There is no legislative history explaining its purpose, but its language illuminates congressional intent. By broadly incorporating, through subdivision (iii), Sarbanes-Oxley's disclosure requirements and protections, DFA necessarily bars retaliation against an employee of a public company who reports violations to the boss, i.e., one who "provide[s] information" regarding a securities law violation to "a person with supervisory authority over the employee." 18 U.S.C. § 1514A(a). Provisions of Sarbanes-Oxley and the Exchange Act mandate internal reporting before external reporting. Auditors, for example, must "as soon as practicable, inform the appropriate level of management" of illegal acts, and only after such internal reporting may auditors bring their concerns to the SEC. 15 U.S.C. § 78j-1(b). Leaving employees without protection for that required

SOMERS V. DIGITAL REALTY TRUST 9

preliminary step would result in early retaliation before the information could reach the regulators. As the Second Circuit noted, "[I]f subdivision (iii) requires reporting to the [SEC], its express cross-reference to the provisions of Sarbanes-Oxley would afford an auditor almost no Dodd-Frank protection for retaliation because the auditor must await a company response to internal reporting before reporting to the Commission, and any retaliation would almost always precede Commission reporting." *Berman*, 801 F.3d at 151. Sarbanes-Oxley likewise requires lawyers to report internally, 15 U.S.C. § 7245, and the SEC's Standards of Professional Conduct set forth only limited instances in which an attorney may reveal client confidences to the SEC, 17 C.F.R. § 205.3(d)(2). The attorney would be left with little DFA protection.

That DFA's definitional provision describes "whistleblowers" as employees who report "to the Commission" thus should not be dispositive of the scope of DFA's later anti-retaliation provision. Terms can have different operative consequences in different contexts. *See King v. Burwell*, 135 S. Ct. 2480, 2489 (2015). The use of a term in one part of a statute "may mean [a] different thing[]" in a different part, depending on context. *See id.* at 2493 n.3. This is true even where, as here, the statute includes a definitional provision: "[Statutory d]efinitions are, after all, just one indication of meaning—a very strong indication, to be sure, but nonetheless one that can be contradicted by other indications." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 228 (2012). DFA's anti-retaliation provision unambiguously and expressly protects from retaliation all those who report to the SEC and who report internally. *See King*, 135 S. Ct. at 2493 n.3. Its terms should be enforced.

Reading the use of the word "whistleblower" in the anti-retaliation provision to incorporate the earlier, narrow definition would make little practical sense and undercut congressional intent. As the Second Circuit pointed out, subdivision (iii) would be narrowed to the point of absurdity; the only class of employees protected would be those who had reported possible securities violations both internally and to the SEC, when the employer—unaware of the report to the SEC—fires the employee solely on the basis of the employee's internal report. *See Berman*, 801 F.3d at 151–52. This reading is illogical. Employees are not likely to report in both ways, but are far more likely to choose reporting either to the SEC or reporting internally. *See id*. Reporting to the SEC brings a higher likelihood of a problem being addressed, along with an increased risk of employer retaliation, whereas internal reporting may be less efficient but safer. *Id.* As we have seen, Sarbanes-Oxley and the Exchange Act prohibit potential whistleblowers—auditors and lawyers—from reporting to the SEC until after they have reported internally. *Id.* at 152–53. The anti-retaliation provision would do nothing to protect these employees from immediate retaliation in response to their initial internal report. A strict application of DFA's definition of whistleblower would, in effect, all but read subdivision (iii) out of the statute. We should try to give effect to all statutory language. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (rejecting a statutory construction that would render a term "insignificant, if not wholly superfluous"); *see also Nat. Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1133 (9th Cir. 2016).

We recognize there is intercircuit disagreement. The Second Circuit in *Berman* disagreed with the Fifth Circuit, which had earlier applied the formal definition of

| SOMERS V. DIGITAL REALTY TRUST | 11 |
|---|---|

whistleblower to limit the scope of the anti-retaliation provision. *Asadi*, 720 F.3d at 630. The *Asadi* decision reasoned that if DFA protected the same conduct that Sarbanes-Oxley did, then the Sarbanes-Oxley enforcement scheme would be rendered moot or superfluous, on the theory that no one would use it. *See id.* at 628–29. The Fifth Circuit pointed out that Sarbanes-Oxley lacks DFA's double damage provision, has a shorter statute of limitations, and has more extensive administrative requirements. *Id.* But as the SEC has pointed out in its amicus brief in this case, DFA's enforcement scheme is not more protective in all situations and would not swallow Sarbanes-Oxley because Sarbanes-Oxley offers a different process from DFA. Sarbanes-Oxley may be more attractive to the whistleblowing employee in at least two important ways. First, Sarbanes-Oxley provides for adjudication through administrative review, with the Department of Labor taking responsibility for asserting the claim on the whistleblower's behalf. 18 U.S.C. § 1514A(b)(2). This procedure would likely be significantly less costly and stressful for whistleblowers than having to file an action in federal court, pursuant to DFA's enforcement scheme. *See* 15 U.S.C. § 78u-6(h)(1)(B). Second, while DFA provides for awards of double back pay, 15 U.S.C. § 78u-6(h)(1)(C), Sarbanes-Oxley allows employees to recover "all relief necessary to make the employee whole," including compensation for special damages, 18 U.S.C. § 1514A(c). An employee who has suffered more substantial emotional injury than financial harm would likely be better off with Sarbanes-Oxley's allowance for special damages. *See Jones v. SouthPeak Interactive Corp.*, 777 F.3d 658, 672 (4th Cir. 2015) (joining the Fifth and Tenth Circuits in concluding that emotional distress damages are available under Sarbanes-Oxley as "special damages"). DFA's protection for internal reporting therefore does not render

12          SOMERS V. DIGITAL REALTY TRUST

Sarbanes-Oxley's enforcement scheme superfluous.  The statutes provide alternative enforcement mechanisms.

For all these reasons, we conclude that subdivision (iii) of section 21F should be read to provide protections to those who report internally as well as to those who report to the SEC.  We also agree with the Second Circuit that, even if the use of the word "whistleblower" in the anti-retaliation provision creates uncertainty because of the earlier narrow definition of the term, the agency responsible for enforcing the securities laws has resolved any ambiguity and its regulation is entitled to deference.  In 2011, the SEC issued Exchange Act Rule 21F-2, 17 C.F.R. § 240.21F-2, pursuant to its rule-making authority under 15 U.S.C. § 78u-6(j).  The SEC's rule in our view accurately reflects Congress's intent to provide broad whistleblower protections under DFA.  The Rule says that anyone who does any of the things described in subdivisions (i), (ii), and (iii) of the anti-retaliation provision is entitled to protection, including those who make internal disclosures under Sarbanes-Oxley.  They are all whistleblowers.  The Rule is quite direct: "For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u-6(h)(1)), you are a whistleblower if: . . . [y]ou provide that information in a manner described in [the anti-retaliation provision] of the Exchange Act (15 U.S.C. 78u-6(h)(1)(A))."  17 C.F.R. § 240.21F-2.

The regulation accurately reflects congressional intent that DFA protect employees whether they blow the whistle

internally, as in many instances, or they report directly to the SEC. The district court correctly so recognized.

The judgment of the district court is **AFFIRMED.**

---

OWENS, Circuit Judge, dissenting:

I agree with the Fifth Circuit in *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 621 (5th Cir. 2013), and Judge Jacobs' dissent in *Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 155–60 (2d Cir. 2015), and therefore respectfully dissent. Both the majority here and the Second Circuit in *Berman* rely in part on *King v. Burwell*, 135 S. Ct. 2480 (2015), to read the relevant statutes in favor of the government's position. In my view, we should quarantine *King* and its potentially dangerous shapeshifting nature to the specific facts of that case to avoid jurisprudential disruption on a cellular level. *Cf. John Carpenter's The Thing* (Universal Pictures 1982).