April 11, 2017


VIA ECF

The Honorable Kandis A. Westmore
United States Magistrate Judge for the Northern District of California
Oakland Courthouse, Courtroom 4 – 3rd Floor
1301 Clay Street, Oakland, CA 94612


Judge Westmore,

       In the past month or so Defendants have sent a dozen or so ex parte letters to the Court.  Perhaps I misunderstood the Standing Order but this does not appear to be allowed as it may prejudice one party. Seyfarth Shaw neither notifies me in advance nor copies me on correspondence.


       I am filing this information to memorialize the current state of discovery.  The great rush to finish this stage of litigation is no longer important to the Defendants who are, for reasons that do not add up, going to Supreme Court to try to avoid having Plaintiff's proceed with his claims as a whistleblower.  If it was not apparent before, there is a conflict of interest in the tripartite relationship between Digital Realty, Chubb and Seyfarth.  This case is would not be going to the Supreme Court if it were not for Chubb's desire to shrink the number of potential whistleblowers by forcing then to report to the SEC rather than internally.


       Given this pause, the Court and the parties will have ample time to reorder discovery to ensure neither party has any outstanding issues which would prevent the true facts of this case to be brought to light.  A fair and just trial is will be  based on a honest discovery process. I am sure all parties wish to see the truth in this matter brought forward.


       As it stands today, this case is headed for a seriously unjust conclusion.  I am a single Plaintiff is one person against the world's richest insurance company operating pro se not by choice but by circumstances beyond my control.  The Court must know that he Defendants, not Plaintiff are highly deficient in discovery.  This past week, more misconduct when the Defendant failed to produce a PMK. Mr. Ashe arranged the "long rertired" Ms. Jacobs as the PMK for Digital Realty.  Plaintiff will filing a motion for sanctions on two depositions to recover losses.

This is actual outstanding discovery:

Re: Somers vs. Digital Realty, Case Nos. 3:14-cv-05180

# I.  OUTSTANDING VIOLATIONS OF JULY 8, 2016, ORDER

### A.  PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1

Item  6:  All documents relating to Kris Kumar's termination (of employment agreement). The Defendant is hiding significant information about Mr. Kumar's departure. **Defendants have failed to provide information as to why they filed a lawsuit against Mr. Kumar.**

Item 5:  All documents referring to Plaintiff's alleged violation of Defendant's conflict of interest policy.  No search terms exist.

Item 6:  All documents referring to Plaintiff's termination by Defendant. **No search terms exist.**

Item 28.  All documents mentioning, referring to, pertaining to, or about Plaintiff'a termination by Defendant.  **No search terms exist,** correspondence is being hidden.

### B.  REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2

Items 82, 83  All correspondence related job transfers for Rick Berk and Dana Langston. Disparate treatment.  Defendant  released more documents which are still incomplete.  They fail to provide any information on the reason for Dana

Langston's job change.  It happened for a reason the defendant  is not willing to

disclose.  It is missing all information.  It also appears that a decision was made to

terminate Mr. Berk who is still working at Digital today.  How can it be that no

chatter about this subject is in discovery nor the underlying reasons leading to his

demotion.


**II.  OUTSTANDING DOCUMENTS:**  Defendant ignored Plaintiff's production requests
and based their search terms on claims made in Plaintiff's Complaint, according to Kyle Peterson.
Defense counsel explained to the Court  on March 21, 2017 that they did many more searches but
in fact they only did required searched per the Court orders because we were in limited discovery.
It would take no more than 15 minutes to compare and contrast Plaintiff's requested items against
Defendants search terms to see they are not telling the truth.  The Court will reward Defendant's
intentional misconduct unless this process is halted and reviewed carefully.


    **A. Request  for Production Set. 1,  Items  1-71**    **NOT PRODUCED**

    **B. Request for Production Set. 2, Items 72-111**    **NOT PRODUCED**

**SAMPLE OF HOW DEFENDANT' MISDIRECTED  DISCOVERY RESULTS**

**C.  Plaintiff's Request for  Production of Documents, Set 3**

**Defendants refused to produce all of the following, none of it privileged.**

115. All communications, including but not limited to emails, to or from Rita Da Luz regarding Plaintiff from November 1, 2013 to the present. (VP Human Resources in at HQ)

116. All communications, including but not limited to emails, to or from Janice Tan regarding Plaintiff from November 1, 2013 to the present. (Kumar's assistant)

117. All communications, including but not limited to emails, to or from Melissa Poon regarding Plaintiff from November 1, 2013 to the present. (Plaintiff's assistant)

118. All communications, including but not limited to emails, to or from Grant Yabsley regarding Plaintiff from November 1, 2013 to the present. (Plaintiff's assistant)

119.  All communications, including but not limited to emails, to or from Jihann Peterson regarding Plaintiff from November 1, 2013 to the present. (Involved in termination by Kumar unknowingly)

121. All communications, including but not limited to emails, to or from   Clive Dow regarding Plaintiff from November 1, 2013 to the present. (HR International overseeing local HR consultant)

122.  Defendant's Document Retention policy

123.  The complete Employee File of Kris Kumar.  (Direct Manager to Plaintiff.  Plaintiff reported Kumar for financial misconduct and discrimination, Kumar retaliated with termination)

124. The complete employee file of Rita Da Luz.

126. The complete employee file of Ellen Jacobs

128. Defendant's EEO-1 Surveys from 2009 to Present

**Plaintiff's Request for  Production of Documents, Set 4 (Ignored by Defendants as they did with**

**RFP #3)**

132. All communications, including but not limited to emails, to or from Citibank regarding 63 Cairnhill Circle #15-01 Singapore, from November 1, 2013, to the present.
133. All email and (Lync) text messages to or from all employees of Defendant, referring to Plaintiff between from April 9, 2014 through April 15, 2014
134. All documents filed with or supplied to the SEC Kris Kumar's departure from Digital Realty.
135. All documents, written communications, including but not limited to text, SMS,

email, handwritten notes between Brian Ashe of Seyfarth Shaw and Defendant
Ellen Jacobs on February 28, 2017 from 9:00 am until 3:30 p.m.
136. All written communications, including but not limited to text, SMS, email,
handwritten notes, between Brian Ashe of Seyfarth Shaw and any employee of
Digital Realty on February 28, 2017 form 9:00 a.m. until 3:30 p.m. PST.

137. All invoices and statements for all legal services since December 1, 2013 services
by all law firms, consultants, advisors billed to Digital Realty Trust, Inc. or any
entity affiliated with Digital Realty Trust, Inc.

138. All invoices and statements for all legal services since December 1, 2013 services
by all law firms, consultants, advisors billed to Chubb Insurance Group, Federal
Insurance or any entity affiliated with either party.

139. All agreements, contracts, invoices, and correspondence with Spencer Stuart
regarding the search for a CEO to replace Mike Foust.

140. All agreements, invoices, statements and correspondence from the arbitration
regarding the termination of Kris Kumar's Employment Agreement.

141. All sworn statements, declarations, affidavits or other correspondences regarding
Plaintiff from current or former employees.

142. All documents to support that Plaintiff was preventing his team from working
alongside other departments for example Sales and Acquisitions and demanding
that all conversations or data be passed by him.

143. All documents which support your allegation that Plaintiff is suspicious and
suffers from paranoia.

144. All documents which support your allegation that Plaintiff demonstrated
inconsistent messaging to the team resulting in re-work and confusion.

145. All documents related to internal investigations of Kris Kumar November 1, 2013
to present.

146. All documents evidencing the person or persons who informed Defendant that
Plaintiff allegedly said, "when Mike Foust leaves Digital, Kris will go too
because Mike is Kris' only supporter."

147. All documents which supports your allegation that Sarah Schubert has had
"investigative conversations with Sam Lee, Grant Yabsley, Amandine Wang and
Jihann Pedersen to corroborate what happened."

148. Digital's access control logs for its leased premises Digital's data center at 29A International Business Park, Jurong West, indicating the time of day Sam Lee entered and exited the building on February 10, 11 and 12, 2014.

149. Digital's access control logs information for its leased premises at Ocean Financial Centre indicating the time of day Sam Lee entered and exited the building on February 10, 11 and 12, 2014.

150. Emails and attachments to or from Kris Kumar regarding 2014 compensation recommendations for all non-property level employees in Asia Pac region.

151. Emails and attachments to or from Sarah Schubert regarding 2014 compensation recommendations for all non-property level employees in Asia Pac region.

## III.  Initial Disclosures

A.  **Damages:**  Defendants have yet to provide any estimates of damages for the any retaliatory counterclaims they filed in February 2015. Computation of Damages/Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii)].

B. **Witness Contact Info:**  Defendant also refuses to provide the contact information for the witnesses listed.

## IV.  Interrogatories

Defendant's responses are highly evasive and incomplete on 17 interrogatory responses. The entire set before revision is outstanding.  Defendant failed to fully respond any of the items.

## V.  Inspection of Documents

Inspection of some original documents in Plaintiff's Employee File was refused by Defendant despite a formal request.

## VI.  Privilege Log

Defendants' privilege log is over 320 items and 52 pages long when reproduced at 12 pt.  It is currently in 6 pt. The log fails to follow the requirements of Judge Westmore's Standing Order as follows missing:

> (a)    The title and description of the document, including number of pages or Bates-number range;
>
> (b)    The subject matter addressed in the document;
>
> (c)    The identity and position of its author(s);
>
> (d)    The identity and position of all addressees and recipients;
>
> (e)    The date the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than its author(s);
>
> (f)    The steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication;

## VII.  Depositions

A.   **ELLEN JACOBS:** A sample of Mr. Ashe's behavior during the last deposition makes it clear he was to ensure the deposition was chaotic and unproductive. here to obstruct matters and take up time rather than have Ms. Jacobs answer questions. Plaintiff should reimbursed for his cost of the entire deposition and the cost the longer hotel stay in San Francisco and will seek sanctions of approximately $3700. Plaintiff has been prejudiced and lost the "element of surprise" with

Jacobs on many topics which Mr. Ashe coached her or instructed her not to answer. sk for the Courts agreement that Seyfarth Shaw and the Defendant be sanctioned for the cost of the deposition and 4 hotel room nights required to bridge the weekend until Ms. Jacobs was available. The cost was about $3,500.

B. **PMQ:** The PMQ Deposition was attempted on April 5, 2017.  Presenting Ms. Jacobs was more disrespect by Brian Ashe.

C. **OVERSEAS:**  Plaintiff has several depositions to complete overseas but due to the inability to meet and confer and Defendants' refusal to provide contact details for witnesses, Letters of Request are unable to be produced.

## D.  NARRATIVE OF ITEMS I - VII

## II.  Seyfarth's Search Terms Prove Willful and Pervasive Misconduct.

The Court cannot reward Defendants for very their serious misconduct carried out  by Seyfarth Shaw.  This ignored while the Court drills down into Plaintiff's personal life rescheduling his deposition so he can spend a few days with her for her 80th birthday. The Court "reminds Plaintiff that deposition s are to be very civil events," when, in fact the Plaintiff's behavior is beyond reproach at all times.  The irony is the defense counsel is disruptive, coaches the witnesses, and instructs not to answer legitimate questions.  It would take little effort to review the transcripts for the Court to see the truth, if the Court desires the truth.  The Court is not yet aware that the defendants added more than as year to discovery. The secret search term scheme is in the form of two exhibits improperly attached to the first Joint Letter Discovery Brief in June of 2016.  Plaintiff signed what he thought was the final Joint Letter Discovery

Brief and passed it to Defendant's counsel to be uploaded into ECF.    Before uploading the joint letter, Seyfarth made a material alteration to the document inserting 8 pages which detail search the terms Defendant is now relying on as "approved" but the Court.  <u>SEYFARTH ENGAGED IN A CRIME AT THAT MOMENT</u>.  Defendant's had been using this secret terms for over a year before they decided to bury them into a document hoping no one would notice.  <u>Under any circumstances using a signature on a materially modified document illegal, doing so in conjunction with a filing to a federal judge is not recognized?</u>  Imagine if a pro se litigant had done the same thing.  What would the Court have done?

## III.    Seyfarth Misdirects Their Wrongdoing. Blaming their Search Terms On a Third Party. The Court Ignores the Misconduct.

How can the Court ignore the alarms going off while Seyfarth blames at third party for their misconduct? When I pressed Seyfarth further on the discovery and the secret search terms,   they changed their story once again.   Instead of accepting the blame and finding a solution to produce the documents, Ms Petersen and Mr. Ashe came up with a better idea;  misdirect their misconduct to a third party. What kind of people are we dealing with here should be evident.  Seyfarth attempted to cover up their wrongdoing sending multiple emails each one with more false statements than the last all blaming Mr. Henry.  Mr. Henry had nothing to do with Seyfarth's  scheme.  Mr. Henry has issued a strong Declaration indicating six times that Seyfarth is not telling the truth.   Something is off balance in this situation.  The court ignored this information. At every turn this Court gave Seyfarth the benefit of the doubt and now I am severely prejudiced.    How am I to recover my life from a negligent former employer who is working with the world's richest insurance company and their "panel counsel to bury me."   How is the Court able to allow this to occur even changing the rules mid-stream to cutoff my ability to file for sanctions, wiping out all of defendant's outstanding discovery.  It is impossible to think

a Court would do this when in fact the Court is supposed to give leeway to pro se litigants, not make  it make it more difficult than they would for a lawyer.


Dated: April 11, 2017                                    /s/ Paul Somers
                                                        Paul Somers, Pro Se

| INTERROGATORIES | | | | |
|---|---|---|---|---|
| | NO. OF REQUESTS | COMMENTS | FROM | DATE |
| SET 1 | 21 | improperly numbered as 17 but in fact there are 21 | Digital Realty & Ellen Jacobs | 2/20/2015 |
| SET 2 | 6 | complete | Digital Realty & Ellen Jacobs | 5/22/2015 |
| SET 3 | 6 | complete | Digital Realty & Ellen Jacobs | 06/15/2017 |
| SET 4 | 3 | complete | Digital Realty & Ellen Jacobs | 2/10/2017 |
| SET 5 | 13 | complete | Digital Realty | 3/7/2017 |
| SET 6 | 9 | Only one requires an answer, limit reached | Digital Realty & Ellen Jacobs | 3/7/2017 |
| SET 1a | 22 | 0 answered, limit reached | Digital Realty & Ellen Jacobs | 3/7/2017 |
| | | | | |
| Total | 80 | | | |
| Over limit by | 30 | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| ADMISSIONS | | | | |
|---|---|---|---|---|
| | **NO. OF REQUESTS** | **COMMENTS** | **FROM** | **DATE** |
| **SET 1** | 3 | March 3, 2017 | Digital Realty & Ellen Jacobs | March 3, 2017 |
| **SET 2** | ? | Not Provided | | |
| **SET 3** | 34 | Complete | Digital Realty & Ellen Jacobs | March 7, 2017 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **Total** | 37 | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| PRODUCTION | | | | | |
|---|---|---|---|---|---|
| | number of requests | | Defendant(s) | DATE | RECEIVED |
| SET 1 | | Complete | Digital Realty & Ellen Jacobs | | |
| SET 2 | | Complete | Digital Realty | | |
| SET 3 | | Complete | Digital Realty & Ellen Jacobs | | |
| SET 4 | | Complete | Digital Realty & Ellen Jacobs | | |
| SET 5 | | Complete | Digital Realty | 2/10/2017 | |
| SET 6 | 7 | | Digital Realty & Ellen Jacobs | 3/7/2017 | |
| Set 7 | 1 | Based upon Set 1a therefore not required. | Digital Realty & Ellen Jacobs | March 7, 2017 | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |