FROM THE DESK OF **PAUL SOMERS**

The Honorable Kandis A. Westmore
United States Magistrate Judge
for the Northern District of California
VIA ECF

Re: Somers vs. Digital Realty, Case Nos. 3:14-cv-05180:  Outstanding Discovery from Digital Realty Trust

Your Honor,

Seyfarth Shaw, acting under Digital General Counsel, after two years has failed to produce relevant and responsive documents despite their affirmative obligations to do so under Federal Rules of Civil Procedure. The discovery process has been confusing, arduous and time-consuming because Plaintiff and the Court were unaware that Defendant was using a secret set of rules.

   The CEO Digital realty is at the center retaliation and  Cover up common sense  complained  to Judge Chan who sent us to magistrate judge.  Many ore months but no progress for the Plaintiff. Fifteen months into discovery when Plaintiff discovered the reason he hadn't see the production of documents

he expected was because Seyfarth had cast aside his requests for production of documents <u>in favor of</u> <u>their own idea of what the plaintiff should obtain in discovery.  Seyfarth and there in-house ESI experts</u> <u>created secret search terms;</u>  search terms designed to produce documents of no value to plaintiff but that make the appearance that the defendant is cooperating in the process.   Seyfarth didn't tell anyone that for the documents of the plaintiff requested.   Plaintiff spent lots of money with the attorneys trying to solve problem reviewing documents that were simply fill are used to puff up discovery  production. This pass yes looks lik.  When confronted about the issue, defense counsel wrote that Judge Westmore had approved the search terms.  No such approval has been given. they used which is untrue and an improper remark on the part of Seyfarth Shaw made even more inappropriate considering the circumstances with which to search terms were uploaded to the Court.   This is further explained in section II.   In addition to the documents defendant has refused to answer interrogatories refused to participate in the first deposition and use

## I.      Request for Production of Documents:

Defendants have yet to make an effort to search for *any* documents using Plaintiff's Requests for Production of Documents dated May 25, 2015 and October 11, 2015.   Evidence of this can be found in a plan  created by Seyfarth Shaw they did not intend for Plaintiff to see (Exhibit A) The terms in the exhibit ignored Plaintiff' formal 111 written requests and reduce Defendant's useful document production to a scant few items, administrative in nature. At the meet and confer the Defendants indicated they did many searches.  This doesn't wash. They have handed the Exhibit A to the Court which shows that they have not done any kind of reasonable search based upon based upon my requests.  This will require a few minutes of study but should become crystal clear.  The Defendants planned to withhold nearly all discovery from the outset.  I will not let this pass as it is the key to my lawsuit against Digital Realty.

a. **Still Needed from Defendant, Responses to RFP Documents Set 1 & 2, 111 items.** Discovery kicked off in May 2015.  After many months of delays documents began to arrive between September 2015 and December 2015.  Somers's attorneys received more than 6,300 only about 4% of the documents were responsive to Plaintiff's requests.  The rest of the documents were produced for no other reason than to puff up discovery to make it look as if the Defendant and were cooperating in discovery.

On March 24, 2016, Somers, unaware of the secret search terms and frustrated with the lack of production, requested assistance from Judge Chen at a hearing, Mr. Somers stated: (Dkt. 97)

*To date, we have received almost nothing of value that we've requested in the two requests for production back in May of last year and in October.  While we've received a volume of documents, there is nothing really in there that we've requested lot of -- a lot of fill; filler material.*

Seyfarth's Ms. Wetmore, aware of the secret search terms mislead Court,

*We've produced tens of thousands of documents, despite the fact that we were supposed to engage in just limited discovery premediation.  My client doesn't believe there's anything else to produce."*

The Parties were then referred to Magistrate Judge Kandis Westmore for Discovery resolution.  April 14, 2016, the Parties attended a telephonic hearing with Judge Westmore.  Plaintiff once again expressed his frustration at the lack of discovery responding to his requests.  Ms. Petersen, again, had an opportunity to inform the Judge and Plaintiff of the secret search terms. She should have explained that that defendant's production did not take into account plaintiffs request for production

documents.  Instead, she made a false state to Judge Westmore and Plaintiff that her client had produced all relevant documents in response to Plaintiff's requests knowing the secret search terms had restricted the production to do quite the opposite.  This lead to many a 3-month exercise in futility.

The following chart shows 3 out of 111 examples of how Seyfarth's secret search terms impacted production:

**Sample of Plaintiffs Request for Production No. 1 vs. Digital's Response**

| | Plaintiff's Attorney Requested the following documents on May 22, 2015 | Defendant's attorney created search terms to restrict search to | Result |
|---|---|---|---|
| 9 | "All communications, including but not limited to emails, to or from Ellen Jacobs regarding Plaintiff. [no search limit]" | Email between Ellen Jacobs and Paul Somer from April 1-April 8, 2014. | Defendant restricts search to only emails between Plaintiff and Jacobs. Eliminates all other parties.<br><br>The defendant and then restricts further Discovery to 7 days out of the 1370 days the plaintiff was employed buy digital.<br><br>The defendant willfully eliminated 99.997% of emails and 100% of other correspondence from the head of HR. Key documents remain concealed. |
| 10 | "All communications, including but not limited to emails, to or from KRIS KUMAR regarding Plaintiff from November 1, 2013, to the present." | "Email between Kris Kumar and Dave Caron" | Defendant is aware that Mr. Caron and Mr. Kumar were unlikely to correspond.<br><br>Mr. Kumar was a high-ranking SVP and Plaintiff's manager in Singapore.<br><br>Digital Realty willfully eliminated 100% of Kumar's correspondence.  These key documents are still being withheld by Digital Realty. |
| 11 | "All communications, including but not limited to emails, to or from SARAH SCHUBERT regarding Plaintiff. from from November 1, 2013, to the present." | None, Schubert was completely left out of the search. | Sarah Schubert was the *sole* HR representative in Asia-Pacific. She played an instrumental role in the illegal termination.  Sarah only worked two days a week and relied heavily on email correspondence.<br><br>Digital Realty willfully eliminated 100% of Schubert's correspondence.  These key documents are still being withheld by Digital Realty. |

**Item 4 of the 111 items – "All documents mentioning, referring to, pertaining to, or about Kris Kumar's termination by Defendant." Is of particular importance.  Kumar instigated the retaliation against Plaintiff.**   Defendant has been covering up the fact that the manager responsible for instigating retaliation against Plaintiff did not resign but was forced to quit five months after Plaintiff's termination.   The Defendant has also been hiding the fact that they filed a lawsuit against Mr. Kumar on his way out.  Digital has been prolonging this litigation by representing that Kumar resigned amicably.   Defendants have denied legal action and, despite a Court Order has refused to turn over Mr. Kumar's correspondence likely points to the fact that there's great amount discovery being withheld. Defendant has not provided this discovery and is in direct violation of the Court Order. **Plaintiff asks that the Court take appropriate measure including terminating sanctions for Defendant's obstruction of justice in violation of the Court Order considering this discovery is at the very center of Plaintiff's claims.**

II.      **Certified Fraud to cover up Fraud:  Brian Ashe Took Signature Page from Fully Executed Document and inserted it into a new document before uploading it to the Magistrate Judge**

The **secret search terms** had never been seen by anyone but Seyfarth Shaw.  After Plaintiff signed the first Joint Letter, Mr. Ashe engaged in behavior which shows how far Digital is willing to go to prevent Plaintiff from discovering the cover-up he orchestrated.  On May signed the first Joint Letter and requested Plaintiff sign and return the document so they could upload to the ECF system.  to be uploaded into ECF.   Before uploading the joint letter, Seyfarth inserted 8 pages into the Joint Letter and took the signature page from the Joint Letter I had signed and placed it on the now forged document.  made a material alteration to the document inserting 8 pages which pertained to the search terms Defendant is now relying on as "approved" but the Court.  Defendant's had been using this secret terms for over a year before they decided to bury them into a document hoping no one would notice.  Under any circumstances using a signature on a materially modified document illegal, doing so in conjunction with a filing to a federal judge On November 4, 2016, Seyfarth wrote to Plaintiff:

> *"...That Joint Letter was intended to address all of your concerns with Defendants' discovery responses.  The [secret] search terms were put to Judge Westmore.  She ordered the parties to confer in a limited way on specified requests to develop narrowed search terms from those you proposed in the joint letter, but otherwise found no deficiencies with the*

*ESI protocol or search terms used by Defendants to identify documents responsive to this case.*

### III.    Seyfarth Finds a Scapegoat, Blaming the Secret Search Terms On My Attorney

**When I pressed Seyfarth further on the discovery and the secret search terms,  the defendant became  desperate.**   Instead of accepting the blame and finding a solution  to produce the documents, Kyle Peterson and Brian Ashe created a new scheme to misdirect  the wrongdoing on an innocent party. That party is the attorney representing me on the appeal  which what return in favor appeal in the Ninth Circuit, Mr. Steven Henry.  Mr. Ash and Ms. Peterson more work furiously to cover up their wrongdoing sending multiple email with false statements  implicating Mr. Henry.  Mr. Henry has provided the declaration which reviewed every statement made by Kyle Peterson.

### IV.   Request for production documents No. 3  - These items were refused by Defendant

112. All communications, including but not limited to emails, to or from Sam Lee regarding Plaintiff from November 1, 2013 to the present.

113. All communications, including but not limited to emails, to or from Geraldine Lin regarding Plaintiff from November 1, 2013 to the present.

114. All communications, including but not limited to emails, to or from Shaun Woodhouse regarding Plaintiff from November 1, 2013 to the present.

115. All communications, including but not limited to emails, to or from Rita Da Luz regarding Plaintiff from November 1, 2013 to the present.

116. All communications, including but not limited to emails, to or from Janice Tan regarding Plaintiff from November 1, 2013 to the present.

117. All communications, including but not limited to emails, to or from Melissa Poon regarding Plaintiff from November 1, 2013 to the present.

118. All communications, including but not limited to emails, to or from Grant Yabsley regarding Plaintiff from November 1, 2013 to the present.

119. All communications, including but not limited to emails, to or from Jihann Peterson regarding Plaintiff from November 1, 2013 to the present.

120. All communications, including but not limited to emails, to or from Grant Yabsley regarding Plaintiff from November 1, 2013 to the present.

121. All communications, including but not limited to emails, to or from Clive Dow regarding Plaintiff from November 1, 2013 to the present.

122. Defendant's Document Retention policies in effect from November 1 to present.

123. The complete employee file of Kris Kumar.

124. The complete employee file of Rita Da Luz.

125. The complete employee file of Scott Harrod

126. The complete employee file of Ellen Jacobs

127. The complete employee file of Fergus Brooks

128. Defendant's EEO-1 Surveys from 2009 to Present


**V.  Request for production documents No. 4 – These items were refused by Defendant**

145. All documents related to internal investigations of Kris Kumar November 1, 2013 to present.

146. All documents evidencing the person or persons who informed Defendant that

Plaintiff allegedly said, "when Mike Foust leaves Digital, Kris will go too

because Mike is Kris' only supporter."

147. All documents which supports your allegation that Sarah Schubert has had

"investigative conversations with Sam Lee, Grant Yabsley, Amandine Wang and

Jihann Pedersen to corroborate what happened."

148. Digital's access control logs for its leased premises Digital's data center at 29A

International Business Park, Jurong West, indicating the time of day Sam Lee

entered and exited the building on February 10, 11 and 12, 2014.

149. Digital's access control logs information for its leased premises at Ocean

Financial Centre indicating the time of day Sam Lee entered and exited the

building on February 10, 11 and 12, 2014.

150. Emails and attachments to or from Kris Kumar regarding 2014 compensation

recommendations for all non-property level employees in Asia Pac region.

151. Emails and attachments to or from Sarah Schubert regarding 2014 compensation

recommendations for all non-property level employees in Asia Pac region.129. All communications,

including but not limited to emails, to or from Tunggono &

Kwee Tjwan leng from April 1, 2014 to the present.

130. All communications, including but not limited to emails, to or from Optimus

Chambers Advocates and Solicitors from April 1, 2014 to the present.

131. All document communications, including but not limited to emails, to or from

Jerrytan Residential Pte Ltd. from April 1, 2014, to the present.

132. All communications, including but not limited to emails, to or from Citibank

regarding 63 Cairnhill Circle #15-01 Singapore, from November 1, 2013, to the present.

133. All email and (Lync) text messages to or from all employees of Defendant, referring to Plaintiff between from April 9, 2014 through April 15, 2014

134. All documents filed with or supplied to the SEC Kris Kumar's departure from Digital Realty.

135. All documents, written communications, including but not limited to text, SMS, email, handwritten notes between Brian Ashe of Seyfarth Shaw and Defendant Ellen Jacobs on February 28, 2017 from 9:00 am until 3:30 p.m.

136. All written communications, including but not limited to text, SMS, email, handwritten notes, between Brian Ashe of Seyfarth Shaw and any employee of Digital Realty on February 28, 2017 form 9:00 a.m. until 3:30 p.m. PST.

137. All invoices and statements for all legal services since December 1, 2013 services by all law firms, consultants, advisors billed to Digital Realty Trust, Inc. or any entity affiliated with Digital Realty Trust, Inc.

138. All invoices and statements for all legal services since December 1, 2013 services by all law firms, consultants, advisors billed to Chubb Insurance Group, Federal Insurance or any entity affiliated with either party.

139. All agreements, contracts, invoices, and correspondence with Spencer Stuart regarding the search for a CEO to replace Mike Foust.

140. All agreements, invoices, statements and correspondence from the arbitration regarding the termination of Kris Kumar's Employment Agreement.

141. All sworn statements, declarations, affidavits or other correspondences regarding

Plaintiff from current or former employees.

142. All documents to support that Plaintiff was preventing his team from working

alongside other departments for example Sales and Acquisitions and demanding

that all conversations or data be passed by him.

143. All documents which support your allegation that Plaintiff is suspicious and

suffers from paranoia.

144. All documents which support your allegation that Plaintiff demonstrated

inconsistent messaging to the team resulting in re-work and confusion.


**VI.     Initial disclosures**


   **A.  Damages:  Defendants have yet to provide any estimates of damages for the many** retaliatory counterclaims they filed in February 2015.  Computation of Damages/Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii)].

   **B.  Witness Contact Info:  Defendant also refuses to provide the contact information for the witnesses listed.**  Plaintiff has been unable to draft Letters off Request for several Digital employees which cannot go out to the because Defendant' ill not provide phone numbner and address.


**VII.    Depositions**

A sample of Mr. Ashe's behavior during the last deposition makes it clear he was there to obstruct

matters and take up time rather than have Ms. Jacobs answer questions. I ask for the Courts agreement

that Seyfarth Shaw and the Defendant be sanctioned for the cost of the first deposition and 4 hotel room

nights required to bridge the weekend until Ms. Jacobs was available. The cost was about $3,500.

Defendant did not fully participate in the PMK deposition.  Mr. Ashe refused to tell me in advance  who would be the PMK.  The day of the deposition he presented a new officer for then IT portion of the deposition who he often instructed not to answer. Ms. Jacobs was then announced to the PMK.  The long retired SVP of HR as the PMK was often instructed not to answer.  She was not qualified to be the PMK. Mr. Ashe substituted affidavits for PMK representatives which has been rejected by me.

## VIII.   Request for Inspection of Documents

Digital has refused to allow me to inspect original documents.

## VIIII .  Interrogatories Set 1

Pending with the Magistrate Judge.

## X.    Privilege Log:

Defendant's privilege log does not meet the requirements of the Federal District Court for Northern California.R.Civ.P.26(b)(5).  As a result, Plaintiff is unable to comment.

APRIL 28, 2017

                              SINCERELY,

                              /S/PAUL SOMERS
                              PLAINTIFF PRO SE