Case 3:14-cv-05180-EMC   Document 216   Filed 04/21/17   Page 1 of 13

Seyfarth Shaw LLP

560 Mission Street, 31st Floor

San Francisco, California   94105

(415) 397-2823

fax (415) 397-8549

www.seyfarth.com

(415) 544-1029

bashe@seyfarth.com

Response to an
Case 3:14-cv-05180-EMC   Document 220-1   Filed 04/29/17   Page 2 of 32
Case 3:14-cv-05180-EMC   Document 216   Filed 04/24/17   Page 2 of 32

Judge Kandis A. Westmore
April 21, 2017
Page 2

To make this as clear as possible to the Court and to be able to properly respond to each and every false statement made Brian Ashe of Seyfarth Shaw, I have provided my comments in-line with their document to make it easier for the court to identify. Parts of their letter which I do not believe are important, I have greyed out. Seyfarth's letter is in black and my responses are in blue.

April 21, 2017

Judge Kandis A. Westmore
United States District Court for the Northern District of
California 1301 Clay Street
Oakland, CA 94612

Re:     *Somers v. Digital Realty Trust, Inc., et al.*
        *U.S.D.C. N.D. Cal. Case No. 3:14-cv-05180*

Dear Judge Westmore:

Defendants Digital Realty Trust, Inc. and Ellen Jacobs submit this letter in accordance with the Court's April 14, 2017 Order (Dkt. No. 212). The discovery issues that are still pending and that are not covered by the Court's prior Order (Dkt. No. 199) are discussed below.

I.      **Plaintiff's Failure to Comply with the Court's Discovery Orders Prejudices Defendants; Sanctions are Warranted.**

Defendants seek evidentiary and monetary sanctions for the repeated and prejudicial discovery abuses engaged in by Plaintiff. While the pre-March 14, 2017 abuses have been processed and may not be litigated (Dkt. No.191), Plaintiff's regrettable gamesmanship since then warrants sanctions in light of the irreparable prejudice it has caused Defendants.

On March 24, 2017, the Court denied Defendants' request to impose evidentiary sanctions because Plaintiff had agreed to produce responsive documents *by March 31, 2017*, the Friday before his Monday deposition in San Francisco. (Dkt. No. 199, 2:8-9). Plaintiff did not comply with that Order. He instead sent an email only to a Chicago-based defense lawyer on April 1, 2017 (a Saturday) inviting her to share a DropBox file. (Exs. 1 and 2, emails from Plaintiff to Kyle Petersen with invitation and to Plaintiff from Ms. Petersen outlining inability to access files.) Plaintiff never sent that email to the San Francisco lawyer who was taking his deposition that Monday.

Brian Ashe is making up tall tales. Unfortunately, we can now go in and dissect what happened and once Seyfarth is held accountable for their statements, their story falls apart. The lawyer he is strangely referring to as "only a Chicago –based defense lawyer" is Kyle Petersen, the point person I have worked with all along as the Court is aware. Mr. Ashe has told me all along not to bother him with emails of no concern to him. Often times, Mr. Ashe replies with insulting emails if I forward information to him after business hours or on weekends. In one of Mr. Ashe's typical angry outbursts he wrote to me:

Judge Kandis A. Westmore
April 21, 2017
Page 2

> *"Kyle Petersen, you [r] [sic] prime contact with our firm in this litigation,*
> *will continue to work with you…."*

In the same email he admonishes me for copying too many people:

> *"I trust that you received a "bounce back" email informing you that I was*
> *away on my summer break until next Monday, July 25, 2016.*
> *Consequently, I am <u>mystified</u> why you sent the second email to me. You*
> *know that I am on vacation. I respond to your emails only to ask that you*
> *please <u>respect my</u> <u>private time</u> away from work."*

Mr. Ashe expects me to track he and his colleagues working hours and holiday calendars. There are many more examples of this. The Dropbox email invite was sent to a law firm to the individual I have always liaised with on this matter. The only gamesmanship in this case is by Mr. Ashe and Ms. Petersen on behalf of the world's richest insurance company, Chubb.

Plaintiff already knew that defense counsel could not readily access DropBox files.

This is a classic false statement by Seyfarth. I ask the Court to require Mr. Ashe to furnish proof of how "Plaintiff already knew." He will be unable to do so because isn't true. This is one of the ways Seyfarth damages plaintiffs all over the country. The Court may believe the law firm is being honest and the pro se dishonest when in fact the opposite is true. An Order may be issued based on a court's trust in lawyers over pros se litigants and the plaintiff suffers more damage.

Sanctions are appropriate in this instance because the malware threat from open, Internet-based file-sharing services require that such files go through rigorous vetting and very special treatment before they can be accessed. Regular access to DropBox and other unsecured file-sharing services is forbidden by the security features of the Seyfarth Shaw computer system firewall. Plaintiff had been told that in writing beforehand.

Plaintiff had NOT been told that in writing beforehand, hence, the reason Ashe doesn't provide an Exhibit.

The truth is, more lawyers use Dropbox than don't. In fact, the **2016 ABA Technology Survey** asked ABA members "what cloud providers they used and Dropbox once again topped the list at 58%, up from 51% in 2015." See link to ABA Tech Report.

Contrast this with the "no name" program Seyfarth requires I use called Kiteworks. It required I download third party software onto my computer to get their files. I later found out that Seyfarth was then able to use Kiteworks to monitor my computer usage. Seyfarth was notified when I was working on the files which were now on my computer. They could see which files I was accessing multiple times for example. This kind of spying is highly concerning.

Even when she attempted to access the files outside of the firewall, the Chicago-based

Response to an
Case 3:14-cv-05480-EMC Document 220-1 Filed 04/29/17 Page 4 of 32
Case 3:14-cv-05480-EMC Document 221 Filed 04/24/17 Page 4 of 32

Judge Kandis A. Westmore
April 21, 2017
Page 2

lawyer was denied. She received a notice from DropBox that she must first be granted access to the file from Plaintiff before the documents would be made available to her (Ex. 3). She immediately sought that access on April 1, 2017, but never received permission from Plaintiff until the day of his deposition, April 3, 2017.

The Chicago based lawyer is Kyle Petersen.  Why does Mr. Ashe insist on trying to fool the Court with respect to Ms. Petersen's identity?  Let's look at the details on the timing.  The file invite was granted essentially on 3/31/2017, (12:02 AM PST) Those two minutes didn't matter to Ms. Petersen who didn't even bother to access the files until 19 hours later.  None of what Mr. Ashe wants the court to believe is true once again.

That day, Defendants demanded that Plaintiff produce the DropBox material.

The above statement is false.  I ask the Court to demand Mr. Ashe provide proof of the demand.  I was not contacted by anyone at Seyfarth Shaw and was not aware they were unable to access the files due to their antiquated protocols.

He responded, "Kyle, I noticed you hadn't accessed this file which you received last week" and containing a password. (Ex. 4.) When Defendants finally were given access, they saw that the files had not been uploaded to DropBox until Sunday, April 2, 2017. (A screenshot of the DropBox system showing date for Plaintiff's uploads is attached as Ex. 5.) While that explains why Plaintiff delayed in granting permission to access the file earlier, it also proves that he missed the Court-ordered deadline for production by two critical days.

Mr. Ashe is making things up. A password was added and would not have affected the file availability. The files do not indicate the date they were added, but the date they were modified.  I added the bates numbers to the documents after the fact.  Unlike every other law firm I have worked with, Seyfarth has failed to update its IT system to modern standards.  The ABA says 58% of law firms use Dropbox which means that Seyfarth can only work with 40% of all law firms in the USA.

By the time Defendants were able to access the documents on April 3, 2017, Plaintiff's deposition was already underway. The information produced was responsive to Defendants' *First Requests for Production* from 2015 and was ordered produced multiple times (including on March 24, 2017 (Dkt. No. 199)). It included material that Plaintiff had already cross-examined Defendant Ellen Jacobs on at her deposition₁ and was produced in a manner that obviously prohibited any use in Plaintiff's deposition.

What this boils down to is Mr. Ashe's latest attempt to try to remove the legally recorded evidence of the Senior Vice President, Director, and Officer and the HR Director making statements that are highly contradictory to what Digital Realty is representing to this Court.  There is nothing more to it than that. The recordings, which Seyfarth has had for a very long time allow insight into what actually happened, not what Seyfarth has created.  It cuts through all of the nonsense of the last 3 years and shows that I was setup to be fired by Kris Kumar in retaliation for the items explained in my claims.  I am not sure of better evidence than recordings of Digital Realty engaging in illegal behavior to convince a jury.  Ms. Jacobs is not on the recordings. I did not depose her on the subject of the recordings. Mr. Ashe has not provided an exhibit to show that I did for good reason.  It didn't happen.

Judge Kandis A. Westmore
April 21, 2017
Page 2

What Mr. Ashe has not told the Court is that 97% of the documents he insisted I produce are already in Digital's system. Ashe convinced the Court to force me to send a copy of each email *sent from my Digital Realty email to my personal email accounts over 4 years*. It took me the better part of a week to find each one, process it and bates stamp up to 1,063 items. But why? Digital Realty already has the emails in their IT system.

The Court refused my motion to extend discovery meaning that volumes of responses and three depositions occurred in one week. No one person could have I have been traumatized by the event. The court failed to recognize the duress I am under making it worse on March 8, 2017 demanding that I turnover all orchestrated traumatic experience which I thought I could count it on the courts to stop from happening. No really was inside pro se litigant is legal abuse without question. I am certain the Court of Appeals will agree. (al Digital has the native files and attachments because they originated from their email system. Seyfarth used the joint letter brief process to force me to spend days producing this information. They have already heard the recordings as they were provided by one of my previous lawyers long ago. We know this because they have already commented on portions of the recordings. Plaintiff did not depose Ms. Jacobs on the subject of the recordings. There's nothing in the deposition to that effect.

Defendants were unfairly prejudiced by this gamesmanship. They could not use any of the information to prepare for the Jacobs or Somers depositions, nor promulgate third party subpoenas to test the veracity of the Plaintiffs' discovery positions due to the imminent discovery cutoff of April 6, 2017.

The big law firm is accusing the pro se litigant of gamesmanship. It's gone way to far at this point and I am looking for resources to assist me given the Court's approach to my lawsuit. They have already heard the recordings as they were provided by one of my previous lawyers long ago. We know this because they have already commented on portions of the recordings. Plaintiff did not depose Ms. Jacobs on the subject of the recordings. There's nothing in the deposition to that effect. Mr. Ashe is attempting to repackage questions Plaintiff asked about an event being hypothetically recorded on April 8, 2014. They are not one in the same. Not

A range of sanctions are available to help cure the damage wrought by Plaintiff's failure to cooperate in discovery. Fed. R. Civ. Proc. 37. These sanctions are appropriate in light of his repeated refusal to comply with the Court's orders and the resulting prejudice. Indeed, in its March 24, 2017 Order (Dkt. No. 199 n.1 & p. 2:24 to 3:2) the Court stated, "[t]he Court will be more likely to impose sanctions should Plaintiff not produce the requested documents by March 31, 2017….Failure to do so may result in sanctions for failure to cooperate in the discovery process, including monetary or evidentiary sanctions, or a recommendation of terminating sanctions." If the Court is not recommending terminating sanctions, Defendants seek evidentiary sanctions at this late stage of the litigation. In addition to the timing gamesmanship described above, Sections I (A) through (D), below, discuss the particulars of Plaintiff's most recent discovery shortcomings.

See above, on March 21,2017, Plaintiff was unaware of the amount of time, expense

Plaintiff supplied access to the files at 12:02 AM. Defendants didn't access the files until 19 hours later. If sanctions are imposed I can certainly count on terminating sanctions for what Mr. Ashe and the defendant have done in front of two federal judges and to harm me by obstructing justice.

A.     **Requests for Production**

Response to an

Case 3:14-cv-05480-EMC   Document 220-1   Filed 04/29/17   Page 6 of 32
Case 3:14-cv-05480-EMC   Document 216   Filed 04/24/17   Page 6 of 13

This Court ordered Plaintiff to supplement his responses to Defendants' Third, Fourth and Fifth sets of Production (Dkt No. 199). He did not comply. He has never provided formal discovery responses to Requests for Production, Sets Three or Four.

---

[1]    Deposition excerpt from Jacobs' deposition attached as Ex. 6 (50-53 (regarding subject of Sarah Schubert investigation); 56 (same)).

Judge Kandis A. Westmore
April 21, 2017
Page 3

Plaintiff responded to Defendants' Request for Production, Set Five. He only objected to Requests Nos. 2-3 seeking travel receipts and hotel reservation records related to travel from April 2014 to July 2014 (Ex. 7, Plaintiff's responses to Set Five). He still will not provide any travel documents showing that he left Singapore and was not "trapped" there post termination.

False, I objected to each and every item. As I looked into this matter I recalled that while employed Digital Realty ordered and paid for the airline tickets for various trips. I also used my Digital Realty email address to book personal trips. Without full access to my former email account with Digital, this will not be possible. Defendants are well aware of this. They can also obtain this information from their expense report system, Concur. Also, I did not leave the island every time I had a PTO day. Defendants are not allowing me to access my former email account or the PTO system. I am unable to provide PTO days.

Plaintiff also promised to produce documents relating to or evidencing his expenses such as credit card statements (Request No. 1)

Proportionality must come into play here. I am doing all of this work between the hours of 9 PM and 5 AM due to the time zone difference. I ask the court to be sensitive to the fact that my credit card and bank statements were with a foreign bank in Singapore. Going back six years is an extraordinary event for the bank who is charging me $35 per statement x 20 statements. Given that this will not lead to anything useful by the defendant and the Defendant already has this information in a very accurate form, their demands are actually more harassment. I closed my bank account in 2015. In order to obtain six-year old data, the agent I spoke to indicated I must reopen my long closed account in Singapore.
I was told that I would have to make an appearance at the bank. After many phone calls I was able to get the bank to reopen the account. I now waiting for the bank to send me a small authenticating device that must be used to access the information. I have tracked nearly 11 hours working on this for the Defendant who is well aware that it will not allow Digital to escape the fact that they illegally fired an exemplary employee, left him to become an immigration offender with $200,000 in corporate liability while Seyfarth Shaw went to work ensuring his professional career was over using their well-honed technique of character assassination.
Brian Ashe and Kyle Peterson are experts at ruining careers of plaintiffs who file claims against former employers provided Chubb is footing the bill. What they have done to me and others is being assembled and analyzed. It will allow the Court and other interested and sympathetic parties to see the truth behind the industry funding the defense of this lawsuit and why.

Policies which he alleges Kris Kumar violated (Request No. 4);
I don't have policies in my possession, the Defendant has been informed of this many times.
Audio recordings (Request No. 5);[2]
Provided twice to Defendants.
any responsive documents not previously produced in response to prior requests for production (Request No. 6) Properly responded to this in response to Request 6. and notes taken or used during the deposition of Plaintiff (Request No. 8.). I do not have any of these items

Despite this promise, Plaintiff never produced any of the following documents that were sought: bank statements, credit card receipts, hotel statements, hotel/airline rewards program records and other travel documents.

The parties discussed such documents at the meet and confer session in the courthouse on March 21, 2017, yet nothing was produced by Plaintiff. Then, the Court heard from him directly during our last meet and confer telephone session on April 11, 2017 that he did not want to produce this material. The Court directed him to produce it during our call. At this point, sanctions are the cure for his discovery abuse (See section I (D), below).

Mr. Ashe has been actively involved in the cover up of the lawsuit filed against Kris Kumar by Digital Realty. What kind of sanctions are available for that kind of discovery abuse? Terminating sanctions are in order.

Plaintiff will tell the Court that his April 3, 2017 production was for over 360 documents. While technically true, the documents he produced were of very little use. For example, he provided emails from 2010, four years prior to his termination, photos of an automobile and the inside of what look like apartments, emails from his mom, and dry cleaning receipts. Ex. 8. There are also what appear to be emails, but which have no "To" and "From" information let alone content. *See, e.g,* Ex. 9. Plaintiff also produced pdfs of several emails that appear to have attachments, yet the attachments were not produced. Ex. 10. Plaintiff did not produce native files, as requested by Defendants (and as provided to Plaintiff pursuant to his request), which means that Defendants have no way to determine which attachments to emails were produced, if any.

Plaintiff produced exactly the items requested. Now Ashe complains that they are of little use. That could be because he already has them. This is the most preposterous statement in recent memory:

"Plaintiff did not produce native files, as requested by Defendants (and as provided to Plaintiff pursuant to his request), which means that Defendants have no way to determine which attachments to emails were produced, if any."

Mr. Ashe cannot be serious! The emails I was ordered to produce were sent from Digital Realty's email system: Digital Realty has the original native files. Nonetheless, they convinced a judge to force me to spend 20 hours culling emails up to bates number 1,046. Each email was in Gmail and extracting them making a PDF takes much time. Now that Mr. Ashe has his second copy, he agrees with me that they are of no use. Does the Court not recognize the abuse that is occurring here?

Plaintiff did untimely produce two surreptitious tape recordings that have been sought since the inception of litigation and some scant evidence of his mitigation efforts. These grossly untimely productions are discussed below in Sections I (A)(1) and (2).

Seyfarth is once again not telling the truth. Is Mr. Ashe accusing my former attorneys of malpractice? He already lied about Mr. Henry as we know from the deposition the Court ignored. My former attorneys all had these recordings and have produced them to the Defendant. What is stated on these recordings by Digital is so damaging, they now find it necessary make up stories, as they do about everything that disproves their defense.

Additionally, Defendants served two additional requests for production, Sets Six and Seven, that had a response date of April 6, 2017 (Exs. 11 and 12, respectively). Plaintiff did not respond to either – he provided no formal or informal responses and produced no documents. Some of the categories of documents from the earlier requests were repeated in a more focused way in these later requests for production because Plaintiff had not properly responded to that older discovery. These included:

Judge Kandis A. Westmore
April 21, 2017
Page 3

Preposterous statements by Mr. Ashe.  The requests relate to interrogatories outside the limit of the 50 allowed.  Nothing is due.

---

[2]      Plaintiff objected to production of documents reflecting recordings of conversations he had with a Digital employee, specifically including conversations with Sarah Schubert, on the grounds that the request could encompass "innumerable" documents. (Ex. 7.) The promise to nevertheless produce responsive materials is dated March 11, 2017 by Plaintiff. To date, Plaintiff has produced only two recordings and those were not provided to Defendants until April 3, 2017, the day of Plaintiff's continued deposition.

- Requests for Production, Set 6:

  - Nos. 1-2 (additional documentation regarding his Singapore apartment leases) Digital approved and paid the leases, they have it all.

  - Nos. 3-6 (seeking records related to modifications made to Singapore apartment --Plaintiff claimed to Defendants that he had receipts to show he overpaid) No "modifications" were made.

  - No. 7 (seeking information regarding Plaintiff's partner, Raul Ruiz, and his location during the time Plaintiff was claiming him as a basis for expanded COLA while living in Singapore--this is relevant to Plaintiff's claimed damages, yet Plaintiff refused to produce similar materials in response to a prior request on privacy grounds) Seyfarth needs to tell me what they are seeking. I do not have any information that will satisfy this. What is the purpose in any case? Simply more harassment of two gay men that would never be demanded of a hetero couple.

- Requests for Production, Set 7:

  - No. 1 (seeking documents responsive to one of Defendants' interrogatories that sought an explanation of the "gating approval process," the alleged violation of which forms the basis of Plaintiff's whistleblower claim)3

Defendants seek evidentiary sanctions. Plaintiff never properly responded to most of these RFPs and then unilaterally picked and chose what he wanted to produce. Much of that was inappropriate and not responsive or relevant. By eschewing the actual Requests themselves, even in contempt of this Court's several written orders and direct admonitions, harsh sanctions are the only mechanism left in the Court's arsenal to set right this unfairly tilted playing field. Mr. Ashe must be sanctioned for even raising these ridiculous issues while withholding nearly all discovery now for two years.

### 1. Plaintiff's Surreptitious Tape Recordings

Plaintiff has recordings he made while an employee that he claims relate to his case.

What else would they relate to?

He referenced these recordings in correspondence with Defendants' counsel, on his blog, before the Court, and even during his deposition of Defendant Ellen Jacobs. Following each reference to these recordings, Defendants' asked him to produce them because they would be responsive to several of Defendants' discovery requests, including, for example, Request for Production, Set Three, No. 12 (seeking communications mentioning allegations of poor performance or violations of Digital policies and procedures).

Defendant has the recordings and have previously commented on them. This is a trick by Brian Ashe who is aware of how damaging the recordings. Plaintiff was ordered numerous times by the Court to respond to Defendant's Request for Production, Set Three, which was served in *October 2015*, yet Plaintiff ignored these requests. Festival

Case 3:14-cv-05180-EMC Document 220-1 Filed 04/29/17 Page 11 of 22
Case 3:14-cv-05180-EMC Document 216 Filed 04/29/17 Page 6 of 13

Judge Kandis A. Westmore
April 21, 2017
Page 6

---

3/       Plaintiff's failure to produce or at least identify the processes that he claims were violated and form the basis of his whistleblower claims not only underscores Plaintiff's failure to cooperate in discovery, but also demonstrates that Plaintiff is not diligently prosecuting his case. Such materials are not only responsive to discovery requests propounded by Defendants, but would also be part and parcel of his initial disclosures.

I was not permitted to keep documents.

Defendants were forced to engage in motions practice and, even after receiving multiple orders requiring him to produce the recordings, Plaintiff failed to comply. When he finally produced two recordings (with no indication whether there are more),4 Defendants learned that they were surreptitiously recorded by Plaintiff without the other parties' knowledge or consent.

One was the meeting during which Plaintiff was terminated and the other was a private discussion with HR, possibly as part of HR's investigation into to complaints regarding Plaintiff and his performance/conduct.

Defendants were severely prejudiced by Plaintiff's withholding of these recordings in several key ways.

First, these recordings would have been helpful to Defendants in preparing for depositions. The recordings, particularly the investigation recording, detail Plaintiff's performance issues as well as provide additional indications that--as Defendants have claimed--Plaintiff failed to demonstrate good judgement in his role as a Vice President at Digital. Defendants did not have the benefit of these recordings in preparing to depose Plaintiff and could not ask him about some of his comments of which Defendants were not then aware.

In his deposition of Ellen Jacobs, Plaintiff referred to the subjects covered in the investigation by Sarah Schubert (with the benefit to Plaintiff of a recording with her) and taunted his deponent with statements indicating that a damning recording existed to counter Ms. Jacobs' statements and recollections of her call with Plaintiff.5 Defense counsel could not properly prepare Ms. Jacobs to respond to this line of inquiry, nor did Defendants have the benefit of hearing first-hand portions of HR's conversations with Plaintiff.

Even if, arguably, the recordings only *help* Defendants, Plaintiff should not be permitted to use these ill-gotten and wrongfully withheld recordings. Defendants seek evidentiary sanctions prohibiting Plaintiff's use of the recordings.

The recordings were made legally in Singapore. Mr. Ashe may apologize for more false attacks on me. The recordings do not help the Defendants at all. They tell the truth as only a recording can. Mr. Ashe has had them for a long time.

      **2.**      **Mitigation and Damages**

The Court's March 24, 2017 Order (Dkt. No. 199) ordered Plaintiff to produce by March 31, 2017 all responsive documents related to his job search and mitigation of damages "as previously ordered by the Court." Plaintiff did not fully comply. He did not provide mitigation evidence.

Judge Kandis A. Westmore
April 21, 2017
Page 6

Plaintiff has referenced jobs and job opportunities throughout this litigation. For instance, early in the litigation he made a reference in an interrogatory response to a job that he had. (Ex.13 (excerpt from Plaintiff's responses to Digital's Interrogatories, Set One)). Another time, he refused

---

4/ Plaintiff is aware of consent requirements in various jurisdictions making it unlawful to record conversations without a party's consent. It is unclear whether additional recordings exist, but have been withheld on the basis that they were unlawfully obtained or otherwise inadmissible. Regardless of the lawfulness of the recording, Plaintiff is obligated to produce them to Defendants if responsive.

5/ Deposition excerpt from Jacobs' deposition attached as Ex. 6 (50-53 (regarding subject of Sarah Schubert investigation); 56 (same)). to reschedule his deposition because "Committing beyond these dates will interfere with me starting work. . . I cannot be expected to take three days off in my first few weeks of a new job." (Ex. 14).

Mr. Ashe was asking me to commit to dates 6 weeks in advance because the retired Ms. Jacobs was not available for over a month. A new job is what I stated, not my new job. Mr. Ashe has seen to it personally that I cannot find an executive level job. It is a part of Chubb's scorched earth policy. It involves appeal after appeal even going to the Supreme Court which is a conflict of interest since it is for Chubb's benefit and Digital's disadvantage.

The Court is familiar with another instance, when Plaintiff sought to postpone the deposition of Ellen Jacobs, ordered by the Court to take place on or before March 17, 2017, because he had a job opportunity in Santa Clara (Ex. 15).

Mr. Ashe rescheduled Jacobs deposition FOUR times. I did not complain. It was my deposition to take. This is pure nonsense and a waste of time.

Despite this, Plaintiff has produced no documents relating to any job or job search. He produced no resumes, cover letters, jobs applications, on-line job board data, offer letters, or paychecks. Nothing.

Mr. Ashe is lying. This is defamation regardless of litigation privilege. The Court should take action against him including suspension of his license for continuing to repeat the same lies over and over. See Dkt 163. From 11/28/2017. Mr. Ashe is simply recycling his nonsense.

Similarly, Plaintiff has failed to produce all documents and responses related to his claimed damages. In response to the meet and confer session at the Courthouse in March 2017, he produced several receipts for expenses he claims to have incurred as a result of Defendants' alleged actions. These receipts encompass the costs for relocating his possessions to the United States from Singapore, dry cleaning his upholstery, storage and travel.

Mr. Ashe is lying. These receipts were provided. Mr. Ashe has all of the information since he responded to the submittal in September 2016 indicating Digital would never pay me the $200,000 in expenses I am owed. He admitted he was unable to click on the link to obtain the information. I clicked on the link for him, downloaded the material and sent it to him in an email

However, Plaintiff's claim for damages goes well beyond these fairly trivial expenses. He claims, for example, that he received treatment for supposed emotional distress,6 yet has not produced any evidence of that treatment or other any other evidence supporting his theory of emotional damages.

Judge Kandis A. Westmore
April 21, 2017
Page 6

Judge Chen put an end to this illegal attempt to further damage me.

Similarly, Plaintiff created a spreadsheet that supposedly calculates front pay damages, but never produced the evidence relied upon in preparing that document.

Further down Mr. Ashe complains that I have not supplied this information. Which is correct?

I relied upon the concept of inflation.

Defendants sought all of this information in multiple discovery devices.[7] Multiple orders reflect the Court's efforts to make Plaintiff respond to the discovery and produce that material (*See, e.g.*, Dkt. No. 199). Nevertheless, he has not.

Plaintiff's failures to respond properly to mitigation and damages discovery, despite multiple efforts to get him to comply, make the fair defense of that case impossible. Defendants do not know what type of job search he undertook, how his mental state was impaired, if at all, or what his real economic damages might be. Consequently, Defendants were unable to retain an expert to analyze non-existent data on any of these issues.

Mr. Ashe is lying once again. I will not respond to this again. The Court should take action against him including suspension of his license for continuing to repeat the same lies over and over. See Dkt 163. From 11/28/2017. Mr. Ashe is simply recycling his nonsense.

In several Orders, the latest being March 24, 2017, the Court required Plaintiff to produce all mitigation and damages documents. At this point, with discovery closed and all depositions complete, Defendants seek an issue sanction stating that Plaintiff has failed to mitigate his alleged economic damages and an evidentiary sanction precluding him from introducing evidence of

---

[6]      Ex. 13 (excerpt from Plaintiff's responses to Digital's Interrogatories, Set 1).

[7]      For example, Defendants sought documentation or information supporting Plaintiff's claims for damages in Defendants' Requests for Production, Set One, No. 7. The deficiencies of Plaintiff's response was raised in Defendants' initial discovery letter (Dkt. No. 108) and in other filings including the March 14, 2017 discovery letter (Dkt. No. 190). Plaintiff represented that he would produce responsive materials at the meet and confer and the Court gave him until March 31, 2017 to do so. Plaintiff produced a small number of receipts and not much else, as described elsewhere in this letter.

Case 3:14-cv-05180-EMC Document 213 Filed 04/21/17 Page 7 of 13

Judge Kandis A. Westmore
April 21, 2017
Page 7

economic harm. Defendants also seek evidentiary sanctions prohibiting Plaintiff from attempting to introduce any evidence that he has suffered any sort of emotional distress.

    **B.**    **Requests for Admission**

    Defendants propounded Requests for Admission, Sets Two and Three, with responses due on April 6, 2017 (Exs. 16 and 17).[8] He did not respond at all until April 7, 2017, one day after the responses were due and *after* the discovery cut-off.

    The files were available at 12:02 AM. I apologize to the Defendants for the inconvenience they suffered during those 2 minutes. Incidentally, was 2:02 AM in Chicago where the attorney handling the discovery resides.

    No response was received to Set Two. Plaintiff responded to only a portion of Set Three and then under a caption pertaining to other discovery.[9] Plaintiff has waived his objections to the Requests that were not answered and they are all deemed admitted.  Fed. R. Civ. Proc. 36(a)(3).

    I did not receive Set Two in a manner that I could properly respond.  I requested Mr. Ashe send me legible exhibits or use my file sharing site. He failed to respond.  Ashe  was frenetically uploading documents on March 7, 2017 and sending volumes of documents broken down into smaller parts some arriving other not.  It was a chaotic mess that as midnight approached the volumes became larger.  The emails were so large and used up so much memory that my computer had to be restarted several times, some items had to be deleted to make room. In all the Defendant hoped to get in 21 emails with 34 attachments which they demanded that I reassemble.  It was not properly served and as a result, moot. On top of this, the exhibits are illegible. Some pages are black, others appear to have printing in 3 or 4 point fonts. See Exhibit X

    The day after the discovery cutoff, after receiving Plaintiff's late-produced and partial responses, Defendants wrote him stating, "Although the time for responding to Defendants' requests has passed and discovery is now closed, in order to mitigate the damage to Defendants, please let us know what you intend to do about getting responsive materials to Defendants and by when Defendants can expect to receive fulsome production of responsive documents." (Ex. 19.) Plaintiff responded by accusing Defendants' of ex parte communications with the Court, but did not respond to Defendants' substantive requests.

    That is absolutely false, I have no invitations to a meet and confer.

    Defendants again asked Plaintiff to provide substantive responses a few days later and then again on April 14, 2017, seeking a response by April 18, 2017 (Exs. 20 and 21). Plaintiff did not respond.

    I did not receive Set Two in a manner that I could properly respond.  I requested Mr. Ashe send me legible exhibits or use my file sharing site. He failed to respond

    That Defendants even needed to propound so many Requests for Admission is further evidence of Plaintiff's gamesmanship. The majority of Defendants' Requests for Admission, Sets Two and Three seek to authenticate documents. At his deposition, Plaintiff refused to authenticate documents, including his own signature on his offer of employment. (Ex. 22, pp. 44-50.)  The

parties engaged in *seven minutes* of dialogue in an attempt to authenticate that one document, about which there is no dispute known to Defendants.  During that exchange, Plaintiff claimed he needed to compare the document with one he had at home and that he could not answer whether handwriting "looked like" his own or whether the signature on the document was or looked like his. Similarly, Plaintiff was unable to authenticate documents *he produced*, claiming he needed his own copy in front of him. Defendants spent four minutes attempting to authenticate the stock agreement Plaintiff had produced in discovery. (Ex. 22, pp. 23:5-26:15.)

As the court is aware, Seyfarth has forged several documents including the first joint letter and statements they claimed I made in several counterclaims.  Nothing from them can be trusted to be authentic without having a trusted document to compare it to.

Plaintiff had no way of knowing that my attorney had placed it into discovery.

As a result of this behavior, Defendants were forced to propound several Requests for Admission seeking simply to authenticate non-controversial documents. Despite these extra efforts, Plaintiff still refuses to authenticate many essential documents.

As the court is aware, Seyfarth has forged several documents including the first joint letter and statements they claimed I made in several counterclaims.  Nothing from them can be trusted to be authentic without having a trusted document to compare it to.

---

8/  Defendants do not include the voluminous documents sought to be authenticated by the Requests for Admission.  They can be submitted if there is any need.

9/  Plaintiff did not respond to Requests 1-10 and 33.  Typographical errors make it unclear whether Plaintiff responded to Request No. 18 or 19.  *See* Ex. 18.

Judge Kandis A. Westmore
April 21, 2017
Page 9

Defendants seek an Order that Plaintiff may not amend or withdraw his responses and that the Requests for Admission that were not answered nor objected are deemed admitted. Fed. R. Civ. Proc. 36(b).

C.     **Interrogatories**

Plaintiff's discovery shortcomings continued in his responses to Defendants' interrogatories.

1.     **Interrogatories, Set Three**

Defendants propounded six interrogatories in Set Three (Ex. 23).[10] They seek information regarding Plaintiff's blog called "digitalcruelty.com" and the claims he made in that on-line forum. Defendants also sought information supporting Plaintiff's claims that he had incurred a judgement against him for $190,000, which he considered corporate liabilities owed by Digital.

The Court Ordered Plaintiff to respond to these Interrogatories without objections by March 31, 2017 (Dkt. No. 199). Plaintiff had provided formal written responses dated 2015, several months prior to the drafting of those responses, but has not supplemented that strange response with verified responses that are not subject to objections.

Defendants are prejudiced without the information sought and with no way of knowing what information was withheld on the basis of objections. Defendants seek monetary sanctions in the amount of $5,000, sufficient to punish Plaintiff for failing to comply with the Court's orders and to compensate Defendants' for a portion of the fees associated with the unnecessary additional motions practice.

Mr. Ashe misconduct has reached a point where he is comfortable telling outright lies to the Court. Plaintiff complied with this request as evidenced by the email sent to Kyle Petersen on June 16, 2016. Seyfarth is well aware of the fact that they have this and they had it on time but wish to wastes everyone's time and attempt to once again, defame Plaintiff. Seyfarth attorneys are is a disgrace to their profession. The year on the signature page should have been 2016 not 2015. It was a simple mistake. How could I have responded to a request before it was drafted.

2.     **Interrogatories, Set Five**

Defendant Digital's Interrogatories, Set Five, included 13 separate interrogatories (Ex. 24). Plaintiff responded to just the first eight. Four of those, Interrogatories 1, 2, 5, and 8, were met with only objections (Ex. 24). Those four sought information regarding Plaintiff's travel in and out of Singapore before and after his termination.

Again, Digital Realty has the complete detailed records of my trips before. I cannot accurately answer. See

The parties' met and conferred about these interrogatories with the Court on April 11, 2017. The Court found that they sought discoverable evidence. In particular, the Court considered the questions regarding travel for work and leisure *prior to* Plaintiff's termination proper because they relate to Defendants' concern about Plaintiff's frequent absence from the office in the time leading up to his termination. Similarly, the Court explained that *post-termination* travel information was discoverable because Plaintiff maintains in his Complaint that he was trapped in Singapore against

Judge Kandis A. Westmore
April 21, 2017
Page 9

his will for several months after being fired.

Your Honor this has gone on long enough. Mr. Ashe is fully aware of the laws of Singapore allowing those awaiting tax clearance to come and go as long as it's not a permanent departure and not for more than three months.

On April 11, a stay of proceedings was issued. That included discovery. Plaintiff cannot complete this discovery without a

---

10/    Defendants inadvertently labeled several sets of interrogatories as being propounded by both Digital and Jacobs instead of just one of them. After realizing the error on the eve of the discovery deadline, Defendants propounded a final set of interrogatories duplicating Sets Five and Six (labeled as Jacobs' Interrogatories, Set One). Defendants apologize to the Court and to Plaintiff if that resulted in confusion. This is not true.

Despite this, Plaintiff never supplemented his responses. Defendants seek an order compelling Plaintiff to provide complete responses to Interrogatories, Set Five, Nos. 1, 2, 5, and 8.

Plaintiff did not respond to Interrogatories 9-13 at all. As demonstrated by the chart at page 13, those interrogatories are within the 50 interrogatories permissible under the FRCP.11 Plaintiff did not respond to those interrogatories, however, because they refer to his responses to Requests for Admission, Set Two, which he ignored.

Plaintiff has waived any objections to Interrogatories 9-13 of Set Five. Defendants seek the Court's guidance on next steps. If Plaintiff's failure to respond to Defendants' Requests for Admission, Set Two, means that those Requests are deemed admitted, then Interrogatories 9-13 are moot.

Seyfarth Shaw did it again. They waited until 11:50 PM on March 7, 2016, 30 days before the current discovery cut off then attempted to email

**D.    Specific Requests for Sanctions**

In summary, Defendants have been unfairly prejudiced in their ability to defend this case and have suffered an enormous expenditure of time and resources in a vain attempt to obtain discovery that they are not only entitled to under the Federal Rules, but that had been ordered multiple times in response to Defendants' motions practice. Defendants now seek evidentiary and monetary sanctions to help reverse a small portion of this harm. Below is a short summary of these requests:

- For his failure to produce discovery allowing Defendants to review his travel for work and business:

  Evidentiary sanctions precluding Plaintiff from disputing This is a lie Mr. Ashe has created from a disgruntled employee, Sam Lee, who wanted my job. Mr. Lee will be facing a Singapore Court against defamation claims. Mr. Lee has been accused of money laundering and abusing company assets for personal gain. He is hetero and suffers no consequences.

- • (1) that he travelled excessively for personal reasons in the year prior to his termination and Lies

- • (2) that he was not required to stay living in Singapore in the period following his termination due in any way to Defendants' acts or omissions False.

- For his failure to produce evidence of mitigation, while using claims of job "opportunities" or actual work to avoid discovery obligations:

  Issue sanctions stating that Plaintiff

  - • (1) has failed to mitigate his economic damages and

---

11/     Defendants Digital and Jacobs are permitted to propound 50 interrogatories. Fed. R. Civ. Proc. 33. They propounded seven interrogatories in excess of that number. Digital propounded its final set of interrogatories, consisting of eight interrogatories to understand Plaintiff's final set of requests for production which named individuals or entities that Digital did not recognize. Defendants withdraw those interrogatories (served as Digital's Interrogatories, Set Six, Nos. 1-8 and Jacobs' Interrogatories, Set One, Nos. 14-22).

- (2) is precluded from introducing any evidence of mitigation, including

  - any statements that he attempted to obtain work or

  - that he has lost or will lose pay

- For his failure to timely produce discovery prior to his deposition, in violation of multiple court orders:

  Evidentiary sanctions prohibiting Plaintiff from attempting to introduce or referring in any way at trial to any recordings he made

- For his failure to produce credit card receipts or bank statements supporting his claimed expenses:

  Evidentiary sanctions precluding Plaintiff from claiming damages for failure to reimburse Plaintiff for any charges with receipts not produced prior to March 31, 2017

- For his failure to produce receipts regarding contractor work performed on his Singapore apartment by a Digital contractor:

  Evidentiary sanctions

  - precluding Plaintiff from claiming that he "has receipts" and "overpaid" for the painting work, and

  - that Plaintiff either spoliated evidence or that Defendants are permitted to introduce to the jury Plaintiff's claims of receipts and failure to produce the same

- For his failure to respond to Requests for Admission, Sets Two and Three:

  Evidentiary sanctions deeming admitted each and every request for admission in Set Two and Requests for Admission 1-10, 18, 19, and 33 of Set Three

- For his failure to produce evidence supporting his claim for emotional damages:

  An issue sanction stating that Plaintiff has not suffered emotional distress and precluding Plaintiff from claiming any such damages, including reference to alleged treatment

- For his failure to comply with Court orders and to respond to recent discovery requests:

  An order compelling Plaintiff to produce within one week:

  - All evidence documenting Raul Ruiz's residency or travel to and from Singapore from 2011 to June 2014 as well as his employment history during that time. Digital has the airline tickets.

  - A statement with exhibits demonstrating exactly what Plaintiff believes constituted the "gating approval process"   Plaintiff has no exhibits.

- Monetary sanctions to compensate Defendants for the costs and hassle associated with

Case 3:14-cv-05180-EMC Document 220-1 Filed 04/29/17 Page 20 of 22
Case 3:14-cv-05180-EMC Document 216 Filed 04/24/17 Page 12 of 13

Judge Kandis A. Westmore
April 21, 2017
Page 12

Plaintiff's discovery abuse and to deter future bad behavior from Plaintiff.

**II.     Plaintiff's Refusal to Honor Protective Order by Returning/Destroying Inadvertently Produced Privileged Documents**

Defendants gave notice on April 10, 2017 that they inadvertently produced privileged documents earlier in the litigation. Pursuant to the Protective Order (Dkt. No. 66), Defendants sought return or confirmed destruction of those privileged document. Plaintiff refuses.

Mr. Ashe purposely avoids referencing the actual document and certainly doesn't attach the letter because he doesn't want the Court to see it. I have attached it as Exhibit XX. Mr. Ashe certainly knows that there can be no attorney client privilege without an attorney. The email may reference Kristin Peterson but she is not a part of the conversation, at all.

The material at issue is an email exchange between Digital Realty Trust's outside employment counsel, the company's Senior Vice President for Human Resources and a human resources consultant in Singapore. It introduces the lawyer to the Singaporean consultant. It then discusses how Plaintiff was positioning his claim for reimbursement of his post-termination Singaporean lease costs and how Digital was planning to respond to it. That lease issue is featured in Plaintiff's Complaint in this litigation.

The basic rule is that the privilege protects communications that are meant to be confidential and are made for the purpose of obtaining or rendering legal advice (see Vicor Corp. v. Vigilent Ins. Co., 674 F.3d 1, 17 (1st Cir. 2012); Allied Irish Banks v. Bank of Am., N.A., 240 F.R.D. 96, 103 (S.D.N.Y. 2007)). Four types of communications can meet this standard:
   • A client's request for legal advice from a lawyer. *Not present.*
   • A client's communication to a lawyer of facts the lawyer needs to give legal advice. *Not present.*
   • A lawyer's request for facts that the lawyer needs to give legal advice.      *Not present.*
   • A lawyer's legal advice. *Not present.*

Mr. Ashe shows concerning behavior once again. There is no lawyer in the email conversation at any point. Digital's former lawyer, Kristin Pederson, was replaced by Chubb Insurance's panel counsel, Seyfarth Shaw, in May 2014. To or From, Cc or Bcc, a check on the metadata confirms that no lawyer participated in the conversation.

1.

The email exchange is obviously privileged and subject to the Protective Order. When the document was sought to be used by Plaintiff at deposition, an objection was immediately raised and Plaintiff agreed "absolutely" to return the document. (Ex. 25, Jacobs' 30(b)(6) deposition, pages 65:22 to 67:3.) I stated "absolutely, if the rules require it." They do not.

But then, inexplicably, in response to Defendants' two written request that Plaintiff comply with the Protective Order and return the materials (Exs. 26 and 27), he sent an email entitled "Continued harassment by Brian Ashe of Seyfarth Shaw" in which he states "[Ms. Jacobs] relied on a dance and theatre major for important legal advice. Perhaps she lied about "twisting words" to divert attention from the fact that as an officer she should be facing incarceration for telling Kumar that I had reported him." (Ex. 28.) He now refuses to return the documents even after his agreement on the record at the deposition and being told twice in writing that they involve privileged communications. (Ex. 29.)

Judge Kandis A. Westmore
April 21, 2017
Page 12

Absent a showing from Plaintiff to the contrary, which he has not made, Defendants are entitled to the timely and orderly return of the inadvertently disclosed material. Defendants seek an order compelling Plaintiff to comply with the parties' Protective Order and to return the following documents (and any copies thereof): DLR_0005585, DLR_0005592, DLR_0005593, and DLR_0005594. For this special abuse of the discovery process, Defendants seek monetary sanctions in the amount of $1,500, which is a fraction of the attorney time spent trying to reason with Plaintiff on this issue and then writing this portion of this letter to the Court.

But since there is no privilege, Plaintiff seeks monetary sanctions in the amount of $1,500 and punitive sanctions in the amount of $100,000 to deter Seyfarth from doing this same thing to another plaintiff.

**III.     Requests Beyond the Discovery Deadlines**

Plaintiff has propounded several untimely written discovery requests. Plaintiff's Request for Production, Set Five was propounded on or about March 14, 2017, within 30 days of the discovery cut off on April 6, 2017 and Interrogatories, Set One to Ellen Jacobs and Set Two to Digital were uploaded to DropBox on April 7, 2017, never served and received *after* the discovery cut-off. No response from Defendants was required. Defendants know of no other discovery issues that Plaintiff could bring to the Court's attention that were not already waived by him.

Thank you very much.

Very truly yours,

SEYFARTH SHAW LLP


*/s/ Brian T. Ashe*
Brian T. Ashe

BTA
Attachments

Judge Kandis A. Westmore
April 21, 2017
Page 13

**Summary of Interrogatories Propounded by Defendants:**

| Date | Date Due to Defs. | Date Received | Set | Nos. | Notes |
|------|------|------|------|------|------|
| 2/20/15 | | 5/22/15 | Set One, DRT | 1-4; 1-17 <br><br> **Total to date: 21** | **Interrogatories inadvertently labeled 1-4, then 1-17 for a total of 21.** |
| 5/22/15 | | 6/24/15 | Set Two, DRT & E.J. | 1-6 <br><br> **Total to date: 27** | **Plaintiff responded.** |
| 5/13/16 | | Set Dated 2015, not verified | Set Three, DRT & E.J. | 1-6 <br><br> **Total to date: 33** | **At some point, Plaintiff produced a set of responses dated September 2015 *before* the interrogatories were propounded. No supplemental, verified responses have been received to date.** |
| 2/10/17 | | 3/12/17 | Set Four, DRT & E.J. | 1-3 <br><br> **Total to date: 36** | **Plaintiff responded.** |
| 3/3/17 | 4/6/17 | 4/7/17 | Set Five, DRT | 1-13 <br><br> **Total to date: 49** | **Plaintiff responded to 1-8; objected to interrogatories 1, 2, 5, and 8 [Court found these to be relevant]; no response to 9-13 which relate to responses to RFA, Set 2 (not received)** |
| 3/7/17 | 4/6/17 | NONE | Set Six, DRT | 1-8 <br><br> **Total to date: 57 (7 exceeding FRCP limits)** | **All questions are to determine relevance of individuals/entities listed in Plaintiff's RFP, Set Four. Defendants withdraw these interrogatories as moot.** |
| 3/7/17 | 4/6/17 | NONE | Set One by E.J. | 1-22 <br><br> **Total to date: 57 unique interrogatories, 79 including duplicates.** | **Duplicative set combines 1-13 of Set Five with 1-8 of Set Six. The duplicative interrogatories are withdrawn.** |