UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SOMERS,<br>  Plaintiff,<br>  v.<br>DIGITAL REALTY TRUST INC, et al.,<br>  Defendants. | Case No. 14-cv-05180-EMC (KAW)<br><br>**ORDER REGARDING DISCOVERY LETTERS**<br><br>Re: Dkt. Nos. 216, 220, 229, 239 |

Plaintiff Paul Somers brought the instant suit against Defendants Digital Realty Trust Inc. and Ellen Jacobs, alleging that he was wrongfully terminated on April 9, 2014. (First Amended Compl. ("FAC") ¶ 50, Dkt. No. 51.) Plaintiff claims he was terminated due to discrimination based on his sexual orientation, as well as for being a whistleblower. (FAC ¶¶ 32, 46.) Plaintiff also asserts that he was defamed by Defendants. (FAC ¶¶ 68-69.)

As succinctly observed by the presiding judge, "[t]he parties in this case have been continually unable to resolve their many discovery disputes amongst themselves." (Dkt. No. 218 at 1.) Since the case was referred to the undersigned on March 28, 2016, the Court has issued seventeen orders, and conducted several hearings, including supervising an over four-hour long meet and confer between the parties. (*See* Dkt. Nos. 110, 132, 138, 139, 159, 171, 172, 179, 184, 189, 191, 195, 196, 197, 199, 212, 221, 238.)

On February 24, 2017, the Court issued an order regarding the meet and confer process, requiring the parties to meet and confer by telephone, and to have the conversation recorded for the Court's review. (Dkt. No. 184.) On March 8, 2017, the parties filed separate letters on their inability to even agree on a recording program. (Dkt. Nos. 187, 188.) That same day, the Court concluded "that the parties are incapable of meeting and conferring." (Dkt. No. 189 at 1.)

Accordingly, the Court ordered the parties to each file a letter by March 14, 2017, "discussing **all** outstanding discovery disputes that the parties desire the Court to resolve," and set a hearing date to address those issues. (*Id.*)

On March 14, 2017, Defendants filed their letter, but Plaintiff did not. (*See* Dkt. No. 190.) On March 15, 2017, the Court issued an order stating that it would consider only Defendants' disputes, and that "[a]ll other outstanding discovery disputes that could have been raised are deemed waived, and will not be considered." (Dkt. No. 191 at 1-2.) Plaintiff then moved before the presiding judge for relief from the Court's March 15, 2017 order. (Dkt. Nos. 200, 201.)

On April 14, 2017, following an April 11, 2017 discovery hearing, the Court set a schedule for the parties to address all remaining disputes, to the extent they were not affected by an appeal pending before the Supreme Court. (Dkt. No. 212 at 1.) The Court also stated that Plaintiff could not raise any issues that were before the presiding judge, *i.e.*, issues that Plaintiff should have raised in the letter due on March 14, 2017, which the Court had then deemed waived for failure to raise in the required letter. (*Id.*)

Pursuant to the agreed upon schedule, on April 21, 2017, Defendants filed their discovery letter. (Defs.' Letter, Dkt. No. 216.) On April 25, 2017, the presiding judge denied Plaintiff's motion for relief from the March 15, 2017 order, finding that "[n]o law requires [Judge Westmore] to provide additional accommodations to a party who had failed to comply with the terms of her order." (Dkt. No. 218 at 2.) On April 29, 2017, Plaintiff filed his discovery letter, along with a "Supplement response to defendants [sic] discovery deficiencies." (Plf.'s Letter, Dkt. No. 220; Plf.'s Resp., Dkt. No. 220-1.) On May 5, 2017, Defendants filed their response to Plaintiff's discovery letter. (Defs.' Resp., Dkt. No. 224.)

On May 22, 2017, the Court ordered Plaintiff to provide a chambers copy of numerous filings, including his discovery letter and "Supplement Response." (Dkt. No. 232.) Plaintiff's chamber copy included an "Updated Version of 4/29/17 Submittal," which the Court had filed on the docket. (Plf.'s Updated Resp., Dkt. No. 237.) No objection to this "Updated Version" was filed.

## I. DEFENDANTS' DISCOVERY LETTER (DKT. NO. 216)

### A. Compliance with Discovery Orders

#### i. Terminating Sanctions

Defendants appear to request terminating sanctions, based on Plaintiff not providing promised documents by March 31, 2017, instead producing the evidence via DropBox on April 1, 2017 at 12:02 a.m. (Defs.' Letter at 1-2.) Defendants also state that they were unable to access the DropBox account due to lacking permission, and that Plaintiff did not send a password until April 3, 2017, the day of Plaintiff's deposition. (*Id.* at 2.) Defendants further contend that the files may not have actually been uploaded until April 2, 2017. (*Id.*) Thus, Defendants state that they were not able to access the documents until Plaintiff's deposition was underway, and thus they were unable to prepare for Plaintiff's deposition or promulgate third party subpoenas to test the veracity of Plaintiff's claims due to the discovery cutoff date. (*Id.*) Plaintiff disputes these assertions.[1] (Plf.'s Updated Resp. at 1-4.)

The Court DENIES the request for terminating sanctions. For the most part, the harms Defendants assert they have suffered would exist even if Plaintiff had provided the documents on March 31, 2017. The only exception is the inability to sufficiently prepare for Plaintiff's deposition. The Court will, therefore, allow Defendants to depose Plaintiff for an additional two hours, limited solely to the April 1 or 3, 2017 production.

#### ii. Requests for Production

Defendants contend that Plaintiff failed to supplement his responses to Defendants' Third, Fourth, and Fifth Sets of Requests for Production, as ordered by the Court. (Defs.' Letter at 2.)

First, Defendants argue that Plaintiff failed to provide travel documents showing whether he left Singapore post-termination. (*Id.* at 3.) Defendants seek an evidentiary sanction precluding Plaintiff from disputing that he travelled excessively for personal reasons in the year prior to his termination, and that he was not required to stay in Singapore following his termination. (*Id.* at 9.) Plaintiff responds that his trips were ordered and paid for by Digital Realty, and that he had used

---

[1] The Court will not address the parties' bickering about the appropriateness of using DropBox.

his Digital Realty e-mail to book personal trips. (Plf.'s Updated Resp. at 6.) Thus, without access to his former e-mail, Plaintiff asserts it is not possible to respond. (*Id.*) The Court ORDERS Plaintiff to provide what documents he possesses, if any, within fourteen days of the date of this order.[2] Plaintiff cannot be ordered to produce documents that he does not have. The Court DENIES Defendants' request for an evidentiary sanction.

Second, Defendants assert that Plaintiff has failed to produce bank statements, credit card receipts, hotel statements, hotel/airline rewards program records, and other travel documents. (Defs.' Letter at 3.) Defendants seek evidentiary sanctions precluding Plaintiff from claiming damages for failure to reimburse Plaintiff for any charges with receipts not produced prior to March 31, 2017. (*Id.* at 10.)[3] Plaintiff responds that getting the credit card and bank statements will be difficult, with bank statements costing $35/statement for twenty statements. (Plf.'s Updated Resp. at 6.) Plaintiff also states that Defendants already have this information, although Plaintiff does not explain how Defendants would possess such information. (*Id.*) The Court ORDERS Plaintiff to produce the bank statements and credit card receipts within thirty days. Plaintiff has chosen to bring this suit, and must satisfy his discovery obligations accordingly. Plaintiff must produce these documents within thirty days; if Plaintiff fails to do so, the Court may impose the evidentiary sanctions sought by Defendants.

Third, Defendants challenge Plaintiff's April 3, 2017 production of e-mails, which did not include native files or attachments (if any). (Defs.' Letter at 3.) It is not clear what relief Defendants seek from this failure to produce. To the extent that Plaintiff produced e-mails without providing the attachments, however, he is ORDERED to produce the attachments within fourteen days of the date of this order.

Finally, Defendants state that Plaintiff failed to respond to Requests for Production Sets

---

[2] This includes, for example, airline/hotel rewards program records, past flight information from airline accounts, hotel statements, and any other travel documents.

[3] It is not clear what relief Defendants seek from Plaintiff's alleged failure to produce the hotel statements, hotel/airline rewards program records, and other travel documents, separate from the evidentiary sanctions sought as to Plaintiff's failure to produce travel documents showing post-termination travel outside of Singapore.

4

Six and Seven. (Defs.' Letter at 3.) Based on this failure to produce, Defendants seek an order compelling Plaintiff to produce, within one week, evidence documenting the residency or travel of Mr. Raul Ruiz from 2011 to June 2014, as well as his employment history during that time. (*Id.* at 10.) Defendants also request a statement with exhibits demonstrating what Plaintiff believes constituted the "gating approval process." (*Id.* at 11.) Plaintiff responds that "[t]he requests relate to interrogatories outside the limit of the 50 allowed," and therefore "[n]othing is due." (Plf.'s Updated Resp. at 8.)

Requests for Production Set Six does not refer to any interrogatories; Plaintiff is therefore ordered to produce evidence documenting the residency or travel of Mr. Ruiz from 2011 to June 2014, as well as his employment history during that time, within fourteen days of the date of this order. As to Request for Production Set Seven, the Request refers to a response made by Plaintiff to an interrogatory. The fact that the Request refers to a response made by Plaintiff to an interrogatory does not make the Request for Production itself improper. Plaintiff is, therefore, ordered to provide Defendants with documents demonstrating what Plaintiff believes constituted the "gating approval process," to be produced within fourteen days of the date of this order. Because this is a Request for Production, Plaintiff is not required to create a statement in response.

### iii. Tape Recordings

Defendants seek evidentiary sanctions related to recordings that Plaintiff made, which Defendants assert were not produced until after the Court issued orders requiring him to produce the recordings. (Defs.' Letter at 4-5.) Defendants contend that they were "severely prejudiced" by the withholding because the recordings would have been helpful to Defendants in preparing for depositions; for example, Defendants state that they could not ask Plaintiff about some of the comments Plaintiff made in the recordings, as they did not have the recordings in time. (*Id.* at 5.) Defendants also assert prejudice because Plaintiff referred to the recording during Defendant Jacobs's deposition, but Defendants were unable to prepare Defendant Jacobs for that line of inquiry because they had not had the opportunity to hear the recording beforehand. (*Id.*) Defendants thus seek evidentiary sanctions prohibiting Plaintiff's use of the recordings. Plaintiff, in turn, asserts that one of his prior attorneys provided the recordings, but provides no evidence in

5

support. (Plf.'s Updated Resp. at 4.)

The Court DENIES Defendants' request for evidentiary sanctions. Defendants have received the recordings, and it is not clear from Defendant Jacobs's deposition excerpts that the recordings would have substantively affected her testimony. It should be noted that the deposition excerpts do not show at what point during the deposition Plaintiff was suggesting that he had tapes. Also, as Defendants appear to believe the tapes will only assist them, it is not clear why they want to prevent Plaintiff from using them if they will use them as well. With respect to Plaintiff's deposition, the Court has already granted Defendants an additional two hours, during which time the subject of the recordings can be addressed.

### iv. Mitigation and Damages

Next, Defendants seek an issue sanction that Plaintiff failed to mitigate his economic damages, based on Plaintiff's alleged failure to provide documentation related to mitigation, including documents relating to any job or job search such as resumes, cover letters, job applications, on-line job board data, offer letters, or paychecks. (Defs.' Letter at 6.) Plaintiff asserts that he had previously provided these documents but offers no evidence of the production. (Plf.'s Updated Resp. at 11.) The Court DENIES Defendants' request for an issue sanction; instead, the Court ORDERS Plaintiff to provide all mitigation documents, even if Plaintiff previously provided those documents, within fourteen days. If Plaintiff fails to produce these documents, or the production is deficient, the Court will consider the issue sanction sought by Defendants.

Defendants also seek an evidentiary sanction precluding Plaintiff from introducing evidence of economic harm. (Defs.' Letter at 6-7.) Defendants' request is based on Plaintiff's alleged failure to produce all documents and responses related to his claimed damages; instead, Defendants assert that Plaintiff only provided receipts for relocation, dry cleaning, storage, and travel. (*Id.* at 6.) Defendants also point to the lack of evidence of emotional distress, and contend that Plaintiff never provided evidence relied upon in preparing a spreadsheet that calculates front pay damages. (*Id.*)

The Court DENIES Defendants' request for an evidentiary sanction precluding Plaintiff

6

from introducing evidence of economic harm. Defendants admit that Plaintiff has produced at least *some* evidence of economic harm; Defendants simply assert that Plaintiff has not produced evidence to support *all* of Plaintiff's claims of economic harm. Thus, an evidentiary sanction precluding introduction of evidence of any economic harm is overbroad. To the extent, however, that Plaintiff failed to produce evidence of specific economic harm, such economic harm may not be recoverable at trial. Rule 26(a) requires that a party provide "a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to supports its claims or defenses." Rule 37(c)(1), in turn, "gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (internal quotation omitted). "Under Rule 37, exclusion of evidence not disclosed is appropriate unless the failure to disclose was substantially justified or harmless." *Id.* If Plaintiff failed to produce evidence in support of certain harms, Plaintiff will be unable to introduce such evidence at trial, and thus will be unable to support those specific damages claims. At this point, however, the Court lacks information regarding the details of the economic harm Plaintiff will seek to establish at trial, what evidence Plaintiff will seek to present at trial to support that claim, whether that evidence was previously produced to Defendants, or whether that evidence is adequate to support the damages Plaintiff seeks. This issue might be more properly addressed at the pretrial conference.

With respect to the emotional distress claim, the presiding judge previously found that Plaintiff was not required to turn over his medical records because he was claiming only "garden-variety" emotional distress damages, and had therefore not placed his psychological state in controversy. (Dkt. No. 116 at 2-3.) Plaintiff relies on this order to explain his failure to produce medical or psychiatric records. (Plf.'s Updated Resp. at 11.) Plaintiff is therefore allowed to seek garden-variety damages; should Plaintiff's emotional distress claims expand beyond those limits, Plaintiff will presumably not be able to seek such additional damages in light of his failure to produce the supporting evidence.

### v. Requests for Admission

Defendants challenge Plaintiff's responses to Requests for Admission, Sets Two and Three. (Defs.' Letter at 7.) Set Two was dated March 3, 2017, and served on Plaintiff by mail. (Defs.' Letter, Exh. 16.) Set Three was dated March 7, 2017, and served on Plaintiff by e-mail. (Defs.' Letter, Exh. 17.) Defendants contend that Plaintiff only responded to part of Requests for Admission, Set Three on April 7, 2017, after the deadline to respond. (Defs.' Letter at 7; *see also* Defs.' Letter, Exh. 18.) Defendants request that the Court find that Plaintiff cannot amend or withdraw his responses, and that the Requests for Admission that were not answered or objected to be deemed admitted. (Defs.' Letter at 8.)

Plaintiff responds that he responded at 12:02 a.m. on April 7, 2017. (Plf.'s Updated Resp. at 13.) Further, Plaintiff complains that he did not receive the Requests for Admission, Set Two in a legible form, instead receiving numerous e-mails and attachments. (*Id.*) Thus, Plaintiff argues that the Requests for Admission, Set Two were not properly served, and are thereby moot. (*Id.*)

The Court GRANTS Defendants' request that Plaintiff not be permitted to amend or withdraw his responses, and that the Requests for Admission that were not answered or objected to be deemed admitted. First, Plaintiff admits that his response was late, and gives no reason for the delay. Second, assuming that the e-mailed Requests for Admission, Set Two were not legible, Defendants also served the discovery request on Plaintiff by mail. Plaintiff does not suggest that he did not receive this mailed copy, or that the mailed copy was illegible. Accordingly, service was properly made and Plaintiff was required to respond.

### vi. Interrogatories, Set Three

Defendants seek $5,000 in monetary sanctions based on Plaintiff's failure to properly respond to these interrogatories. (Defs.' Letter at 8.) The interrogatories were served by mail on May 13, 2016; thus, any response was due by June 15, 2016. (Defs.' Letter, Exh. 23.) The Court previously ordered Plaintiff to respond to these interrogatories without objection by March 31, 2017, based on Plaintiff's untimely response to the interrogatories. (Dkt. No. 199 at 2.) Defendants state that Plaintiff failed to supplement his original response to the interrogatories, as required by the Court. (Defs.' Letter at 8.)

Plaintiff responds that he had answered the interrogatories, citing an e-mail sent to Mr.

Petersen on June 16, 2016. (Plf.'s Updated Resp. at 15.) Plaintiff does not dispute that his original response was late, or that he failed to comply with the Court's order to respond to the interrogatories without objection.

Accordingly, the Court will sanction Plaintiff $1,000 for failing to comply with the Court's order. Plaintiff is also directed to provide his response no later than fourteen days from the date of this order, or he will face additional sanctions. Plaintiff's failure to comply with his discovery obligations and the Court's orders are unreasonably multiplying the proceedings and will not be tolerated.

### vii. Interrogatories, Set Five

Defendants state that Plaintiff only responded to Interrogatories, Set Five, Nos. 1, 2, 5, and 8 with objections, and failed to respond to Nos. 9 through 13. (Defs.' Letter at 8-9.) Interrogatories Nos. 1, 2, 5, and 8 concern Plaintiff's travels outside of Singapore and after his termination. Defendants contend that the parties met and conferred about these interrogatories on April 11, 2017, in a Court-supervised phone call. During the call, the Court found that the questions did concern discoverable evidence because travel prior to Plaintiff's termination went to Defendants' concern about Plaintiff's frequent absences, while travel after Plaintiff's termination went to Plaintiff's claim that he was trapped in Singapore for several months after being fired. (*Id.* at 8.) Plaintiff does not dispute the Court's findings; instead, he argues that Defendants already possess a complete detailed record of his trips, and that he cannot accurately answer. (Plf.'s Updated Resp. at 15.) Plaintiff also argues that Defendants are well-aware that individuals can leave Singapore as long as it is not a permanent departure and not for more than three months. (*Id.* at 16.) Finally, he contends that Plaintiff cannot complete this discovery because a stay of the proceedings has been issued. (*Id.*)

Plaintiff is required to respond to these interrogatories, to the best of his abilities given his assertion that he no longer possesses the records sought. (*See id.* at 6.) Plaintiff does not adequately explain why Defendants possess a complete detailed record of his trips -- particularly of trips following his termination. Moreover, the evidence of post-termination trips is directly relevant to Plaintiff's claim that he was trapped in Singapore for several months. Finally, the

9

presiding judge issued an order permitting the undersigned to resolve certain discovery disputes if they did not pertain to issues related to the Supreme Court petition. (Dkt. No. 211.) This dispute falls within the scope of that order. Plaintiff is therefore required to respond to these interrogatories within thirty days of the date of this order.

With respect to Nos. 9 through 13, Defendants state that these interrogatories will be moot if the Court deems Plaintiff's failure to respond to Defendants' Requests for Admission, Set Two, as admissions. (Defs.' Letter at 9.) As discussed above, the Court has deemed Plaintiff's failure to respond to Defendants' Request for Admission, Set Two, as admissions. Accordingly, this issue is moot.

### B. Return of Privileged Documents

Defendants seek the return of an e-mail exchange they contend is protected by attorney-client privilege, in addition to $1,500 in sanctions. (Defs.' Letter at 11.) This e-mail is also the subject of Defendants' May 18, 2017 ex parte administrative motion to remove or file under seal certain documents filed by Plaintiff. (Dkt. No. 229.) On May 31, 2017, the Court found that "[w]hile the original e-mail introduces Attorney Pederson, the e-mail chain itself does not appear to include Attorney Pederson as a recipient or sender of any of the e-mails. Thus, it is not clear attorney-client privilege applies." (Dkt. No. 238 at 3.) The Court permitted Defendants to make a further filing to establish that the documents are sealable, which Defendants filed on June 9, 2017.[4] (Dkt. No. 239.) In their June 9, 2017 filing, Defendants argue that in the initial e-mail, Defendant Jacobs explained she was seeking information on behalf of Attorney Pederson so that Attorney Pederson could provide legal advice. (Dkt. No. 239 at 2.)

Having reviewed Defendants' filing and the e-mail chain at issue, the Court finds that Defendants have established that part of the e-mail chain is covered by attorney-client privilege, but not the entirety. First, Defendants have provided no evidence that Attorney Pederson was included in any of the e-mails except the initial e-mail. (*See* Petersen Decl., Exh. 1, Dkt. No. 239-

---

[4] In their June 9, 2017 filing, Defendants withdrew their request to seal Exhibits E and F. (Dkt. No. 239 at 2 fn. 1.) Thus, the Court DENIES the motion to remove or file under seal these exhibits. (*See* Dkt. No. 229.)

1; *see also* Dkt. No. 239 at 2 (stating that the initial e-mail clearly identifies Attorney Pederson as a recipient, but not discussing the remainder of the e-mail).) Second, while the initial e-mail from Defendant does seek information for Attorney Pederson regarding a deposit, the e-mail chain goes on to separate subjects, including the mechanics of taking over Plaintiff's lease. There is no evidence in the record that Attorney Pedersen requested this information, or that Defendant Jacobs was seeking this information for the purposes of obtaining legal advice. Instead, Defendants only cite to a declaration by Mr. Petersen, which states that the e-mail chain was begun by Defendant Jacobs, and that the initial e-mail introduced Attorney Pedersen and copied Attorney Pedersen on the e-mail. (Petersen Decl. ¶ 3.) The declaration does not state that Defendant Jacobs sought information about taking over Plaintiff's lease on behalf of Attorney Pedersen; even if it did, it is not clear that Mr. Petersen would have personal knowledge of this, as compared to Defendant Jacobs or Attorney Pedersen. Defendants bear the burden of establishing the attorney-client privilege, which they have failed to do with respect to the later messages in the e-mail chain. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) ("a party asserting the attorney-client privilege has the burden of establishing the relationship *and* the privileged nature of the communication") (internal quotation omitted).

The Court therefore GRANTS IN PART and DENIES IN PART Defendants' request to enforce the protective order. Plaintiff is directed to return or destroy the e-mail chain. Once Plaintiff has done so, Defendants must provide Plaintiff with a redacted version of the e-mail, which redacts only the information that is directly responsive to the request for information by Attorney Pedersen and Defendant Jacobs in the initial e-mail. Other information, such as the process of taking over the lease, must be unredacted. The Court DENIES the request for monetary sanctions. The Court also GRANTS IN PART AND DENIES IN PART Defendants' motion to remove or file under seal Exhibit C, consistent with this order.

## II. PLAINTIFF'S DISCOVERY LETTER (DKT. NO. 220)

### A. Search Terms

Plaintiff challenges the use of "secret search terms," arguing that the terms demonstrate that Defendants did not perform a reasonable search based on Plaintiff's requests for production.

(Plf.'s Letter at 2-4.) As an initial matter, it is not clear what relief Plaintiff seeks based on the use of the terms. Moreover, based on the Court's review of the search terms, the terms do not appear to be *per se* unreasonable. Plaintiff's three examples do not fully encapsulate the extent of Defendants' search terms. For instance, Plaintiff's first example concerns Plaintiff's request for "All communications, including but not limited to emails, to or from Ellen Jacobs regarding Plaintiff." (*Id.* at 4.) Plaintiff argues that the search was instead restricted to "Email between Ellen Jacobs and Paul Somer[s] from April 1-April 8, 2014." (*Id.*) This is not, however, an accurate reflection of the searches. In addition to this search, Defendants also searched all e-mails to/from/cc/bcc Dave Caron, Scott Petersen, and Bill Stein that referred to "Paul w/3 Somers," which would include additional e-mails with Defendant Jacobs, from November 1, 2013 onwards. (Dkt. No. 108-1 at B-1.) Defendants also searched all ESI collected from Defendant Jacobs from May 1, 2010 onwards, concerning search terms that were relevant to the instant case. (*Id.* at B-3-B-7.) These e-mails would also fall within Plaintiff's requests. Plaintiff's second example likewise concerns communications to or from Kris Kumar regarding Plaintiff from November 1, 2013 to the present. (Plf.'s Letter at 4.) Plaintiff contends this search was restricted to "Email between Kris Kumar and Dave Caron." (*Id.*) As with Plaintiff's first example, however, there are other searches that would fall within the ambit of this request, even if they do not specifically search only the ESI of Mr. Kumar. (*See* Dkt. No. 108-1 at B-2-B-7.) Finally, Plaintiff's third example in support of his claim that the search terms are inadequate claims that Sara "Schubert was completely left out of the search." (Plf.'s Letter at 4.) This, however, is simply not true; Defendants' search terms indicate that they reviewed the ESI of Ms. Schubert from May 1, 2010 onwards, based on specific search terms relevant to the instant case. (*See* Dkt. No. 108-1 at B-3-B-7.) Accordingly, the Court finds that Plaintiff has failed to demonstrate that the search terms used by Defendants were inadequate, and DENIES Plaintiff's request for relief.

Plaintiff also protests Defendants' inclusion of the terms as an attachment to a joint letter that had been signed by Plaintiff prior to the inclusion of that attachment. (Plf.'s Letter at 5-7.)[5]

---

[5] The Court notes that Plaintiff himself uploaded the attachment that included the search terms, not Defendants. (*See* Dkt. No. 108.)

12

Plaintiff does not explain what relief he seeks as a result of this inclusion. The Court therefore DENIES Plaintiff's request for relief, to the extent he seeks any relief for the inclusion of the search terms as an attachment to the joint letter.

Finally, Plaintiff contends that Defendants blame the search terms on Plaintiff's former counsel. (Plf.'s Letter at 7.) Again, Plaintiff does not explain what relief he seeks from this. The Court DENIES Plaintiff's request for relief, to the extent he seeks any relief.

### B. 2015 Request for Production - Kris Kumar Termination

Plaintiff seeks all documents related to Kris Kumar's termination, contending that Defendants' assertion that Kumar voluntarily resigned is false because Defendant filed a lawsuit against Kumar. (Plf.'s Letter at 5.) On July 8, 2016, the Court ordered Defendants to "produce any responsive documents subject to the stipulated protective order entered in this case." (Dkt. No. 110 at 2.) Defendants assert that they provided Mr. Kumar's voluntary resignation letter and the correspondence conveying that letter, and dispute that Mr. Kumar was terminated. (Defs.' Resp. at 6.)

Defendants cannot be required to produce evidence that does not exist. As Plaintiff has produced no evidence that Mr. Kumar was, in fact, terminated, the Court DENIES Plaintiff's request that Defendants produce all documents related to Mr. Kumar's termination.

### C. Request for Production No. 3

Plaintiff lists seventeen requests for production that he asserts Defendants refused to produce. (Plf.'s Letter at 7-8.) Defendants' response to Plaintiff's Requests for Production No. 3 is attached to Defendants' response, and dated February 21, 2017. (Defs.' Resp., Exh. 8.) Plaintiff was therefore on notice of any alleged deficiency in the production prior to March 14, 2017, when Plaintiff was required to file his letter. As Plaintiff did not file his March 14, 2017 letter, Plaintiff has waived the issue. (Dkt. No. 191 at 1-2; *see also* Dkt. No. 218.) The Court therefore DENIES Plaintiff's request that Defendants produce documents in response to the seventeen requests for production.

### D. Request for Production No. 4

Plaintiff lists twenty-two requests for production that he asserts Defendants refused to

13

produce. (Plf.'s Letter at 8-11.) Plaintiff does not explain what objections were made, or why those objections should be overruled. Per Civil Local Rule 37-2, as the party seeking to compel discovery, Plaintiff has the obligation to "detail the basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied." *See also Campbell v. Facebook Inc.*, Case No. 13-cv-5996-PJH, 2016 WL 7888026, at *1 (N.D. Cal. Oct. 4, 2016) ("As the moving party, plaintiffs must inform the court . . . why defendant's objections are not justified or why the response provided is deficient, and how proportionality and the other requirements of Federal Rule of Civil Procedure 26(b) are met"). By merely listing the disputed requests for production, Plaintiff has failed to satisfy this obligation, and on that basis, the Court DENIES Plaintiff's request that Defendants produce documents in response to these twenty-two requests for production. *See Opperwall v. Bank of Am.*, 561 B.R. 775, 782 (N.D. Cal. 2016) (denying motion to compel where the moving party failed to comply with Civil Local Rule 37-2).

Moreover, upon review of Defendants' responses to Request for Production No. 4, the Court finds no obvious deficiencies in the objections made. Many of the objections concern relevance, which Plaintiff has the burden of establishing. *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 245 n.79 (N.D. Cal. 2015) (explaining that the party seeking production had the burden of explaining "why the information sought is relevant and why Defendant's objections are not justified") (internal quotation omitted); *see also Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-cv-2226 SI (KAW), 2013 WL 1402337, at *2 (N.D. Cal. Apr. 5, 2013) (permitting the defendant to conduct certain discovery as "it appears that [the d]efendant has met its initial burden of showing relevance for the purposes of discovery"). Again, Plaintiff has not explained the relevance of much of the discovery sought, which appears to be overbroad and/or of limited relevance, if any. (*E.g.*, Request No. 130 (seeking all communications "to or from Optimus Chambers Advocates and Solicitors from April 1, 2014 to the present"); Request No. 131 (seeking all communications "to or from Jerrytan Residential Pte Ltd. from April 1, 2014, to the present"); Request Nos. 137-138 (seeking invoices and statements for legal services billed to Digital Realty Trust since December 1, 2013); Request No. 139 (seeking "[a]ll agreements, contracts, invoices,

14

and correspondence with Spencer Stuart regarding the search for a CEO to replace Mike Foust"); Request Nos. 148-149 (seeking access control logs for February 10-12, 2014).) Other requests seek clearly privileged attorney-client information. (*See* Request Nos. 135 (seeking all documents and written communication between Defendant Jacobs and Defendants' counsel).) For this additional reason, Plaintiff's request for relief is denied.

### E. Initial Disclosures

#### i. Damages (Retaliation)

Plaintiff contends that "Defendants have yet to provide any estimates of damages for the many retaliatory counterclaims they filed in February 2015." (Plf.'s Letter at 11.) Defendants respond that this is a matter "properly put" to the presiding judge, but offers no authority for this proposition. (Defs.' Resp. at 7.) Defendants also argue that they have provided information about their damages for the defamation counterclaims. (*Id.* at 7-8.)

The Court finds that Defendants' disclosure of its damages are inadequate. Under Rule 26(a), the parties must disclose "a computation of each category of damages claimed by the disclosing party," in addition to making available for inspection and copying the documents on which the computation is based. Courts in this circuit have found that to satisfy the Rule 26 obligation, "[the party] should provide its assessment of damages in light of the information currently available to it in sufficient detail so as to enable [the opposing party] to understand the contours of its potential exposure and make informed decisions as to settlement and discovery." *City & Cty. of S.F. v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003). Applying this principle, the district court in *Frontline Medical Associates v. Coventry Health Care* found that initial disclosures regarding reputational harm were "clearly deficient" where the plaintiff stated only that damages were based on lost referrals, but "provide[d] no computation whatsoever . . . ." 263 F.R.D. 567, 570(C.D. Cal. 2009).

Here, Defendants' disclosure is arguably even more deficient than that in *Frontline Medical Associates*. As to defamation, Defendants only state that they will "testify as to any reputational harm and distress they have suffered because of Plaintiffs' defamatory statements

against [Defendants]." (Defs.' Resp., Exh. 10 at 5.)[6]  As to the third counterclaim, Defendants provide no information whatsoever, stating only that "[t]he precise value of damages is presently unknown, as discovery is ongoing." (*Id.*) The Court therefore ORDERS Defendants to provide, within thirty days, an adequate assessment of the damages they will be claiming, including an actual computation for each category of damages, as well as how those damages were calculated if available. *See City & Cty. of S.F.*, 218 F.R.D. at 222 ("the Court contemplates that Plaintiffs will update its disclosure and provide greater detail as to its calculations as discovery progresses").

### ii. Witness Addresses

Plaintiff asserts that Defendant has "refuse[d] to provide the contact information for the witnesses listed." (Plf.'s Letter at 11.) The Court disagrees. Defendants' disclosure includes the last known address of all identified witnesses, with the exception of Plaintiff himself and current employees of Defendant Digital Realty, who can be contacted through Defendants' counsel. (Defs.' Resp., Exh. 10 at 2-4.)

### F. Depositions

Plaintiff seeks $3,500 in sanctions based on the behavior by Defendants' counsel during Defendant Jacobs's deposition, which Plaintiff asserts "makes it clear he was there to obstruct matters and take up time rather than have [Defendant] Jacobs answer questions." (Plf.'s Letter at 11.) Plaintiff also contends that "Defendant did not fully participate in the PMK deposition," as Defendants' counsel refused to tell Plaintiff in advance who would be the PMK and then instructed the PMK not to answer multiple questions. (*Id.* at 12.) Plaintiff further states that one of the PMKs was "not qualified to be the PMK," but does not explain why. (*Id.*)

Defendants respond that to the extent Plaintiff is complaining about Defendant Jacobs's deposition, which occurred in February 2017, the issue is waived. (Defs.' Resp. at 8.) Defendants also state that to the extent deponents were instructed not to answer, it was in the context of privileged work product or attorney-client communications. (*Id.*)

---

[6] During Defendant Jacobs's deposition, Defendant cited to examples of Plaintiff's alleged defamatory statements, but still provided no computation or calculation of damages, as required by Rule 26.

The Court DENIES Plaintiff's request for sanctions. Plaintiff does not give any information on what "behavior" he contends was obstructing the deposition; Plaintiff neither describes this alleged "behavior" or provides deposition transcripts. With respect to the PMK deposition, it is not clear what relief Plaintiff seeks, if any. Further, again, there is no information on what questions the PMK witnesses were instructed not to answer, and whether those instructions were improper. Additionally, there is no information on why one of the PMKs was not qualified to be the PMK, and what information Plaintiff was unable to obtain as a result of the PMK designation. Finally, Plaintiff does not identify any authority that a PMK witness must be identified prior to the deposition. Moreover, the Court agrees that the issues arising out of the February 2017 deposition have been waived. The Court therefore DENIES Plaintiff's request for relief, to the extent Plaintiff seeks any relief.

### G. Request for Inspection of Original Documents

Plaintiff challenges Defendant's refusal to allow him to inspect original documents. (Plf.'s Letter at 12.) Defendant responds that they are permitted to produce copies of documents instead of permitting inspection of the original documents under Federal Rule of Civil Procedure 34(b)(2)(B). (Defs.' Resp. at 8.)

Rule 34(b)(2)(B) states:

> For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.

Notably, Rule 34(b)(2)(B) was "amended to reflect the common practice of producing copies of documents or electronically stored information rather than simply permitting inspection." Fed. R. Civ. P. 34(b)(2)(B) advisory committee's note to 2015 amendment. The response, however, "must state that copies will be produced." *Id.*

Here, Plaintiff does not argue that Defendants failed to state in their response that copies will be produced, or otherwise explain why Defendants should be required to permit inspection of

17

the original documents if they have already produced copies of the documents sought. Accordingly, Plaintiff's request for inspection of the original documents is DENIED.

### H. Interrogatories Set 1

Plaintiff states that this is "[p]ending with the Magistrate Judge." (Plf.'s Letter at 12.) It appears Plaintiff is referring to the parties' sixth discovery letter, which was filed on April 7, 2017. (*See* Dkt. No. 206.) On May 2, 2017, the Court denied the relief sought by the sixth discovery letter. (Dkt. No. 221 at 3.) Plaintiff then moved for "review" of the Court's May 2, 2017 order, which the Court denied on May 31, 2017. (Dkt. Nos. 233, 238.) To the extent Plaintiff seeks additional relief outside of the sixth discovery letter, Plaintiff's request is DENIED for failure to explain what the dispute is and his position.

### I. Privilege Log

Finally, Plaintiff states that "Defendant[s'] privilege log does not meet the requirements of the Federal District Court for Northern California.R.Civ.P.26(b)(5)," and that "[a]s a result, Plaintiff is unable to comment." (Plf.'s Letter at 12.) Plaintiff does not provide the privilege log, explain why it is deficient, or articulate what relief he seeks as a result of the deficiencies. Accordingly, Plaintiff's request is DENIED.

## III. CONCLUSION

For the reasons stated above, the Court ORDERS as follows:

(1) Defendants' request for terminating sanctions is denied.

(2) Plaintiff must produce what travel documents he possesses, if any, showing whether he left Singapore post-termination within **fourteen days** of the date of this order. This includes airline/hotel rewards program records, past flight information from airline accounts, hotel statements, and any other travel documents.

(3) Plaintiff must produce bank statements and credit card receipts evidencing his expenses within **thirty days** of the date of this order.

(4) Plaintiff must produce any attachments to the April 3, 2017 production of e-mails within **fourteen days** of the date of this order.

(5) Plaintiff must produce evidence documenting the residency or travel of Mr. Ruiz

from 2011 to June 2014, as well as Mr. Ruiz's employment history during that time, within **fourteen days** of the date of this order.

(6) Plaintiff must produce documents demonstrating what Plaintiff believes constituted the "gating approval process" within **fourteen days** of the date of this order.

(7) Defendants' request for an evidentiary sanction precluding Plaintiff from using the recordings is denied.

(8) Plaintiff must produce documents of his mitigation of economic damages within **fourteen days** of the date of this order.

(9) Defendants' request for an evidentiary sanction precluding Plaintiff from introducing evidence of economic harm is denied.

(10) Defendants' request that Plaintiff not be permitted to amend or withdraw his responses to Requests for Admission, Sets Two and Three, and that the Requests for Admission that were not answered or objected to be deemed admitted, is granted.

(11) Plaintiff must provide supplemental responses to Interrogatories, Set Three, without objection, within **fourteen days** of the date of this order. Plaintiff is also sanctioned **$1,000** for failing to supplement his responses, as ordered by the Court. This amount must be paid to Defendants within **fourteen days**.

(12) Plaintiff must provide responses to interrogatories regarding Plaintiff's travels outside of Singapore and after his termination, to the best of his abilities, within **thirty days** of the date of this order.

(13) Defendants' request to enforce the protective order and motion to remove or file under seal Exhibit C is granted in part and denied in part.

(14) Plaintiff's request for relief regarding the search terms used by Defendants is denied.

(15) Plaintiff's request for evidence of Mr. Kumar's alleged termination is denied.

(16) Plaintiff's request for documents in response to Requests for Production No. 3 is denied.

(17) Plaintiff's request for documents in response to Requests for Production No. 4 is denied.

(18) Defendants must produce an adequate assessment of the damages they will be claiming, including an actual computation for each category of damages and how those damages were calculated, if available, within **thirty days** of the date of this order.

(19) Plaintiff's request for updated contact information of witnesses is denied.

(20) Plaintiff's request for sanctions with respect to Defendant Jacobs's and the PMKs' depositions is denied.

(21) Plaintiff's request for inspection of original documents is denied.

(22) Plaintiff's request for relief as to Interrogatories Set No. 1 is denied.

(23) Plaintiff's request for relief as to the privilege log is denied.

This order resolves the parties' remaining discovery disputes. Except for disputes related to the production ordered herein, as well as the pending motion for a protective order, the parties are not to file any further discovery-related letters or requests.

IT IS SO ORDERED.

Dated: July 11, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge