**PAUL SOMERS**
185 Channel Street #114
San Francisco, CA 94158
Telephone: (917) 868-1070
paulsomers@me.com
*Pro Se* PLAINTIFF

UNITED STATES DISTRICT COURT

FOR

THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SOMERS, an individual,<br><br>Plaintiff,<br><br>vs.<br>DIGITAL REALTY TRUST INC., a Maryland corporation, ELLEN JACOBS, an individual, and DOES ONE through TEN, inclusive,<br><br>Defendants. | Case No. 14-CV-05180 KAW<br><br>**RESPONSE TO DEFENDANTS' EX PARTE LETTER (DKT. 271) KAW** |

### Introduction

Plaintiff is voluntary submitting this supplement to his initial filing (Dkt. 260). Plaintiff disagrees with the Court's assumption that Plaintiff's response to Docket 271 is late. Docket 271 is nothing more than another of Defendants' ex parte letters filed with the Court. It fails to establish even a single legitimate discovery dispute-let alone any repeated, prejudicial violations of Court orders that are a prerequisite to the extraordinary monetary and evidentiary sanctions Digital Realty demands every few weeks. The primary claim, that Mr. Somers failed to produce discovery is false. The Court should not assign sanctions unless there is as valid reason and/or motion for sanctions to

respond to and a required hearing. It is important that due process be reintroduced in these proceedings. For example, Plaintiff is deeply troubled by this statement by the Court (Dkt. 277):

> *"Defendants' arguments appear to be primarily based on a publicly available article that Plaintiff published on his own website, which further highlights that the current dispute is about Plaintiff's actions, not Defendants'."*

It would seem that this Court has determined the outcome of this matter before Plaintiff has had the opportunity to respond and ask questions of witnesses at a hearing and before Defendant has filed a motion. Since no motion is on the table, the following information is to inform the Court of the very serious misconduct which occurred as a part of Defendants on-going campaign to damage Plaintiff and mislead the court. Plaintiff notes that the on-going the impartial nature of this Courts decisions in this matter has reached a point that it is no longer tolerable. Plaintiff requests that the rules and laws of discovery, which are the laws of the United States, be respected in these proceedings at all times, not only when it helps the Defendants.

**Argument**

A. The failures by the Defendants persist:

1. On September 18, 2017 Digital Realty & Ellen Jacobs filed an ex parte letter asking for significant sanctions be imposed on Plaintiff for alleged discovery issues. The letter contained no legal support

2. Hours later, based upon the ex parte letter, the Court Ordered plaintiff to respond to the ex parte letter as if it was a Motion for Sanctions.

3. Plaintiff was unable to find case law to support the Court's casual process for awarding sanctions. Plaintiff protested and gave a detailed response on October 16, 2017.

4. The Magistrate Judge changed her mind after ordering Plaintiff to respond to it the ex parte letter and terminated Defendants' letter on November 1, 2017. The reason given by the Court is that there are substantial sanctions. Plaintiff has been unable to locate any case law or laws on substantial or insubstantial sanctions. No sanctions can even be considered until this court provides guidance on the various sanction levels referred to by the Court.

5. Rule 7-8 requires that a motion for sanctions "must comply with any applicable Fed. R. Civ. P. and must be made as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate.." Digital has great wealth and resources yet fails to explain why they waited over three months to refile and then finally it did so improperly.

6. Docket is not a motion, it is an ex parte document in violation of Civil Local Rule 7-10. A party may not file an ex parte motion, that is, a motion filed without notice to opposing party, only if a statute, Federal Rule, local rule or Standing Order authorizes the filing of an ex parte motion in the circumstances and the party has complied with the applicable provisions allowing the party to approach the Court on an ex parte basis. The motion must include a citation to the statute, rule or order which permits the use of an ex parte motion to obtain the relief sought. Digital did not comply.

7. Digital did not not meet and confer nor provide and attestation that it tried to settle this matter without the court's intervention.

8.

**B. Further review of Digital's Spindly Reasons for Sanctions Still Fail.**

Plaintiff's argument has already been stated and attached to his Declaration. To further this, Every single supposedly missing category of documents Digital references is either (1) in Digital's possession, (attachments to the April 3, 2017 production of e-mails), (2) non-existent (All documents constituting the "gating approval process"), or (3) untimely and/or never properly requested by

Digital, let alone the subject of a discovery order.  Digital even fails to present legal arguments for either evidentiary or monetary sanctions!    Digital states no case law to support their position citing Chambers and Nasco which are unrelated to the sanctions they wish to impose upon Plaintiff. They believe they are entitled evidentiary sanctions ignoring the five-factor test governing evidentiary sanctions of this type. Specifically, in addition to proving a violation of a court order (which Digital Realty cannot do), Digital must show that each of the following five factors weigh in favor of issuing evidentiary sanctions: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990 ) (alteration in original) (followed by Wendt v. Host-Intern., Inc., 125 F.3d 806, 814 (9th Cir. 1997)). As Wanderer observed, the Ninth Circuit has "found the element of prejudice to be essential, stating that sanctions which interfere with the litigants' claim or defenses violate due process when they are imposed `merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case."' Id. (quotation omitted) (emphasis added). Digital Realty fails to address any of these elements in its ex parte letter. Digital cannot even assert, let alone prove, any supposed prejudice flowing from any alleged discovery failures.  This also applies to the item referred to as a sanction ($1,000 criminal sanction) which Plaintiff does not recognize since it fails the above test and Plaintiff should have been provided legal counsel.  It was not properly put in a motion for sanctions as this Court has now confirmed.

Let's call Mr. Ashe's new letter what it is;  bad faith and callous disregard of the Federal Rules of Civil Procedure, The Ninth Circuit has held that "[b]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argue against a meritorious claims for the purpose of harassing an opponent." Estate of Blas v. Winkler, 792 F.2d 858, 860 (9th Cir. 1986). To

impose sanctions under § 1927, "if a filing is submitted recklessly, it must be frivolous." In re Keegan Mgmt. Co., 78 F.3d 431, 436 (9th Cir. 1996).  It's clear that Digital's sole aim here is to harass Plaintiff and attempt to remove issues and important evidence which prove Plaintiff's claims.

The Court must not permit any further attempts by Defendants to raise sanctions on any discovery in a rookie manner such as this.  If the Court does not sanction Defendants for their current misplaced efforts in accordance with Civil Local Rule 1-4, Plaintiff will file a motion to do so.

**C.  Perjury, Table for Four?**

Below is the chronology of events in Washington with evidence to support it by Google.  The evidence is sufficient to prove that Mr. Mills, Mr. Chang, Mr. Ashe and Ms. Wetmore, colluded to fabricate false evidence which each certified and swore was true under oath in their Declarations. The Court should now see why it is important that discovery be reopened to prove additional misconduct by Digital and Seyfarth which has been used to mislead the Court. It is imperative that the Depositions of Mr. Mills, Mr. Chang, Mr. Ashe and Ms. Wetmore be taken concerning these Washington events because it will prove they have been and are engaged in profound misconduct which has greatly prejudiced Plaintiff in this lawsuit.   Attorneys who engage in perjury to fabricate evidence are subject to serious punishment up to and including disbarment.  Plaintiff also needs the Depositions of Mr. Ashe, Ms. Petersen and Ms. Wetmore regarding the Secret Search Term scandal of May 25, 2016 when Ms. Wetmore filed the fraudulent and forged document. (Dkt. 103).

If the Court does not initiate punishment for Mr. Mills, Mr. Chang, Mr. Ashe and Ms. Wetmore, Plaintiff will pursue it until completion.  The world doesn't need liars and thieves with licenses to practice law.  A great deal of damage to reputations, emotional pain and suffering has been incurred by Mr. Somers and his partner based upon perjury which Digital Realty has promoted.

It's clear that Seyfarth orchestrated attorneys to create the false testimony so they could hide behind privilege. Digital Realty as a company is not protected. Discovery will reveal that non-lawyers do not support the assertions made by Digital Realty regarding the events in Washington. Proving Mr. Mills, Mr. Chang, Mr. Ashe and Ms. Wetmore, engaged in perjury will not be difficult. It's also noted that Defendants waited two months to file their letter concerning their falsified events in Washington D.C.

Below is a factual account of what did occur in Washington D.C.. Plaintiff's evidence is real and supported by Google. See all exhibits and attachments to Declarations of Mr. Somers and Mr. Ruiz.

On November 27, 2017, Plaintiff left New York City on the Amtrak Acela non-stop to Washington D.C. Upon arrival he took a taxi to the Watergate Hotel where he waited for his partner, Mr. Ruiz who was flying in from Chicago.

On November 28, Mr. Somers and Mr. Ruiz took a taxi to the Supreme Court and attended the Oral Arguments. When the session was over the two walked for a bit under clear blue skies. Mr. Ruiz commented at how distasteful it was for Bill Stein and several low level lawyers at Digital to use the occasion to become members if the Supreme Court Bar. They then discussed finding a place for a sit down lunch. Mr. Somers said he was in the mood for steak frites. Both did some Google searches and determined that the only nice sit down restaurant within walking distance to the Supreme Court is Charlie Palmers Steak. Mr Ruiz made a reservation on Open Table. Mr. Somers and Mr. Ruiz made their way to the restaurant admiring the Capitol Building and remarked on what a warm sunny day it was for the end of November. Mr. Somers remarked that he wished his mother had lived

a few more weeks so she could have seen some of the photos Mr. Ruiz had taken of him in front of the Supreme Court after the hearing. The pair found the restaurant Mr. Ruiz reserved. They enter and approach the hostess stand. In front of them was a rather large man in a grey suit who was also waiting, perhaps to speak to the host/hostess. At some point Mr Somers recognized the man as Mr. Josh Mills, though the two had never met. Mr. Somers, inquired, "Josh Mills?" Mr. Mills turned around and put out his hand and said "hello." Mr. Somers shook his hand and said, "Paul Somers, nice to finally meet you." Mr. Mills looked surprised and replied, "You son-of-a-bitch," as he pulled had away quickly, shaking it as he had been given him some incurable disease. As Mr. Mills turned around he muttered something using the word "faggot." Mr. Somers was startled by Mr. Mills harsh and homophobic demeanor, though it is common knowledge that this is the tone at the top of Digital Realty. Mr. Ruiz and Mr. Somers were taken to their table. Mr. Somers was visibley shaken and upset. Mr. Ruiz realized very quickly that Digital was using the Supreme Court occasion to have one of their drinking celebrations. The restaurant had portioned off part of the restaurant in full view of other patrons enjoying lunch where the celebration was just starting.

     Mr. Ruiz could see that the Digital's expensive celebration of retaliation was understandnly upsetting to Mr. Somers so they moved to a quieter part of the restaurant. Mr. Ruiz counted perhaps 50 or more people in the section of the restaurant reserved for the big celebration. The event became so loud that patrons were asking the management to do something about the noise. It was clear that most of the people at the event were drinking heavily, which is what occurs on many of Digital's fraternity style junkets.

     After finishing lunch, Mr. Ruiz and Mr. Somers walked out to the front of the restaurant. Mr. Ruiz had requested a Lyft to come to the restaurant and take them back to the Watergate Hotel.

There were already a dozen or more people crowded around Bill Stein.  No one took notice of Mr. Somers, which is understandable since Mr. Somers did not know who most of them were. Mr. Justin Chang was jumping up and down wildly, clearly drunk or on something  Mr. Ruiz continued to take photos of various views as he had been doing all of the day.

After a few minutes, Mr. Ruiz indicated the Lyft was over to the side of the restaurant.  The two walked over and saw their Lyft vehicle.  As they approached the car an older gentleman reached for the rear door handle as if to get inside the vehicle.  Mr. Ruiz politely told the man it was not his Lyft ride. The man backed away.  Mr. Somers told the man that he recognized him but did not know from where.  The man explained that he was with Merrill Lynch at one time. Mr. Somers then introduced himself.  The man suddenly looked shocked.   Mr. Somers then asked the gentleman's name.   He refused and mumbled something about Merrill Lynch again.  Mr. Ruiz and Mr. Somers got into the Lyft and went back to the Watergate Hotel.  Mr. Somers googled Digital's board and identified him as Mark Patterson.  Neither Mr. Ruiz nor Mr. Somers could understand why Mr. Patterson was ashamed to introduce himself.

That night Mr. Ruiz and Mr. Somers left the Watergate and went to dinner at RPM. After dinner they returned to the Watergate Hotel and went to sleep.  In the morning they arose at 4:30 AM to catch flights at Ronald Reagan International Airport.  They both left Washington D.C. before sunrise on November 29, 2017.

All of Mr. Somers movements were captured by Google as seen on the attached Declaration.

## Conclusion

Plaintiff is clear of the shameful criminal allegations made by Seyfarth Shaw and Digital. Plaintiff will now pursue criminal charges for perjury and file motions to recover damages for the

8   RESPONSE TO DEFENDANTS' EX PARTE LETTER

misuse of this legal process by the Defendants and their counsel who used it only to harass, annoy and delay proceedings.  This Court should act impartially and sanction the Defendants to the maximum extent possible for their failed and frivolous filings.  This Court should support the reopening of discovery to allow the misconduct by the Defendants over the past three years to be brought to light and used to determine the outcome of this lawsuit, not hidden to help fellow lawyers escape due punishment.  Since this is not a reply to an actual motion, the Defendant need not reply.

Dated this 6th Day of March, 2018.

    /s/ Paul Somers
PAUL SOMERS
Pros Se