1
2
3
4

**PAUL SOMERS**
185 Channel Street #114
San Francisco, CA 94158
Telephone: (917) 868-1070
paulsomers@me.com
*Pro Se* PLAINTIFF

5
6

UNITED STATES DISTRICT COURT

7

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| PAUL SOMERS, an individual, | Case No. 14-CV-05180 KAW |
| Plaintiff, | **NOTICE OF MOTION AND MOTION, MEMORANDUM OF POINTS AND AUTHORITIES REQUESTING THE RECUSAL OF MAGISTRATE JUDGE KANDIS WESTMORE** |
| vs. | |
| DIGITAL REALTY TRUST INC., a Maryland corporation, ELLEN JACOBS, an individual, and DOES ONE through TEN, inclusive, | Hearing not required |
| Defendants. | |

9
10
11
12
13
14
15
16

Mr. Paul Somers ("Plaintiff"), respectfully moves for the recusal of the Honorable

17

Magistrate Judge Kandis Westmore ("Magistrate") from any proceedings in this case pursuant to

18

28 U.S.C. § 455(a) and 455(b).

19
20

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

21

Authorities filed herewith, the declaration of PAUL SOMERS in support, the pleadings and papers

22

on file herein, and upon such other matters as may be presented to the Court at the time of the

23

hearing.

24

Dated: March 20, 2018

25
26

Respectfully Submitted
*/s/ Paul Somers*

27
28

_____
PAUL SOMERS,
Self-represented litigant

**RECUSAL OF MAGISTRATE JUDGE KANDIS WESTMORE - 1**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO RECUSE OR DISQUALIFY MAGISTRATE JUDGE KANDIS WESTMORE**

## INTRODUCTION

After a thorough investigation, and considering evidence collected by an agnostic third party, there is little doubt that Magistrate Judge Kandis Westmore ("Magistrate") has a clear bias in favor of Defendants.  This bias stems from extrajudicial sources namely her investigation of the facts of this case and her ex parte communications with the defendant.  This is not speculation or a belief but rather based upon factual information which implicates not only the Magistrate but exposes the Defendants and their counsel to even more misconduct than Plaintiff has raised previously. , the evidence shows the Magistrate has been actively investigating the facts of these proceedings.  A closer look what at what facts she has been investigating points to a strong likelihood that the Magistrate has been having regular ex parte communications with the Defendants.  Each of these improper actions has lead to a multitudes of biased decisions and actions by the Court which have greatly prejudiced Plaintiff. It is for this reason, Plaintiff moves to recuse the Magistrate under Section 455(a) which requires a judge recuse herself  "whenever impartiality might reasonably be questioned." Liteky v. United States, 510 U.S. 540, 548 (1994) (citations omitted). "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 865 (1988). Thus, "what matters is not the reality of bias or prejudice but its appearance." Liteky, 510 U.S. at 548.

The Supreme Court has solemnly stated that the Due Process Clause clearly requires a "fair trial in a fair tribunal" before a judge with no actual bias against the defendant or interest in the outcome of his particular case. Without the public's perception of an impartial

judge, the very foundations of the judiciary's power are shaken. Our own Ninth Circuit Court of Appeals has mandated that if there appears any threat to this confidence, where there is a valid question of a judge's impartiality, regardless of the actual truth, such an appearance must yield recusal.  To protect Plaintiff's right to a fair and impartial adjudication of his claims, and to promote public confidence in the integrity of the judicial process, Plaintiff  requests that either Magistrate Judge Westmore recuses herself from this case, or,  per Local Civil Rule 3-14, the Magistrate refer this request for disqualification to the Clerk for random assignment to another Judge.

## BACKGROUND

Plaintiff reluctantly became a self-represented litigant in March 2016 and immediately pleaded with the presiding judge for help in getting the defendants to end their stonewalling on discovery production.  Magistrate Judge Kandis Westmore was assigned to help. For the first six months, the Magistrate acted fairly and without bias (Dkt.139).  Fairness and impartiality ended with an Order on November 21, 2016, (Dkt. 159) when the Magistrate decided she would no longer require a meet and confer before filing.  She allowed Defendants to ignore her Standing Order and Civil Local Rules and other requirements. She also made it apparent that she would take everything written by the Defendants as truthful without an opportunity for Plaintiff to be heard.

While Plaintiff has been aware that the recusal of the Magistrate has been needed for some time, he only discovered evidence last week which was needed to prove the Magistrate's bias stems from an extrajudicial source.  This motion is therefore, timely.

## ARGUMENT

**RECUSAL OF MAGISTRATE JUDGE KANDIS WESTMORE - 3**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. RECUSAL IS REQUIRED BECAUSE MAGISTRATE JUDGE WESTMORE HAS BEEN INDEPENDENTLY INVESTIGATING FACTS IN THESE PROCEEDINGS.

The magistrate judge has been investigating the facts of this case independently in violation of Judicial Canon 3.

> "Judicial Canon 3(B)(7) states that a judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the full right to be heard according to law.   Unless otherwise authorized by law, a judge shall not independently investigate facts in a proceeding and shall consider only the evidence presented or facts that may be properly judicially noticed. This prohibition extends to information available in all media, including electronic."

According to The American Bar Association <u>Standing Committee on Ethics and Professional Responsibility</u> <u>Formal Opinion 478</u> issued recently in late 2017, provides:

> "Stated simply, a judge should not gather adjudicative facts from any source on the Internet unless the information is subject to proper judicial notice." "Further … judges should not use the Internet for independent fact-gathering related to a pending or impending matter where the parties can easily be asked to research or provide the information. The same is true of the activities or characteristics of the litigants or other participants in the matter."

Plaintiff maintains a website called somersdecsion.com. It was not set up to anyone collect data but to tell the Plaintiff's side of this litigation.  It is now transforming to become a resource for other victims of the harsh and never-ending litigation practices of lawyers employed by insurance companies who sell employment practices liability insurance or EPLI.  The fact this over 3 years the site has collected a great deal of data including the Magistrate's visits to the website. The Magistrate has visited the site contrary to her obligations not to investigate facts as a Magistrate Judge. The Magistrate was recorded and logged as is every other visitor to the website. In her case, the log shows the magistrate judge has accessed the Plaintiff's website on at least four separate occasions and that she clicked on 14 pages.  The web analytics in this case are by provided

**RECUSAL OF MAGISTRATE JUDGE KANDIS WESTMORE** - 4

by Statcounter, a paid service provider whose software is embedded on the Plaintiff's website. Statcounter collects various types of data from users who visit the site such as the date of the visit, the time, the user's IP address, the browser being used, the version of the browser, the user's operating system, the country and region/city the user is from, the Internet Service Provider, which pages were viewed and how many times and for how many minutes on each page.   From this Statcounter has collected the data shown on Exhibit A of Paul Somers Declaration. Of course, the first example of the Magistrate's extrajudicial sources of bias is her independent investigation of the facts in this proceeding.   The second source is what is revealed by those page views; the Magistrate is only interested in articles about Seyfarth Shaw's misconduct on the night of May 25, 2016.  Each visit and each click makes it more clear[1].    The visits in September 2017 and early January 2018 are great interest because they speak to Defendants' concerns about what they did on the night of May 25, 2016 and the ex parte discussions that would have prompted the Magistrate to visit the website.

### A.  Magistrate Judge Westmore's Visit to the Website on September 14, 2017

The Magistrate judge's first captured view of the website was on September 14, 2017.  At that point there isn't anything on the record that might have prompted the judge visit the site. No motions were pending.   In fact her last Order was given on July 13, 2017, with her next activity prompted by an ex parte letter filed by Defendants on September 18, 2017.   Given she had no reason to officially got to the site, (even if she were permitted to do so) the page she visited tells

---

[1] The last two sets of visits are not as important to this matter because they relate to ex parte letters that Seyfarth Shaw filed referring the Magistrate to the site.

us that she was prompted to go to the website by likely defense counsel in an ex parte communication.

1.   On September 14, 2017, Magistrate Judge landed on the homepage of Somers Decision at 12:59 pm.

2.   She then navigated to an article concerning the defense counsel titled, "Seyfarth Shaw Forges Signature on Court Filing Now Under Investigation by the DA."

3.   There were *80 other blog topics to choose from*. The fact that she chose the article related to Seyfarth's crime against the Plaintiff is no coincidence.  The concern the magistrate judge has for the allegations against Seyfarth Shaw is apparent.

4.   It important to consider that the Magistrate judge has shut down every attempt by Plaintiff to raise Seyfarth Shaw's misconduct regarding the fraud and forgery highlighted in the blog mentioned above blog to the court (Dkts. 187, 188, 227, 228, 230, 233 & 237, 245).

The magistrate judge was clearly prompted by someone with an interest in that blog article. All signs point to Seyfarth Shaw.   If the court is unsure, the Magistrate repeats her behavior a few months later.

### B.  Magistrate Judge Westmore's Visit to the Website on January 10, 2018

The Magistrate's next visit to the website was very similar to her previous visit. There were no motions pending, no valid reason as to why she decided to go unless someone had prompted her investigating the facts of that article on that particular day.  What she was looking at again tells us she was once again directed to the website by Seyfarth concerned about the article, *"Fact Finders will Determine if Digital Realty's Attorneys Committed a Crime Against the Judicial Machinery at 8:53 PM on May 25, 2016."*

There were 105 other blog topics to choose from, the fact that is one is *again* related to Seyfarth's crime against the Court is not a coincidence.  We see the concern the Magistrate Judge has for the accusations against Seyfarth Shaw is again, apparent.  But she has only acted to protect

Seyfarth against any punishment or damage that they should have incurred.  Plaintiff raised the issue the Court numerous times and not once has the Court picked up on the issue to assist Plaintiff.  When Plaintiff went to file sanctions against Seyfarth for the misconduct associated with the night of May 25, 2016 (Dkt. 187), a series of very telling orders came down (Dkts. 189, 191) which blocked Plaintiff from filing a motion and then wiped out his ability to collect the very discovery he requested a hearing for in Docket 187. (Dkt. 187, 189).  Docket 245 page 12 attempts to bury the matter again by pretending Plaintiff got anywhere near what he propounded.  The Magistrate is not being serious in her review, Plaintiff provided a chart (Dkt. 220 page 4) which provided sufficient detail that was missed despite the full color rendition of the details.

To sum up the activity on the visits to the website, the Defendant's counsel once again would have had to have to have prompted the Magistrate to go to the article.  No other logical reason exists because there were so few other other visitors to those pages who simply would not have been in contact with the magistrate.

As a result of this, the Magistrate should recuse herself under 28 U.S. Code § 455(b) which states she should recuse or disqualify herself if she has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.  If the Magistrate were to disagree that an actual finding of bias pursuant to Section 455(a) requires recusal for the *appearance* of partiality (i.e., when a judge's "impartiality might reasonably be questioned") as compared to § 455(b)(1), which requires disqualification for *actual* partiality. Both require proof of an extrajudicial source which is made apparent by the action of investigating the facts and engaging in ex parte communications.

## II.  RECUSAL IS REQUIRED BECAUSE MAGISTRATE JUDGE WESTMORE HAS BEEN ENGAGING IN EX PARTE COMMUNICATIONS WITH DEFENSE COUNSEL, SEYFARTH SHAW.

3(B)(7) goes on to state that a judge shall not initiate, permit, or consider ex parte communications, that is, any communications to or from the judge outside the presence of the parties concerning a pending or impending proceeding, and shall make reasonable efforts to avoid such communications,

**A.   Ex Parte Communication Example 1:  Magistrate was prompted by Seyfarth Shaw to view website more than once.**

It's clear that the judge was prompted by defense counsel to go to the website somersdecison.com and view articles they were concerned about as explained in section I above.

**B. Ex Parte Communication Example 2: The Magistrate Judge Was Given False Information About Plaintiff:**

On February 28, 2017, Plaintiff was deposing a defendant. During the deposition, Plaintiff called the magistrate judge assist in getting cooperation from the witness. On the record, the magistrate finishes by stating:

> *And, you know, I just want to say,  Mr. Somers, I know you're doing this,  you know, without the assistance of counsel, and that can be difficult sometimes, but depositions are supposed to be very civil processes.  You shouldn't be getting in any — you know, too many arguments and shouting kinds of matches and things like that.  And, you know, it's a very, you know, open process.*

Plaintiff's exposure to the magistrate judge (and therefore Defendants' exposure as well he thought) had been limited to a telephonic hearing on April 14, 2016, and a very brief call on July

6, 2016.  The Plaintiff had never engaged in the behavior described by the magistrate judge which begs the question, where did she obtain her misperception of Plaintiff's character?  It could only have come from Brian Ashe and/or Shireen Wetmore during one of their ex parte communications.

**C.  Ex Parte Communication Example 3:  Brian Ashe of Seyfarth admits, during a deposition on the record, that he has had ex parte contact with the Magistrate Judge:**

Mr. Ashe states on April 5, 2017:

> *"We responded to that the same day, on March 23rd, telling you specifically that Judge Westmore sat through much of the discussion, that **she has a very clear recollection of the agreements that we made,** and that we were going to stand by those agreements and that you're not entitled to backtrack from them."*

The last contact either party should have had with the magistrate judge was at the meet and confer (hearing) on March 21, 2017.  Mr. Ashe made the above comments on April 5, 2017.  Mr. Ashe speaks of the magistrate judge's recollection providing further evidence as to his ex parte communications between those two dates.

**D.   Ex Parte Communication Example 4:  Seyfarth Shaw attorneys were aware that the magistrate judge would be present at the March 21, 2017, meet and confer.   The record reflects nothing to explain how Seyfarth Shaw was aware of the details of the "meet and confer."**

Defense counsel clearly knew, via ex parte communication what the Plaintiff could not have known:  The March 21, 2017 meet and confer was not an hour long standard meet and confer but in fact the Magistrate would be present.  Defense counsel was prepared for a four-hour meeting, knew the magistrate judge would be present and she was for some it. Seyfarth was well prepared

given they had plenty of notice and time to have consultants lined-up for conference calls. The only way Seyfarth could have known Magistrate would be present is through ex parte communications with the Magistrate.  There is nothing in the record regarding her attendance Plaintiff was prejudiced by the ex parte communication arriving from New York unprepared for more than a standard one hour meet and confer and certainly not for a "sua sponte hearing" by the Magistrate Judge (the meet and confer was declared a hearing the next day and entered into the docket as such (Dkt.196)).

### III.  RECUSAL IS REQUIRED BECAUSE MAGISTRATE JUDGE WESTMORE HAS FAILED TO CARRY OUT HER DUTIES IN COMPLIANCE WITH THE LAW SHOWING MATERIAL BIAS IN HER ORDERS

A. For the past 18 months, the Magistrate has failed to follow the rules and laws of discovery Fed. R. Civ. P., the Local Civil Rules and her own Standing Order. (See Dkts. 191, 212, 221+).  In place of required laws and rules, she created an ad hoc process in which she directed Plaintiff not to file joint letters or motions (Dkt. 189) but rather Ordered him to respond to the Defendants letters describing Plaintiff's deficiencies. From one example:

Accordingly, the Court sets the following schedule to address the parties' remaining discovery disputes. Defendants are to file a letter addressing all remaining discovery issues not affected by the pending appeal, with the appropriate attachments, by April 21, 2017. Plaintiff is to file a response to Defendants' letter by April 28, 2017. In this letter, Plaintiff may raise any issues that are not affected by the pending appeal and that are not currently before the presiding judge, i.e., issues that Plaintiff should have raised by letter on March 13, 2017, which the undersigned then deemed waived for failure to raise in the required letter. (Dkt. Nos. 191, 200.) Defendants are to file their reply by May 5, 2017. All disputes not raised in these letters will be deemed waived; the letters must encompass all remaining disputes that the parties desire the Court to resolve. **In addition, as discussed at the discovery hearing, the**

**Court TERMINATES Plaintiff's April 11, 2017** letter. (Dkt. No. 209.)

Plaintiff was relegated to second class and was only reply to the Defendants' letter whereas Defendants got to file the initial letter and to reply to Plaintiff's reply.   In addition to violating the rules and laws of discovery, even the Magistrate's ad hoc process was completely biased against Plaintiff.

B.   Plaintiff has been improperly deprived of the right to obtain relevant discovery from defendant because the magistrate sanctioned Plaintiff by disallowing him from collecting discovery on his requests for productions sets one and two, and all interrogatories. (Dkt. 191) The reason stated by the Magistrate: Plaintiff was late providing a list of Defendants' discovery deficiencies requested by the Magistrate.  She provides no legal basis for her decision, no warning, no hearing.   All the discovery Plaintiff had been trying to obtain for two years was wiped out as a great ex parte favor to Defendant.  Plaintiff was forced to give and take depositions and continue to litigate under these unfair conditions and without discovery rightfully owed to him.

C.   This is an excerpt from the Magistrate's Order (Dkt. 266)

"On September 18, 2017, Defendants filed a letter regarding Plaintiff Paul Somers's alleged noncompliance with the Court's July 11, 2017 order. (Dkt. No. 256.) Defendants' letter requested various sanctions, including issue sanctions and monetary sanctions. (Id. at 4-5.) The Court required Plaintiff to file an opposition, extending the opposition deadline to October 13, 2017. (Dkt. Nos. 257, 260.) Plaintiff filed his untimely opposition on October 16, 2017. (Dkt. No. 264.) In his opposition, Plaintiff argued that a motion for sanctions should be filed consistent with Local Civil Rule 7-8. (Id. at 4.) Because Defendants seek significant sanctions, the Court TERMINATES Defendants' discovery letter and directs Defendants to file a motion for sanctions. The motion for sanctions will replace the procedures usually required for discovery disputes; thus, the parties will not be required to conduct any further meet and confer prior to filing the motion for sanctions.

Magistrate directed Plaintiff to file a response *to a letter* which requested sanctions even though the Defendants' failed to file a motion for sanctions. The Magistrate excuses her decision in Docket 256, allowing the Defendants to file a simple letter to

**RECUSAL OF MAGISTRATE JUDGE KANDIS WESTMORE - 11**

be sufficient to sanction Plaintiff, by identifying "significant sanctions." Sanctions are sanctions and there is no way to distinguish them by size. Defendants are not once admonished or threatened for multiplying proceedings. The self-represented litigant is now enforcing the laws of discovery and motions for the Court. The Magistrate decides no meet and confer is necessary, contrary to the Local Civil Rules and the Fed. R. Civ. P..

D. The Magistrate, not satisfied with wiping out Plaintiff's sets 1 and 2 requests for production of documents then nixes his request for production of Documents number 3 and 4. She states the reason being that Plaintiff did not file a motion to compel. Motions to compel have not been permitted during the dispute process. (Dkt. 245, page 14)

E. Magistrate issued an unwarranted $1,000 so-called sanction against Plaintiff yet Defendants had not filed a motion for sanctions or stated a legal foundation for the sanctioning. (See Dkt. 245, page 19) in addition to a host of other factors which made the sanction improper.

F. Magistrate allows Seyfarth Shaw to continue to file clearly false, sham motions and declarations with the objective of harassing and intimidating Plaintiff and damage his reputation. (See Dkt. 242, 246). Plaintiff sent a private letter to a former good friend in Singapore who was also a part-time contractor to plaintiff's former employer. In the letter Plaintiff writes to his former friend touching on issues they used to discuss and pleads with her to tell the truth. It was no different than the three or four other letters Plaintiff sent to her. It also contained very personal information about Plaintiff's parents. The defendants did not meet and confer nor did they attest to the fact that they tried to meet and confer so there is no so-called protective order which prohibits Plaintiff from contacting his former friend. What is disturbing is the language both in Docket 242 and 246. Both the defense counsel and the magistrate see no issue with publishing the private parts of the letter which should never have been made public not once, but twice into the public domain. Plaintiff's former friend is likely unaware that her private details have been published in the public domain. The actions by Mr. Ashe

**RECUSAL OF MAGISTRATE JUDGE KANDIS WESTMORE - 12**

and the Magistrate are in very questionable taste and highly improper but typical of some of the treatment Plaintiff receives by this Court.  One only need to compare the what Plaintiff wrote in private letter to his former good friend to what a litigant in an unrelated case did to and he received barely a warning from the Magistrate. In **Interaxon Inc. v. Neurotek, LLC,** A Mr. Cowan threatened and harassed the Plaintiff's repeatedly with awful demands for money and threatening them with publicity.  It goes on and on.  The Magistrate barely gives Mr. Cowan a warning.  (See Exhibit B to Paul Somers Declaration.)  Why then is Mr. Somers treated in such a way as to humiliate him, block him from obtaining discovery all because of a private letter that contained things that he and his former friend talked about frequently.  Of course, Mr. Somers was not allowed to have a hearing on the matter despite asking several times for one.

These are only a few examples of at least a few dozen or more improper activities, decisions and orders which show a great bias against Plaintiff only amplified by the fact that he is a self-represented litigant.


## III. CONCLUSION


Recusable bias must be both personal and extrajudicial. United States v. Carignan, 600 F.2d 762, 763-64(9th Cir. 1979). This means that the bias must be "directed against the party" and cannot arise out of judicial acts. Id. As the Supreme Court has held, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." United States v. Grinnell Corp., 384 U.S. 563, 583 (1966). The test for recusable bias is "whether or not given all the facts of the case there are reasonable grounds for

**RECUSAL OF MAGISTRATE JUDGE KANDIS WESTMORE - 13**

finding that the judge could not try the case fairly, either because of the appearance or the fact of bias or prejudice." United States v. Conforte, 624 F.2d 869, 881 (9th Cir. 1980).

In this case, say at a minimum, there is the appearance that the Magistrate has secretly taken a great interest in the fate of Seyfarth Shaw given Plaintiff's allegations stemming from the Night of May 25, 2016, proven by the pages she was directed to view on Plaintiff's website by Seyfarth Shaw.[2] That bond shares a personal bias against Plaintiff considering Plaintiff has been purposely kept out of the conversation.  When you add the situations described in Section II, B, C, and D, not to mention all of the items described under Section III, it leaves no doubt that bias, either perceived or what Plaintiff has proven is real, calls for recusal of the Magistrate pursuant to 28 U.S.C. § 455(a) or 455(b).

Dated: March 20, 2018

Respectfully Submitted
/s/ Paul Somers

_____
PAUL SOMERS,
Self-represented litigant

[2] Only 5-6 hits have been registered to those web pages and so it's easy to discern who those 5-6 visitors are which only leaves Seyfarth as the party who prompted the Magistrate to visit those pages.