UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SOMERS,<br><br>            Plaintiff,<br><br>     v.<br><br>DIGITAL REALTY TRUST INC, et al.,<br><br>            Defendants. | Case No.  14-cv-05180-EMC   (KAW)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS; DENYING MOTION TO RECUSE**<br><br>Re: Dkt. Nos. 271, 288 |

Plaintiff Paul Somers brought the instant suit against Defendants Digital Realty Trust Inc. and Ellen Jacobs, alleging that he was wrongfully terminated.  (First Amended Compl. ("FAC") ¶ 50, Dkt. No. 51.)  Plaintiff claims he was terminated due to discrimination based on his sexual orientation, as well as for being a whistleblower.  (FAC ¶¶ 32, 46.)  Plaintiff also asserts that he was defamed by Defendants.  (FAC ¶¶ 68-69.)

Currently pending before the Court are: (1) Defendants' motion for sanctions, based on Plaintiff's alleged failure to comply with a July 11, 2017 discovery order and a July 13, 2017 protective order, and (2) Plaintiff's motion to recuse the undersigned.  (Defs.' Mot. for Sanctions, Dkt. No. 271; Plf.'s Mot. to Recuse, Dkt. No. 288.)  Upon consideration of the parties' filings, and for the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for sanctions, and DENIES Plaintiff's motion to recuse.

## I.    BACKGROUND

As succinctly observed by the presiding judge, "[t]he parties in this case have been continually unable to resolve their many discovery disputes amongst themselves." (Dkt. No. 218 at 1.)  Since the case was referred to the undersigned on March 28, 2016, the Court has issued over twenty-five orders and conducted numerous hearings, including supervising an over four-hour

long meet and confer between the parties. (*See* Dkt. Nos. 110, 132, 138, 139, 159, 171, 172, 179, 184, 189, 191, 195, 196, 197, 199, 212, 221, 238, 245, 246, 277, 283, 303, 307, 309, 315, 316.) The following is a summary of only some of those many discovery disputes.

**A.   Summary of Disputes Leading to July 2017 Orders**

In August and September 2016, the parties filed multiple motions and letters regarding the scheduling of Plaintiff's deposition. (Dkt. Nos. 119, 121, 135, 136.)  The parties ultimately agreed to schedule Plaintiff's deposition for November 22, 2016. (Dkt. Nos. 146, 149.)  On November 18, 2016, Defendants filed a letter, seeking documents in preparation for Plaintiff's deposition. (Dkt. No. 158.)  The letter was filed on behalf of Defendants only; Defendants asserted that they met and conferred, although "Defendants [we]re abused verbally each time they tr[ied] to speak with Plaintiff himself on the phone." (*Id.* at 1.)  Defendants provided Plaintiff with the discovery letter, but Plaintiff did not provide his position. (*Id.* at 1-2.)

On November 21, 2016, the Court issued an order admonishing Defendants for delaying the filing of the discovery letter until less than two business days before Plaintiff's deposition was scheduled. (Dkt. No. 159 at 1-2.)  The Court, however, ordered Plaintiff to produce documents regarding his mitigation efforts and claims for damages because the Court had previously ordered Plaintiff to provide those documents within 14 days of a July 8, 2016 discovery order. (*Id.* at 2; *see also* Dkt. No. 110 at 1.)  The Court warned that Plaintiff's failure to produce those documents before or at his deposition would result in sanctions. (Dkt. No. 159 at 2.)  The Court also ordered Plaintiff to provide his passport and any materials containing Defendant Digital Realty's proprietary information because Plaintiff had not provided any legal justification for why he should not be required to produce those documents, and because he had failed to furnish timely written responses to Defendants' discovery requests. (*Id.* at 2.)  The Court cautioned that failure to produce the documents could result in the imposition of sanctions. (*Id.* at 3.)

On February 23, 2017, the parties attended a status conference. (Dkt. No. 183.)  There, the presiding judge directed the undersigned "to specifically determine a proper meet and confer process for the parties given defendant's reluctance to meet in person or by phone with plaintiff." (*Id.*)  Accordingly, on February 24, 2017, the Court issued an order requiring the parties to meet

and confer by telephone, and to have the conversation recorded for the Court's review.  (Dkt. No. 184 at 1.)

On February 28, 2017, the parties called the undersigned during Plaintiff's deposition of Defendant Jacobs.  (*See* Plf.'s Mot. to Recuse at 8; Ashe Decl. ISO Defs.' Opp'n, Exh. D, Dkt. No. 295.)  During the call, Defendants informed the undersigned about Plaintiff's website at "digitalcruelty.com."  (Ashe Decl. ISO Defs.' Opp'n, Exh. D at 148:1-6.)  At the end of the call, the undersigned stated:

> And you know, I just want to say, Mr. Somers, I know you're doing this, you know, without the assistance of counsel, and that can be difficult sometimes, but depositions are supposed to be very civil processes.  You shouldn't be getting in any - you know, too many arguments and shouting kind of matches and things like that. And, you know, it's a very, you know, open process.

(Plf.'s Mot. to Recuse at 8.)

On March 8, 2017, the parties filed separate letters describing their inability to even agree on a recording program for their meet and confer conferences.  (Dkt. Nos. 187, 188.)  Plaintiff's letter also requested an in-person hearing.  (Dkt. No. 187 at 1.)  After reviewing the parties' letters, the Court concluded that "it has become clear . . . that the parties are incapable of meeting and conferring."  (Dkt. No. 189 at 1.)  Thus, the Court ordered the parties to each file a letter by March 14, 2017, "discussing **all** outstanding discovery disputes that the parties desire the Court to resolve."  (*Id.* (original emphasis).)  Based on Plaintiff's request for an in-person hearing, the Court also set a March 21, 2017 discovery hearing to address those issues.  (*Id.*)  Finally, the Court stated that the parties were "**not** to file any motions or joint letters in the meantime; all outstanding discovery issues must be encompassed by the parties' 10-page letter."  (*Id.* (original emphasis).)

On March 14, 2017, Defendants filed their letter, but Plaintiff did not.  (Dkt. No. 190.)  On March 15, 2017, the Court issued an order stating that "[b]ecause Plaintiff has not complied with the Court's order, the Court will only consider the outstanding discovery disputes raised by Defendants in their March 14, 2017 letter . . . . All other outstanding discovery disputes that could have been raised are deemed waived, and will not be considered."  (Dkt. No. 191 at 1-2.)  The Court also vacated the March 21, 2017 discovery hearing because the hearing had been set on

Plaintiff's request for a discovery hearing, yet Plaintiff had failed to submit a letter listing his outstanding discovery disputes. (*Id.* at 2.) Instead, the Court converted the March 21, 2017 discovery hearing to an in-person meet and confer so that the parties could address any remaining discovery requests with pending deadlines. (*Id.* at 2.)

On March 20, 2017, Plaintiff filed a letter accusing the Court of issuing orders "which relied on statements by [Defendants' counsel], which so prejudice the Plaintiff is now frozen, unable to make a single move, precisely what [Defendants' counsel] orchestrated." (Dkt. No. 194 at 1.) Plaintiff asked that the Court cancel the requirement of an in-person meet and confer, and to instead require that the parties meet and confer via conference call "for a two hour block of time," as well as "one hour every week for the next month." (*Id.* at 2.)

That same day, the Court denied Plaintiff's request to cancel the in-person meet and confer "because Plaintiff has offered no justification for why he is unable to be at the Court on March 21, 2017." (Dkt. No. 195 at 2.) The Court reiterated that the March 21, 2017 hearing date was set "**at Plaintiff's request for an in-person hearing**." (*Id.* (original emphasis).) The Court further explained that it had specially set the hearing to ensure that the parties would have sufficient time to have their pending discovery disputes resolved prior to the discovery cut-off date, and that the Court had required the letters outlining all outstanding discovery disputes so that they could be resolved at the hearing. "Plaintiff, however, **did not submit the required letter** and never explained his failure to file the letter." (*Id.* (original emphasis).) Thus, based solely on *Plaintiff's* failure to submit the required letter, the Court had converted the discovery hearing to an in-person meet and confer "in order to give the parties an opportunity to effectively meet and confer on all remaining disputes, with the Court available to assist in any disputes that arose." (*Id.*)

On March 21, 2017, the parties, with the assistance of the Court, conducted an over four-hour meet and confer. (Dkt. No. 196.) The parties agreed to deposition dates, and Plaintiff also agreed to provide his past-due discovery responses by March 31, 2017. (*Id.*) In light of the meet and confer, the Court terminated Defendants' March 14, 2017 letter and Plaintiff's March 20, 2017

letter as moot on March 23, 2017.[1]  (Dkt. No. 197 at 1.)  The Court also ordered that in the event of any other outstanding discovery issues, the parties were to contact the Court to schedule a phone call to discuss any proposed joint letter, and that call would serve as the meet and confer.

On March 28, 2017 and March 30, 2017, Plaintiff moved before the presiding judge for relief from the Court's March 15, 2017 order.  (Dkt. Nos. 200, 201.)  Plaintiff argued that the undersigned had erred in waiving Plaintiff's outstanding discovery disputes.  (*See* Dkt. Nos. 200 at 1; 201 at 1.)

On April 6, 2017, discovery closed in the instant case.  (Dkt. No. 183.)  On April 11, 2017, the Court held a discovery hearing with the parties by telephone, to allow them to conduct their meet and confer on discovery issues.  (Dkt. Nos. 208, 212.)  Based on the parties' agreement during the April 11, 2017 discovery hearing, on April 14, 2017, the Court set a schedule for the parties to file letters raising all outstanding discovery disputes "that are not affected by the pending appeal and that are not currently before the presiding judge, *i.e.*, issues that Plaintiff should have raised by letter on March 13, 2017 [sic], which the undersigned then deemed waived for failure to raise in the required letter."  (Dkt. No. 212 at 1.)  The Court emphasized that "[**a**]**ll disputes** not raised in these letters will be deemed **waived**; the letters **must** encompass all remaining disputes that the parties desire the Court to resolve."  (*Id.* at 2.)  Pursuant to the agreed upon schedule, Defendants filed their discovery letter on April 21, 2017.  (Dkt. No. 216.)

On April 25, 2017, the presiding judge denied Plaintiff's motions for relief from the March 15, 2017 order.  (Dkt. No. 218 at 1.)  The presiding judge explained that "[n]otwithstanding [Plaintiff's] contention that Judge Westmore's March 15 order 'is in conflict' with unspecified provisions of the Federal Rules of Civil Procedure and the Civil Local Rules, nothing about the order is clearly erroneous or contrary to law."  (*Id.* at 2.)  Instead, the presiding judge found that the undersigned had "provided ample time for the submission of a letter outlining discovery disputes" and that "[n]o law requires [Judge Westmore] to provide additional accommodations to a

---

[1] On Defendants' request, the Court later issued an order ruling on several of the issues raised in the March 14, 2017 letter that had not been addressed during the meet and confer.  (*See* Dkt. Nos. 198, 199.)

5

party who had failed to comply with the terms of her order." (*Id.*)

On April 29, 2017, Plaintiff filed his discovery letter, along with a "Supplement response to defendants [sic] discovery deficiencies." (Dkt. Nos. 220, 220-1.) On May 5, 2017, Defendants filed their response to Plaintiff's discovery letter. (Dkt. No. 224.)

On May 22, 2017, the Court ordered Plaintiff to provide a chambers copy of numerous filings, including the April 29, 2017 discovery letter and "Supplement Response." (Dkt. No. 232.) Plaintiff's chambers copy included a cover letter that discussed discovery, requested a hearing, and complained of the behavior of Defendants' counsel while attaching 63 pages worth of attachments. (Dkt. No. 235.) The Court had the cover letter and attachments filed on the docket, along with an "Updated Version of 4/29/17 Submittal," that Plaintiff provided, as it was unclear Plaintiff had provided the "Updated Version" to Defendants. (Dkt. Nos. 235, 237.)

On June 27, 2017, Defendants filed a motion for a protective order, requesting that Plaintiff be ordered to abstain from: (1) further contact with Ms. Sarah Schubert -- Defendants' former human resources consultant and a defense witness -- in connection with the instant case except through formal judicial process; (2) threatening any disclosed witness; and/or (3) otherwise engaging in intimidating or abusive communications with such individuals. (Dkt. No. 242.) The motion was based on Plaintiff's June 13, 2017 e-mail to Ms. Schubert, in which Plaintiff wrote:

> Hello Sarah,
>
> Your focus on guilt is understandable. You are responsible for a great amount of damage to many people's lives because of what you did to me in 2014. I lost my father a year ago to suicide in part because my money has been going to lawyers to fight off Digital Realty. My mother is now gravely ill and I cannot afford to give her the care she deserves. It's your fault, Sarah Schubert. You had a duty to be honest and you failed. You failed as a human being, a professional and you failed as my friend. I often wonder what could have possessed you to do what you did.
>
> Your Critical Events memo is false, mean-spirited and destructive. It will be front and center to litigation in Singapore. Ellen Jacobs testified under oath that you are the author. You essentially hit all the defamation high notes. Why did you write those false statements? Did you want to get even with the universe because you can't give birth? Is your marriage still so miserable you wished to spread it around your sadness [sic]? Had you done your job and told the truth, you could have ended the retaliatory firing which has cost upwards of $6 million so far and now awaiting the Supreme Court

which required another set of lawyers.

I now have sufficient evidence to prove you willfully defamed me resulting in losses in the millions of dollars and much worse than money, you are causing a great deal of pain and suffering.

Things will only get better when you are honest about your guilt and try to repair what it is you damaged so carelessly.

Paul Somers

(Dkt. No. 242-1.) Plaintiff did not file an opposition. (*See* Dkt. No. 246 at 2.)

**B.    July 2017 Orders**

**i.    July 11, 2017 Discovery Order**

On July 11, 2017, the Court issued an order resolving the discovery disputes raised in the parties' April 2017 letters. (July 11, 2017 Ord., Dkt. No. 245.) The Court denied Defendants' request for terminating sanctions and evidentiary sanctions. (*Id.* at 3-7.) The Court, however, ordered Plaintiff to take the following actions:

(1)    Produce what travel documents he possesses, if any, showing whether he left Singapore post-termination, including airline/hotel rewards program records, past flight information from airline accounts, hotel statements, and any other travel documents;

(2)    Produce bank statements and credit card receipts evidencing his expenses;

(3)    Produce any attachments to the April 3, 2017 production of e-mails;

(4)    Produce evidence documenting the residency or travel of Mr. Ruiz from 2011 to June 2014, as well as Mr. Ruiz's employment history during that time;

(5)    Produce documents demonstrating what Plaintiff believes constituted the "gating approval process;"

(6)    Produce documents of his mitigation of economic damages;

(7)    Provide supplemental responses to Interrogatories, Set Three, without objection;

(8)    Pay sanctions in the amount of **$1,000** for failing to supplement his prior responses to Interrogatories, Set Three, as previously as ordered by the Court;

(9)    Provide responses to interrogatories regarding Plaintiff's travels outside of Singapore and after his termination, to the best of his abilities; and

(10) Return or destroy an e-mail chain that the Court found was partially covered by attorney-client privilege.

(*Id.* at 18-19.) Plaintiff was ordered to produce the discovery responses within 14 or 30 days of the date of the order. (*Id.*)

As to Plaintiff's asserted discovery disputes, the Court, first, denied any relief sought as to Defendants' purported use of "secret search terms." (July 11, 2017 Ord. at 11-12.) The Court explained that not only was it unclear what relief Plaintiff sought, the search terms did not appear to be *per se* unreasonable. The Court provided a lengthy explanation for why Plaintiff's examples regarding how the search terms were not, in fact, as narrow as he believed them to be. (*Id.* at 12.) Second, the Court denied Plaintiff's request for documents related to Mr. Kris Kumar's termination because Plaintiff had produced no evidence that Mr. Kumar was in fact terminated. (*Id.* at 13.) Third, the Court denied Plaintiff's demand for responses to his Requests for Production No. 3, explaining that this dispute had been waived when Plaintiff failed to file his March 14, 2017 letter. (*Id.*) Fourth, the Court denied Plaintiff's demand for responses to his Requests for Production No. 4, based on Plaintiff's failure to explain why the objections made should be overruled. (*Id.* at 14.) Regardless, the Court also reviewed many of the stated objections, and explained to Plaintiff why there were no obvious deficiencies in the objections made. (*Id.* at 14-15.)

Fifth, the Court ordered Defendants to provide an updated damages disclosure, after finding that Defendants' disclosure was inadequate. (*Id.* at 15-16.) Sixth, the Court denied Plaintiff's request that Defendants provide updated contact information for the witnesses listed. (*Id.* at 16.) Seventh, the Court denied Plaintiff's request for monetary sanctions based on Defendants' "behavior" during prior depositions because Plaintiff failed to provide any information on what "behavior" he contended had obstructed the depositions. (*Id.* at 16-17.) Eighth, the Court denied Plaintiff's request to inspect the original documents because Plaintiff did not explain why Defendants should be required to permit inspection of original documents if they had already produced copies. (*Id.* at 17-18.) Ninth, the Court denied Plaintiff's request to resolve a discovery letter filed on April 7, 2017 because the Court had already issued two orders on that dispute. (*Id.* at 18; *see also* Dkt. Nos. 221, 238.) Finally, the Court denied Plaintiff's challenge to

Defendants' privilege log because Plaintiff did not provide the privilege log, explain why it was deficient, or articulate what relief he sought. (July 11, 2017 Ord. at 18.)

### ii. July 13, 2017 Order

On July 13, 2017, the Court granted Defendants' motion for a protective order. (July 13, 2017 Ord., Dkt. No. 246.) As a procedural matter, the Court granted the motion as unopposed because Plaintiff did not file an opposition. (*Id.* at 2.) On the merits, the Court concluded "that a protective order is necessary based on Plaintiff's actions," having found that "Plaintiff's e-mail to Ms. Schubert is unacceptable; as Ms. Schubert aptly describes, Plaintiff's e-mail is threatening, highly offensive, and very unwelcome." (*Id.* (internal quotation omitted).) While the Court acknowledged that this e-mail appeared to be Plaintiff's first direct attack on a third-party witness, the Court explained that it had "concerns . . . based on Plaintiff's failure to comply with past orders and the content of [Plaintiff's e-mail to Ms. Schubert] that Plaintiff will not be deterred from engaging in future intimidation of witnesses should the Court issue a warning instead of a protective order." (*Id.* at 3.)[2]

The Court thus ordered Plaintiff not to contact Ms. Schubert in connection with any matter related to the instant case except through formal judicial process. (July 13, 2017 Ord. at 3.) Plaintiff was also directed not to threaten any disclosed witnesses and/or otherwise engage in intimidating or abusive communications with such individuals. (*Id.*) The Court emphasized, however, that the order "does not prevent Plaintiff from reaching out to those disclosed witnesses as part of the judicial process, so long as Plaintiff is civil and refrains from personal attacks and threats." (*Id.* at 3-4.)

### C. Actions Following July 2017 Orders

On July 25, 2017, Defendants' counsel asked Plaintiff if he had returned or destroyed the e-mail chain, as ordered by the Court. (Ashe Decl. ISO Mot. for Sanctions, Exh. C at 3, Dkt. No.

---

[2] The Court also listed a number of instances in which Plaintiff had attacked defense counsel, "accusing them of 'making up tall tales,' 'obstructing justice,' being 'experts in ruining careers of plaintiffs who file claims against former employers,' being 'actively involved in the cover up' of a lawsuit, engaging in 'false attacks,' engaging in 'defamation' and 'repeat[ing] the same lies over and over,' 'forging several documents,' and 'telling outright lies to the Court.'" (July 13, 2017 Ord. at 3 n.1 (quoting Dkt. No. 237 at 1, 4, 6, 7, 10, 11, 14, 15).)

271-3.)  On July 26, 2017, Plaintiff responded that he had complied, and indicated that he would be filing objections to the July 11, 2017 discovery order.  (*Id.* at 2.)  That same day, Defendants' counsel responded, asking Plaintiff to confirm how he had complied with the Court's order regarding the e-mail chain.  (*Id.* at 1.)  Defendants' counsel also noted that Plaintiff had failed to timely object to the July 11, 2017 discovery order, and that he had failed to comply with the Court's July 11, 2017 discovery order, but stated that they would refrain from informing the Court to give Plaintiff the opportunity to seek an extension of time from the presiding judge.  (*Id.* at 1-2.)

On July 26, 2017, Plaintiff moved for an extension of time to object to the July 11, 2017 discovery order.  (Dkt. No. 247.)  On August 2, 2017, Plaintiff moved for relief from the July 13, 2017 protective order.  (Dkt. No. 249.)  On August 7, 2017, Plaintiff requested a page extension with respect to his challenge to the July 11, 2017 discovery order.  (Dkt. No. 251.)  On August 8, 2017, the presiding judge granted Plaintiff's motion for an extension of time and request for a page extension.  (Dkt. No. 252.)

On August 10, 2017, Plaintiff filed his motion with the presiding judge for relief from the July 11, 2017 discovery order.  (Dkt. No. 253.)  In his motion, Plaintiff asserted that "an external event or extenuating circumstances impacted the Court's view towards Plaintiff and his case," and that starting in November 2016, the undersigned "began to apply the rules selectively tending to favor the Defendants."  (*Id.* at 4.)  Plaintiff also accused Defendants of "knowingly misleading the court about discovery, engaging in falsification of documents and even filing fraud with the court."  (*Id.* at 11.)  On August 21, 2017, Plaintiff filed a second request for an extension of time, in order to submit a point by point rebuttal to the July 11, 2017 discovery order.  (Dkt. No. 254.)  Plaintiff also raised the possibility that the July 11, 2017 discovery order was invalid because Defendants' discovery requests were not timely.  (*Id.* at 2.)

The next day, the presiding judge denied Plaintiff's request for reconsideration of the July 11, 2017 discovery order and July 13, 2017 protective order.  (Dkt. No. 255.)  As an initial matter, the presiding judge denied Plaintiff's second request for an extension of time, stating that while "[t]he Court has attempted to give Plaintiff every chance to present his arguments, . . . he has abused the opportunity."  (*Id.* at 2 n.1.)  Specifically, the presiding judge explained that "Plaintiff's

objections took no more than 1 page, at the end of the motion; the remaining ten pages were largely devoted to immaterial procedural background, including lengthy discussion of issues that are not pertinent to the recent discovery dispute or have already been resolved by the Court." (*Id.*) The presiding judge found that Plaintiff had already received two extensions and filed several briefs and a declaration, and that there was no good cause for a further extension.

As to the merits of Plaintiff's objections to the July 11, 2017 discovery order, the presiding judge determined that "Plaintiff has utterly failed to specify the basis for his objections. Rather, on pages 9 and 10 of the motion, he simply enumerates the discovery disputes he disagrees with, without explaining why the Magistrate Judge's holding was 'clearly erroneous or contrary to law.'" (Dkt. No. 255 at 2 (quoting 28 U.S.C. § 636(b)(1)(A)).) The presiding judge also noted that several of Plaintiff's objections "have nothing to do with the July 11, 2017 Order; rather, they pertain to a March 15, 2017 order for which Plaintiff has already sought, and been denied, reconsideration. Other objections, such as 'general objections to discovery letter processes,' are not comprehensible." (*Id.* at 2-3.) Despite Plaintiff's failure to specify the basis for his objections, the presiding judge reviewed the July 11, 2017 discovery order "and f[ound] no basis to disturb it." (*Id.* at 3.)

With respect to the July 13, 2017 protective order, the presiding judge found that the undersigned:

> explained precisely what actions she relied on to determine a protective order was necessary: Plaintiff's e-mail to Ms. Schubert, a former employee of Defendants, which included several abusive comments, like blaming Ms. Schubert for the damage he has suffered, losing his father to suicide, and his inability to care for his ill mother. [Citation.] Plaintiff then accused Ms. Schubert of defamation, writing, '[w]hy did you write those false statements? Did you want to get even with the universe because you can't give birth? Is your marriage still so miserable you wished to spread it around your sadness [sic]?' Ms. Schubert was, of course, upset, and expressed a desire not to be contacted by Plaintiff again.

(Dkt. No. 255 at 3.) The presiding judge concluded that the "protective order ha[d] ample evidentiary and legal support." (*Id.*) To the extent Plaintiff suggested that a finding of bad faith was necessary, the presiding judge found that there would be "no trouble inferring bad faith from an abusive e-mail that specifically attacks Ms. Schubert for her testimony in this litigation and

threatens her with a defamation lawsuit." (*Id.* at 4.) The presiding judge concluded by stating: "**In light of Plaintiff's abuse of the litigation process** . . . Plaintiff is ordered not to file additional motions or declarations in connection with the July 11 and July 13, 2017 protective order and discovery order, or other orders of the Magistrate Judge for which he has already sought review." (*Id.* (emphasis added).)

That same day, Defendants' counsel contacted Plaintiff and requested that, in light of the presiding judge's order, Plaintiff comply with the undersigned's July 11, 2017 discovery order. (Ashe Decl. ISO Mot. for Sanctions, Exh. D.) Defendants' counsel stated that if they did not receive compliant responses and production by August 25, 2017, they would ask for sanctions against Plaintiff. (*Id.*) On August 23, 2017, Plaintiff responded by accusing Defendants' counsel of having ex parte communications with the undersigned, lying and being dishonest, and committing criminal acts before the court. (Ashe Decl., Exh. E at 1.) Plaintiff asserted that "the district attorney and the San Francisco police are aware of the crime committed in federal court." (*Id.*) Plaintiff further argued that the discovery requests were outside of the discovery cutoff date, and that he would be notifying the undersigned about an e-mail notification process.[3] (*Id.* at 2.) Plaintiff also noted that they would have to "restart the discovery process," and suggested that Defendants' counsel "may wish to give [the undersigned] a call and discuss with her directly." (*Id.*) Defendants' counsel asserts that Plaintiff has not produced any additional documents, responses, or other materials that he was ordered to produce in the July 11, 2017 discovery order, except that Plaintiff "re-sent his previously disputed responses to Defendants' Interrogatories, Set Three, with a new set of excuses regarding why he believed the Court's order was not proper." (Ashe Decl. ¶ 4.)

On September 18, 2017, Defendants' counsel filed a letter notifying the Court of Plaintiff's non-compliance with the July 11, 2017 discovery order. (Dkt. No. 256.) The letter requested that the Court impose issue sanctions and additional monetary sanctions. (*Id.* at 4-5.) The Court gave

_____

[3] The undersigned has received no such notification from Plaintiff, and it is unclear what this e-mail notification process refers to.

Plaintiff until September 29, 2017 to file a response. (Dkt. No. 257.) On October 3, 2017, the Court granted Plaintiff's request for an extension of time, and permitted Plaintiff to file his response by October 13, 2017. (Dkt. No. 260.) On October 16, 2017, Plaintiff filed a response arguing that the September 18, 2017 letter had to be rejected in part because Defendants should have filed a motion for sanctions. (Dkt. No. 264 at 4.)

On November 1, 2017, the Court acknowledged that Defendants were seeking significant sanctions, and thus terminated Defendants' discovery letter and directed Defendants file a motion for sanctions. (Dkt. No. 266 at 1.) The Court made clear that "[t]he motion for sanctions will replace the procedures usually required for discovery disputes; thus, the parties will not be required to conduct any further meet and confer prior to filing the motion for sanctions." (*Id.*)

**D.    Instant Motions**

On January 25, 2018, Defendants filed the instant motion for sanctions. As with the September 18, 2017 letter, Defendants sought issue and monetary sanctions based on Plaintiff's failure to comply with the July 11, 2017 discovery order. (Defs.' Mot. for Sanctions at 1.) Defendants also sought additional sanctions based on Plaintiff's purported violation of the July 13, 2017 protective order. (*Id.* at 4.) Specifically, Defendants asserted that on November 28, 2017 following the Supreme Court hearing on the instant case, Plaintiff had photographed Defendant Digital Realty's senior executives and members of its Board of Directors at a restaurant, requiring some members of the party to leave the restaurant by a separate exit. (*Id.*) On November 29, 2017, Plaintiff posted two of the photographs on his blog at "https://somersdecision.com."[4] In his post, Plaintiff describes the "Digital Realty executives, Board members, their wives, and children" as "ma[king] an embarrassing spectacle of themselves in Washington D.C. yesterday." (Joshua Mills Decl., Exh. A, Dkt. No. 271-2.) Plaintiff further wrote:

> No less than three dozen people flanked Bill Stein as his entourage in what was a five-star boondoggle to attend the Supreme Court hearing. They made the 7-hour journey in first class, non-stop from San Francisco to Washington DC well in advance, staying in one of

---

[4] Defendants refer to Plaintiffs' blog at "www.digitalcruelty.com." (Defs.' Mot. for Sanctions at 4.) This link takes visitors to the website "somersdecision.com." (*https://somersdecision.com* (last visited Apr. 5, 2018).)

DC's top hotels.  On Tuesday, once inside the normally somber halls of the Supreme Court, they joked and laughed loudly in an air of festivity not seen before, according to one marshall [sic].  Retaliation in the workplace is apparently funny and celebratory for Digital Realty executives.

After the Supreme Court hearing, Mr. Stein's entourage followed him down the hill to a private dining room where revelers feasted on steak, lobster and fine wines.  Josh Mill's wife and children were dressed in black from head to toe as a *charming* nod to the Justices robes [sic].

All in all, it was regrettable [sic] display in the face of those suffering from workplace retaliation.

(*Id.*)

Defendants attached a declaration by Mr. Joshua Mills, who stated that Plaintiff "aggressively approached [him] in the restaurant lobby," and that he believed Plaintiff "approached at least one other member of [their] party."  (Mills Decl. ¶ 3.)  He asserted he was "surprised and concerned for [his] safety," and that during the lunch, he saw "Plaintiff walking past the private room reserved for [their] party."  (Mills Decl. ¶¶ 3-4.)  Restaurant staff were then asked to close the doors to the room.  (Mills Decl. ¶ 4.)  Mr. Justin Chang also submitted a declaration stating that Plaintiff's blog post made him believe that Plaintiff had "somehow stalked the travel of the Digital people and followed [them] to [their] hotel in Washington D.C.," and that he was "concerned for [his] safety and the safety and well-being of the Digital executives and Board members as a result of this knowledge."  (Justin Chang Decl. ISO Mot. for Sanctions ¶ 7, Dkt. No. 271-1.)

On February 12, 2018, Plaintiff filed a request for the Court to reopen discovery or terminate Defendants' motion for sanctions.  (Dkt. No. 274.)  Plaintiff asserted that he needed evidence "to disprove the Defendant[s'] accusations, many of which are criminal in nature."  (*Id.* at 2.)  Plaintiff also requested an extension of time to file his opposition.  (*Id.* at 3.)  On February 13, 2018, Defendants filed an opposition.  (Dkt. No. 275.)  That same day, the Court received an ex parte communication from Plaintiff, asking for expedited review of his motion to extend time.  (Dkt. No. 276.)

On February 20, 2018, the Court denied Plaintiff's request to reopen discovery, explaining that "the undersigned lacks authority to reopen discovery; such requests must be made of the

United States District Court
Northern District of California

presiding judge." (Dkt. No. 277 at 1.) The Court also disagreed that discovery was required to respond to Defendants' motion because "[t]here is no reason why discovery of *Defendants* is necessary for Plaintiff to counter Defendants' assertion of what *Plaintiff* allegedly did; Plaintiff has knowledge of whether or not he acted in the way Defendants assert." (*Id.*) Moreover, "Defendants' arguments appear to be primarily based on a publicly available article that Plaintiff published on his own website, which further highlights that the current dispute is about Plaintiff's actions, not Defendants'." (*Id.* at 2.) The Court then observed that Plaintiff's request for an extension of time was untimely and did not comply with Civil Local Rule 6-3(a), but granted Plaintiff's request, and gave Plaintiff until March 6, 2018 to file his opposition. (*Id.*) The Court stated that failure to timely file the opposition "**will** result in the Court granting Defendants' motion for sanctions as unopposed . . . ." (*Id.*)[5]

On February 27, 2018, Defendants filed a notice of unavailability, which was withdrawn on the same day. (Dkt. No. 279.) On February 28, 2018, Plaintiff filed a motion to strike the notice of unavailability, which suggested that the Court had improper communications with Defendants' counsel. (Dkt. No. 280 at 2 ("I can't speak to any 'special arrangements' because nothing in the record supports [Defendants' counsel's] statement. If special arrangements have been made with the Court without my knowledge, I must be informed").) Plaintiff also asserted that he had "fulfilled his obligations to meet and confer and will file the motion for sanctions." (*Id.*)

On March 6, 2018, the Court denied Plaintiff's motion to strike the notice of unavailability as moot, as the notice had already been withdrawn. (Dkt. No. 283 at 1.) With respect to Plaintiff's assertion that he had fulfilled his meet and confer obligations, the Court stated that it had "insufficient information to determine whether the meet and confer obligation was in fact met," and "remind[ed] the parties of their obligation to meet and confer in good faith." (*Id.*) The Court also reminded Plaintiff that to the extent his motion for sanctions was related to a discovery

---

[5] The Court acknowledged that Plaintiff was acting *pro se*, but noted that "the presiding judge has repeatedly warned Plaintiff of his obligation to comply with the Court's rules and deadlines." (Dkt. No. 277 at 2 n.2; *see also* Dkt. No. 116 n.1.; 218 at 2; 252 at 2; 255 at 2 n.1.)

dispute that could have been raised in the letter that was to be filed on March 14, 2017 and/or April 29, 2017, but was not, those disputes had been waived. (*Id.* at 2.)

On March 7, 2018, Plaintiff filed his untimely opposition to Defendants' motion for sanctions. (Plf.'s Opp'n, Dkt. No. 284.) Plaintiff asserted that Defendants' motion was "not a motion, it is an ex parte document in violation of Civil Local Rule 7-10." (*Id.* at 3.) Plaintiff did not dispute that he failed to comply with the July 11, 2017 discovery order, instead asserting that the documents Defendants sought were either in Defendants' possession, non-existent, or untimely and/or never properly requested. (*Id.* at 3-4.) Plaintiff concluded his opposition by stating that he intended to "pursue criminal charges for perjury and file motions to recover damages for the misuse of this legal process by the Defendants and their counsel who use it only to harass, annoy and delay proceedings," and asked that the Court "act impartially and sanction the Defendants to the maximum extent possible for their failed and frivolous filings," without specifying what those sanctions should be. (*Id.* at 9.)

On March 8, 2018, Plaintiff filed supporting declarations regarding the November 28, 2017 incident. In his declaration, Plaintiff stated that he did not know that Defendants would be at the restaurant, but that he and Mr. Raul Ruiz simply chose that restaurant because it was near the Supreme Court. (*Id.* at 6; *see also* Raul Ruiz Decl. ISO Plf.'s Opp'n ¶ 5, Dkt. No. 285; Paul Somers Decl. ISO Plf.'s Opp'n ¶ 3, Dkt. No. 285-1.) When Plaintiff and Mr. Ruiz arrived at the restaurant, they were in line behind Mr. Mills. (Ruiz Decl. ¶ 7; Somers Decl. ¶ 5.) Plaintiff asserts that he asked, "Josh Mills?" Mr. Mills turned around, and Plaintiff shook his hand, introducing himself. (*Id.*) Mr. Mills looked surprised and replied, "You son-of-a-b[***]h," pulling his hand away, before muttering something using the word "f[****]t." (*Id.*) Plaintiff and Mr. Ruiz finished lunch and left the restaurant, during which they assert that Defendant Digital Realty's people "appeared inebriated" and "drunk." (Ruiz Decl. ¶ 9; Somers Decl. ¶¶ 6-7.) While getting into their rideshare, Plaintiff and Mr. Ruiz ran into a man they later identified as Mr. Mark Patterson, a member of Defendant Digital Realty's board. (Ruiz Decl. ¶ 10; Somers Decl. ¶ 7.)

On March 13, 2018, Defendants filed their reply, requesting terminating sanctions. (Defs.' Reply at 2.) Defendants also filed declarations denying Plaintiff's assertion that anyone was

drunk, noting that no alcohol was served at the event, or that Mr. Mills had said what Mr. Somers claimed he said.  (Josh Mills Decl. ISO Defs.' Reply ¶¶ 4-5, Dkt. No. 286-1; *see also* Shireen Wetmore Decl. ISO Defs.' Reply, Exh. I, Dkt. No. 286-2.)

On March 20, 2018, Plaintiff filed a motion to recuse the undersigned, asserting that the undersigned was biased against Plaintiff and had "regular ex parte communications with the Defendants."  (Plf.'s Mot. to Recuse at 2.)  Plaintiff pointed to visits to Plaintiff's website in September 2017 and January 2018, which he believed were prompted by Defendants' counsel.  (*Id.* at 5-7.)  Plaintiff also pointed to the following statements: (1) the undersigned's statement during the deposition dispute on February 28, 2017 regarding how depositions should be a civil and open process, (2) Defendants' counsel's April 5, 2017 assertion to Plaintiff that the undersigned had sat through the March 21, 2017 meet and confer and had "a very clear recollection of the agreements that [the parties] made," and (3) Defendants' counsel being aware that the undersigned would be present at the March 21, 2017 meet and confer.  (*Id.* at 8-10.)  Plaintiff also criticized the April 14, 2017 order setting the schedule for the parties to raise their outstanding discovery disputes, asserting that he was only permitted to reply to Defendants' letter while Defendants got to file an initial letter and reply.  (*Id.* at 11.)  Plaintiff further challenged the undersigned's discovery orders, including the July 11, 2017 discovery order and July 13, 2017 protective order.  (*Id.* at 12-13.)

On April 3, 2018, Defendants filed their opposition to Plaintiff's motion to recuse.  (Defs.' Opp'n, Dkt. No. 292.)  Defendants also filed a request for judicial notice.  (Request for Judicial Notice ("RJN"), Dkt. No. 293.)[6]

Plaintiff's reply brief in support of his motion for recusal was due on April 10, 2018.  On April 11, 2018, Plaintiff filed a letter stating that his reply had been lost due to technological issues.  (Dkt. No. 300 at 1.)  The Court gave Plaintiff until April 18, 2018 to file his reply.  (Dkt. No. 303.)

---

[6] Defendants also filed separate evidentiary objections.  (Dkt. No. 294.)  These evidentiary objections violate Civil Local Rule 7-3, which states that "[a]ny evidentiary and procedural objections to the motion must be **contained within the brief or memorandum**."  (Emphasis added.)  For that reason, the Court does not consider Defendants' evidentiary objections.

On April 18, 2018, Plaintiff filed a letter stating that the extension of time was insufficient because he was still doing additional research, and that he needed more time. (Dkt. No. 306 at 1.) Plaintiff also argued that the undersigned could not decide the recusal motion and that all future holdings, such as the April 19, 2018 hearing, should be put on hold. (*Id.*) That same day, the Court denied Plaintiff's request for a further extension of time, explaining that the Court had granted his request for an extension of time because he claimed technological issues only. (Dkt. No. 307 at 1-2.) As Plaintiff had not previously asserted a need for additional time to conduct research, and had already been given an additional week to file his reply, the Court found that Plaintiff had failed to show good cause for any further extension. (*Id.* at 2.) The Court also denied Plaintiff's request to vacate the April 19, 2018 hearing date. (*Id.*)

On April 19, 2018, at 12:58 p.m., approximately half an hour before the scheduled hearing, Plaintiff e-mailed the Court stating that he had fallen ill the prior day and was "now being admitted to [the] hospital," and that "[t]he hearing for later this afternoon will have to be continued." (Dkt. No. 308.) Accordingly, the Court deemed Plaintiff's motion to recuse suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b), and vacated the April 19, 2018 hearing on that matter. (Dkt. No. 309 at 1.) As to Defendants' motion for sanctions, the Court permitted Plaintiff to file a request to continue the hearing, but required that any such request be accompanied by a declaration under penalty of perjury, and include extrinsic proof of Plaintiff's illness and subsequent hospitalization. (*Id.*) Defendants' counsel, who did not receive Plaintiff's e-mail in time, appeared at Court for the hearing. (Dkt. No. 310.) When defense counsel appeared for the hearing, the Court informed him Plaintiff would not be appearing due to an alleged illness.

On April 26, 2018, Plaintiff filed a proposed order for a continuance of the hearing on Defendants' motion for sanctions. (Dkt. No. 313.) Plaintiff did not file an actual motion, nor did he file the required declaration or extrinsic proof of his illness and subsequent hospitalization. On April 27, 2018, the Court denied Plaintiff's request and stated that it would decide Defendants' motion for sanctions on the papers. (Dkt. No. 315 at 2.)

## II.   DISCUSSION

### A.   Defendants' Request for Judicial Notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  A court may, therefore, take judicial notice of matters of public record. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

Defendants ask that this Court take judicial notice of: (1) Plaintiff filing fourteen filings between October 2017 and March 2018; (2) Plaintiff and Defendants' references to Plaintiff's website at "www.digitalcruelty.com" on the docket; (3) Defendants' reference to Plaintiff's website at Docket No. 155; and (4) various statements made by Plaintiff in filings on the dockets.

Each of Defendants' requests concern filings made on the docket.  The Court is not required to take judicial notice of information that is already a part of the record.  The Court, therefore, DENIES Defendants' request for judicial notice.

### B.   Plaintiff's Motion to Recuse

#### i.   Legal Standard

Plaintiff asserts that recusal is necessary because "[f]airness and impartiality ended with an Order on November 21, 2016 . . . ."  (Plf.'s Mot. to Recuse at 3.)  Plaintiff seeks the undersigned's recusal per 28 U.S.C. § 455(a) and 455(b).  (*Id.* at 1.)  In relevant part, 28 U.S.C. § 455 states:

> (a)   Any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b)   He shall also disqualify himself in the following circumstances:
>
> (1)   Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

The subjective standard for recusal under 28 U.S.C. § 455 considers "[w]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir.

1997) (internal quotation omitted).  The alleged bias must usually "stem from an extrajudicial source.  Judicial rulings alone almost never constitute valid basis for a bias or partiality motion." *Id.* at 1454 (internal quotation omitted).  Furthermore, "[o]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* (internal quotation omitted).

### ii.  Application

#### a.  "Independent Research" and Alleged Ex Parte Communications

Plaintiff's motion to recuse appears to be based primarily on two alleged visits by the Court to Plaintiff's website in September 2017 and January 2018.  (Plf.'s Mot. to Recuse at 4-7.)[7] Plaintiff makes two arguments based on these visits.  First, Plaintiff argues that this constitutes independent research of the facts.  (*Id.* at 4.)  Second, Plaintiff believes this is evidence that the undersigned has had ex parte communications with Defendants.  (*Id.* at 5-6.)

With respect to Plaintiff's first argument, as Defendants point out, Plaintiff's website has been a fact in the record since August 5, 2016.  (*See* Dkt. No. 114 at 3.)  Since then, Plaintiff's website has been raised in numerous filings, as well as Defendants inviting the undersigned to review Mr. Somers's blog in a February 28, 2017 phone call during Defendant Jacobs's deposition, in explaining why they were concerned about providing certain information to Plaintiff.  (*See* Dkt. Nos. 155 at 3; 169 at 3; 216 at 8; Ashe Decl. ISO Defs.' Opp'n, Exh. D.)  Furthermore, it is not clear what facts were purportedly researched during these alleged visits, and how these facts could have affected any rulings made by the Court.  Plaintiff appears to assert that the pages visited concerned Defendants' alleged misconduct on May 25, 2016.  (Plf.'s Mot. to Recuse at 4.) Plaintiff then cites to orders that rejected Plaintiff's attempts to seek sanctions on those facts.  (*Id.* at 7.)  Each of those orders, however, were issued **prior** to September 2017, when the first alleged visit was made.  (*See* Dkt. No. 189 (March 8, 2017 order setting the March 21, 2017 discovery

---

[7] Plaintiff asserts he has evidence of the visits, but relies on an exhibit that he failed to attach to his exhibit.  (*See* Somers Decl. ISO Mot. to Recuse, Dkt. No. 288-1.)

United States District Court
Northern District of California

hearing); 191 (March 15, 2017 order vacating the March 21, 2017 discovery hearing and deeming waived Plaintiff's outstanding discovery issues that should have been raised in letters due on March 14, 2017); 245 (July 11, 2017 discovery order adjudicating remaining discovery issues).) Finally, it is not clear how visiting a website that, as Plaintiff himself describes, was set up "to tell the Plaintiff's side of this litigation" would demonstrate bias against Plaintiff. (Plf.'s Mot. to Recuse at 4.)

As to Plaintiff's assertion that the visits demonstrate ex parte communications between the undersigned and Defendants, the Court disagrees. Again, as discussed above, the website has been brought to the Court's attention multiple times, including in a phone call that Plaintiff himself participated in. (*See* Ashe Decl. ISO Defs.' Opp'n, Exh. D.) Further, the Court has not had any ex parte communications with Defendants. (*See also* Ashe Decl. ISO Defs.' Opp'n ¶ 7; Shireen Yvette Wetmore Decl. ISO Defs.' Opp'n ¶¶ 3-5, Dkt. No. 292-3; Kyle Petersen Decl. ISO Defs.' Opp'n ¶¶ 3-4, Dkt. No. 292-2.) Indeed, the only ex parte communications the Court has had with a party in this case has been with *Plaintiff*; upon receipt of those communications, the Court had those communications filed on the docket. (*See* Dkt. Nos. 235, 237, 276.)

Plaintiff's other "examples" of ex parte communications also fail to demonstrate any ex parte communications. First, Plaintiff asserts that the undersigned's comment to Plaintiff that depositions should be civil and open processes was prompted by a "misrepresentation" of Plaintiff's character by Defendants' counsel during ex parte communications. (Plf.'s Mot. to Recuse at 8-9.) Again, not only were there no ex parte communications between the Court and Defendants, but there was a well-established history of a difficult discovery process between the parties; the Court had already issued nine orders on the parties' discovery disputes and inability to cooperate. (*See* Dkt. Nos. 110, 132, 138, 139, 159, 171, 172, 179, 184.)

Second, Plaintiff points to Attorney Ashe's statement that the undersigned had "'a very clear recollection of the agreements that [the parties] made'" during the March 21, 2017 meet and confer. (Plf.'s Mot. to Recuse at 9 (emphasis omitted).) The Court cannot speak to Mr. Ashe's belief, but Mr. Ashe most certainly was not speaking for the Court with that comment.

Finally, Plaintiff contends that Defendants knew that the March 21, 2017 meet and confer

would be four hours long and that the undersigned would attend, rather than being a standard one-hour meet and confer. (Plf.'s Mot. to Recuse at 9-10.) Plaintiff believes the only way Defendants would have known that would be through ex parte communications with the undersigned. Again, The Court disagrees. As the Court explained in its March 20, 2017 order, the very purpose of having the in-person meet and confer was "to give the parties an opportunity to effectively meet and confer on all remaining disputes, with the Court available to assist in any disputes that arose." (Dkt. No. 195 at 2.) Thus, both Plaintiff and Defendants were on notice from the Court's order that the in-person meet and confer would be as long as was necessary for the parties to discuss **all** remaining disputes, and that the undersigned would be available to assist with those discussions.

In short, there were no ex parte communications between the Court and Defendants. Plaintiff's asserted examples do not suggest otherwise, and would not cause "a reasonable person with knowledge of all the facts [to] conclude that the judge's impartiality might reasonably be questioned." *Hernandez*, 109 F.3d at 1453 (internal quotation omitted).

### b. Bias in Orders

In the alternative, Plaintiff argues that the Court's orders show material bias. (Plf.'s Mot. to Recuse at 10-13.) Again, "[j]udicial rulings alone almost never constitute valid basis for a bias or partiality motion." *Hernandez*, 109 F.3d at 1454. Regardless, the Court will discuss each of the orders in turn.

First, Plaintiff challenges the April 14, 2017 order establishing the schedule for the parties to file letters regarding their outstanding discovery disputes that had not been deemed waived. (Plf.'s Mot. to Recuse at 10-11; *see also* Dkt. No. 212.) Plaintiff asserts that he was "relegated to second class" because he was only allowed to respond to Defendants' letter while Defendants got to file an initial letter and reply. (*Id.* at 11.) As an initial matter, the parties agreed to the schedule to address the outstanding discovery issues during an April 11, 2017 phone call. (Dkt. No. 212 at 1.) Additionally, Plaintiff was permitted in his letter to both respond to Defendants' asserted discovery issues *and* raise his own issues, which Defendants were then able to respond to in their reply. Indeed, Plaintiff raised ten issues that the Court adjudicated in the July 11, 2017 discovery order, in addition to filing a supplemental response to Defendants' discovery letter that addressed

each of the points Defendants made.  (*See* Dkt. Nos. 220, 220-1.)

Second, Plaintiff argues that he was "improperly deprived of the right to obtain relevant discovery" based on the Court's March 15, 2017 order deeming Plaintiff's discovery issues waived for failure to timely file the letter due on March 14, 2017.  (Plf.'s Mot. to Recuse at 11; *see also* Dkt. No. 191.)  The presiding judge has already rejected Plaintiff's challenge to the March 15, 2017 order.  (*See* Dkt. No. 218.)  Moreover, Plaintiff's challenge to the propriety of the Court's decision is in violation of the presiding judge's August 22, 2017 order, which stated that: "In light of Plaintiff's abuse of the litigation process . . . Plaintiff is ordered not to file additional motions or declarations in connection with . . . other orders of the Magistrate Judge for which he has already sought review."  (Dkt. No. 255 at 4.)

Third, Plaintiff challenges the Court's decision to terminate Defendants' September 18, 2017 letter regarding Plaintiff's noncompliance with the July 11, 2017 discovery order, and to require that Defendants file a motion for sanctions.  (Plf.'s Mot. to Recuse at 11-12.)  Plaintiff himself argued that Defendants should be required to file a motion for sanctions.  (Dkt. No. 264 at 4.)  The Court agreed and terminated Defendants' September 18, 2017 letter, rather than deciding the sanctions issue on the basis of that letter.  (Dkt. No. 266.)  In any case, Plaintiff does not explain how this order demonstrates bias against him, as Plaintiff was given an additional opportunity to respond to Defendants' request for sanctions.

Fourth, Plaintiff contends that the undersigned did not permit Plaintiff to seek production of his Requests for Production Nos. 3 and 4.  (Plf.'s Mot. to Recuse at 12.)  The Court assumes Plaintiff refers to the July 11, 2017 discovery order, as Plaintiff does not specify otherwise.  (*See* July 11, 2017 Ord. at 13-14.)  That order was upheld in its entirety by the presiding judge.  (Dkt. No. 255.)  Further, to the extent Plaintiff challenges the propriety of the Court's July 11, 2017 discovery order, Plaintiff is in violation of the presiding judge's August 22, 2017 order prohibiting Plaintiff from filing additional motions or declarations in connection with the July 11, 2017 discovery order.  (*See id.* at 4.)  Additionally, the Court did not reject Plaintiff's arguments based on a purported failure to file a motion to compel, as Plaintiff claims.  The Court rejected Plaintiff's Request for Production No. 3 based on Plaintiff's failure to file the March 14, 2017 letter.  (July

11, 2017 Ord. at 13.)  The Court rejected Plaintiff's Request for Production No. 4 based on Plaintiff's failure to provide any explanation for why Defendants' objections were not justified; the Court also reviewed the responses and explained to Plaintiff why the responses were not obviously deficient.  (*Id.* at 13-15.)

Fifth, Plaintiff complains of the $1,000 monetary sanction in the Court's July 11, 2017 discovery order.  (Plf.'s Mot. to Recuse at 12.)  Again, this argument violates the presiding judge's August 22, 2017 order.  (Dkt. No. 255 at 4.)

Sixth, Plaintiff asserts that the undersigned has permitted Defendants to file "clearly false, sham motions and declarations with the objective of harassing and intimidating Plaintiff and damage his reputation."  (Plf.'s Mot. to Recuse at 12.)  In support, Plaintiff points to Defendants' June 27, 2017 motion for a protective order based on the harassing e-mail Plaintiff sent to Ms. Schubert, and the Court's July 13, 2017 protective order.  (*Id.*)  Again, this argument violates the presiding judge's August 22, 2017 order.  (Dkt. No. 255 at 4.)  Notably, the presiding judge not only rejected Plaintiff's challenge to the Court's July 13, 2017 order, but also described Plaintiff's e-mail as "abusive" and being in "bad faith."  (*Id.* at 3-4.)

In short, the orders challenged by Plaintiff, whether viewed individually or together, would not cause "a reasonable person with knowledge of all the facts [to] conclude that the judge's impartiality might reasonably be questioned."  *Hernandez*, 109 F.3d at 1453 (internal quotation omitted).

Accordingly, the Court DENIES Plaintiff's motion to recuse the undersigned.

## C.    Defendants' Motion for Sanctions

### i.    Legal Standard

Defendants seek sanctions based on Plaintiff's asserted violations of the July 11, 2017 discovery order and July 13, 2017 protective order.  (Defs.' Mot. for Sanctions at 1.)

"Federal Rule of Civil Procedure 37 provides for sanctions available for failure to make disclosures or cooperate in discovery."  *Gordon v. Cty. of Alameda*, No. CV-06-2997-SBA, 2007 WL 1750207, at *2 (N.D. Cal. June 15, 2007).  Specifically, Rule 37(2)(A) states that if a party "fails to obey an order to provide or permit discovery . . . the court where the action is pending

may issue further just orders," including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action" and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."

Additionally, "[c]ourts are invested with inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditions disposition of cases." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (internal quotation omitted). Those inherent powers include "the broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Id.* (internal quotation and modification omitted).

### ii. Application

#### a. Untimeliness of Opposition

As an initial matter, Plaintiff's opposition to Defendants' motion for sanctions was untimely. Plaintiff's opposition as due on March 6, 2018, yet Plaintiff did not file his opposition until March 7, 2018, and his supporting declarations until March 8, 2018. (*See* Dkt. No. 277; Plf.'s Opp'n; Somers Decl. ISO Plf.'s Opp'n; Ruiz Decl. ISO Plf.'s Opp'n.) When the Court granted Plaintiff's untimely request for an extension of time, the Court made clear that Plaintiff's failure to timely file "**will** result in the Court granting Defendants' motion for sanctions as unopposed." (Dkt. No. 277 at 2.) Plaintiff was well-aware of the deadline, yet failed to comply. Moreover, the presiding judge has repeatedly warned Plaintiff of his obligation to comply with the Court's deadlines. (*See* Dkt. Nos. 116 n.1; 218 at 2; 252 at 2; 255 at 2 n.1.) The Court would therefore be well within its authority to grant Defendants' motion in its entirety as being unopposed. The Court, however, will review Plaintiff's opposition on the merits.

#### b. Sanctions Regarding July 11, 2017 Discovery Order

Defendants seek sanctions based on Plaintiff's violation of the July 11, 2017 discovery order. Defendants assert that with the possible exception of the destruction of the e-mail chain that the Court found was at least partially privileged, Plaintiff has failed to perform the ten actions required by the Court in the July 11, 2017 discovery order. (Defs.' Mot. for Sanctions at 2, 5.)

In opposing the motion for sanctions, as a procedural matter, Plaintiff appears to deny that a motion is pending. (Plf.'s Opp'n at 2.) Instead, Plaintiff suggests that Defendants' motion is an "ex parte document in violation of Civil Local Rule 7-10." (*Id.* at 3.) The Court rejects this argument; this is a properly noticed motion, and Plaintiff makes no showing otherwise. Further, to the extent Plaintiff argues that Defendants were required to meet and confer, the Court stated in its November 1, 2017 order terminating Defendants' September 18, 2017 letter that the parties would not be required to conduct any further meet and confer. (Dkt. No. 266 at 1.)

Substantively, Plaintiff does not deny that he failed to comply with the July 11, 2017 discovery order. Instead, he argues that "[e]very single supposedly missing category of documents [Defendants] reference[] is either (1) in [Defendants'] possession, (attachments to the April 3, 2017 production of e-mails), (2) non-existent (All documents constituting the 'gating approval process'), or (3) untimely and/or never properly requested by [Defendants], let alone the subject of a discovery order." (Plf.'s Opp'n at 3-4.)

First, Plaintiff produces no evidence that Defendants possess the attachments to the April 3, 2017 production of e-mails. Further, Plaintiff was specifically required to produce those attachments. (July 11, 2017 Ord. at 4.) This order was upheld by the presiding judge. (Dkt. No. 255.) Plaintiff has no basis for refusing to comply with this order.[8]

Second, to the extent Plaintiff contends that there are no documents constituting the "gating approval process," Plaintiff cannot be required to produce such documents. Plaintiff, however, also cannot introduce such documents in any future motion practice or at trial, and to the extent Plaintiff makes any legal arguments, he would presumably lack any evidence in support.

Finally, Plaintiff argues that the remaining discovery was untimely and/or never properly requested by Defendants, and not the subject of a discovery order. (Plf.'s Opp'n at 3-4.) Although Plaintiff fails to provide any legal or factual support for this argument, it appears this claim is based on his claim that Defendants' final set of discovery requests were untimely because Plaintiff had not consented to electronic discovery or because an additional day should have been added per

---

[8] If no such documents existed, then Plaintiff would, of course, not be required to produce those documents. Plaintiff, however, does not make this argument.

an unspecified Federal Rule of Civil Procedure. (*See* Dkt. Nos. 254 at 2; 264 at 2.)

The Court rejects this argument. As an initial matter, Plaintiff never raised this argument in his response to Defendants' discovery letter, and there is no showing he raised it in objections to Defendants' discovery requests. (*See* Dkt. Nos. 220, 233, 235.) The argument is therefore waived. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection"). Notably, the issue of timing was raised with the presiding judge when Plaintiff sought review of the July 11, 2017 order, after which the presiding judge still denied Plaintiff's requests for reconsideration. (*See* Dkt. Nos. 254 at 2; 255.) Further, to the extent Plaintiff claims that the required actions are not the subject of a discovery order, Plaintiff ignores that these ten actions were specifically required by the Court in the July 11, 2017 discovery order. (July 11, 2017 Ord. at 18-19.) That order was affirmed by the presiding judge. (Dkt. No. 255.) Plaintiff's failure to comply with the July 11, 2017 order is unjustifiable, and warrants sanctions per Federal Rule of Civil Procedure 37(2)(A).

In the alternative, Plaintiff suggests that the Court is required to apply the five-factor test articulated by *Wanderer v. Johnston*, 910 F.2d 652 (9th Cir. 1990). (Plf.'s Opp'n at 4.) This five-factor test considers: (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the party seeking sanctions, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions. *See Wanderer*, 910 F.2d at 656. The Court finds this test would be satisfied by the sanctions that it will issue. As a general matter, "[t]he first two of these factors favor the imposition of sanctions . . . ." *Id.* Such is the case here, where Plaintiff's filings have unduly delayed resolution of this litigation, to the point that the presiding judge has determined Plaintiff's actions to be an "abuse of the litigation process." (Dkt. No. 255 at 4.) The third factor also favors sanctions, as Defendants will be prejudiced by the failure to obtain discovery necessary to defend their case. The fourth factor typically cuts against a default or dismissal sanction; here, however,

the Court finds that this factor is neutral, as the Court is not issuing terminating sanctions.[9]

The final factor, the availability of less drastic sanctions, also favors the grant of the below-listed sanctions, as the Court has given Plaintiff numerous chances to comply with his discovery obligations and the Court's orders, which Plaintiff has repeatedly resisted. Thus, it is clear further warnings and opportunities to comply will have no effect, necessitating the below-listed sanctions.

### c. Sanctions Regarding July 11, 2017 Discovery Order

First, Defendants seek an issue sanction that "Plaintiff was able to permanently leave Singapore immediately upon his termination from Digital Realty Trust." (Defs.' Mot. for Sanctions at 7.) Plaintiff was ordered to produce travel documents showing whether he left Singapore post-termination, including airline/hotel rewards program records, past information from airline accounts, hotel statements, and any other travel documentation. Plaintiff was also ordered to provide responses to interrogatories regarding his travel outside of Singapore and after his termination. (July 11, 2017 Ord. at 18, 19.) Plaintiff has failed to provide either, and the Court GRANTS this requested sanction.

Second, Defendants seek an evidentiary sanction preventing Plaintiff from soliciting or presenting anything regarding Mr. Ruiz's whereabouts or residency during the period from 2011 to 2014, including that Mr. Ruiz did reside in Singapore. (Defs.' Mot. for Sanctions at 7.) Plaintiff was ordered to produce evidence documenting the residency or travel of Mr. Ruiz from 2011 to June 2014, as well as his employment history during that time. (July 11, 2017 Ord. at 18-19.) Plaintiff did not do so. Therefore, the Court GRANTS the evidentiary sanction as modified: Plaintiff may not solicit or present anything about Mr. Ruiz's whereabouts or residency during the period from 2011 to *June* 2014, including arguing that he did in fact reside in Singapore.

Third, Defendants seek an issue sanction that "Plaintiff failed to mitigate any of his alleged

---

[9] In their reply, Defendants seek terminating sanctions. The Court DENIES this request. As an initial matter, it is improperly raised in a reply brief, meaning that Plaintiff has no opportunity to respond. Further, the Court finds that the issue and evidentiary sanctions it will grant are sufficient to limit the prejudice to Defendants. Thus, the fifth factor of the availability of less drastic sanctions would not support granting terminating sanctions.

economic damages." (Defs.' Mot. for Sanctions at 7.) Plaintiff previously asserted that he had

produced these documents, but had offered no evidence of the production. (July 11, 2017 Ord. at

6.) The Court had therefore ordered Plaintiff to produce *all* mitigation documents, even if

previously produced, and warned that Plaintiff's failure to comply would result in the Court

considering the Defendants' requested issue sanction that Plaintiff failed to mitigate his economic

damages. (*Id.*) Plaintiff has failed to comply, and therefore the Court GRANTS the requested

issue sanction.

Fourth, Defendants seek an issue sanction that "[i]n the several months prior to this

termination, Plaintiff was often out of touch with work, without notice, while traveling for

personal pleasure." (Defs.' Mot. for Sanctions at 7.) Defendants do not explain how any of the

actions ordered by the Court go to this issue.[10] The Court DENIES this requested issue sanction.

Fifth, Defendants seek an issue sanction that "Plaintiff was timely and fully reimbursed for

business expenses not identified by him prior to March 31, 2017. (Defs.' Mot. for Sanctions at 7.)

Plaintiff was ordered to produce bank statements and credit card receipts evidencing his expenses.

(July 11, 2017 Ord. at 18.) Plaintiff did not. An evidentiary sanction finding that Plaintiff was in

fact reimbursed for business expenses not identified by Plaintiff prior to March 31, 2017 appears

overbroad; instead, the Court GRANTS an evidentiary sanction that Plaintiff will not be permitted

to seek any damages based on business expenses that were not identified by Plaintiff prior to

March 31, 2017.

Finally, Defendants seek monetary sanctions of $5,000 each for Plaintiff's failure to

comply with the July 11, 2017 discovery order's requirement that he: (1) provide all evidence of

his mitigation of economic damages, (2) provide all attachments to the April 3, 2017 production of

e-mails, and (3) provide supplemental responses without objections to Interrogatories Set No. 3.

---

[10] In their September 18, 2017 letter, Defendants had argued that the bank statements and credit card receipts contain important evidence that will support Defendants' position that Plaintiff's extensive personal travel contributed to his poor performance. (Dkt. No. 256 at 4.) That was the first time Defendants had made such an argument; previously, Defendants only argued that the credit card and bank statements were related to Plaintiff's reimbursement claims. (*See* Dkt. No. 216 at 10 (only seeking evidentiary sanctions precluding Plaintiff from claiming damages for failure to reimburse, based on Plaintiff's failure to produce credit card receipts or bank statements).)

(Defs.' Mot. for Sanctions at 7.)  Defendants also seek a recommendation to the presiding judge that he approve a jury instruction explaining Plaintiff's failure to properly participate in the discovery process in good faith, and that the jury can draw a negative inference from that conduct. (*Id.*)  The Court DENIES the request for monetary sanctions.  Given Plaintiff's failure to pay the prior $1,000 monetary sanction and the lack of any deterrent effect on Plaintiff in continuing to resist discovery, the Court does not believe any further monetary sanctions will have the desired effect on Plaintiff.  The requested evidentiary and issue sanctions will have more significant impact in ensuring that Defendants are not prejudiced by Plaintiff's failure to cooperate in discovery.  Moreover, Plaintiff is ultimately acting pro se.  The Court also declines to recommend to the presiding judge that he approve a jury instruction explaining Plaintiff's failure to properly participate in the discovery process in good faith, and that the jury can draw a negative inference from that conduct.  Such an instruction could prove confusing to a jury, and in any case, the evidentiary and issues sanctions are sufficient to address Defendants' asserted harms.

### d.  Sanctions Regarding July 13, 2017 Protective Order

Having reviewed the parties' filings regarding the November 28, 2017 restaurant incident and Plaintiff's November 29, 2017 blog post, the Court does not believe that sanctions are warranted at this time.  While Plaintiff's November 29, 2017 blog post is inadvisable, and his comments on Mr. Mill's wife and children patently offensive, it does not appear to support Defendants' belief that Plaintiff was stalking Defendants' travel plans or trying to intimidate disclosed witnesses.  As Defendants point out, the blog post contains inaccurate information, including that Defendant Digital Realty's executives and board members were "feast[ing] on steak, lobster and fine wines."  This would suggest that Plaintiff was embellishing or speculating, not that Plaintiff was actually following Defendants.

The Court declines to decide the parties' dispute about what actually happened on November 28, 2017.  Such a dispute appears to fall outside the purview of this litigation, beyond highlighting how severely the discovery process in this case has broken down.  The Court believes all parties should refrain from speculating and making insinuations about the other, but at this juncture, the Court DENIES Defendants' request for sanctions based on an alleged violation of the

July 13, 2017 protective order.

### III.    CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's motion to recuse the undersigned, and GRANTS IN PART and DENIES IN PART Defendants' motion for sanctions. The Court grants the following sanctions:

(1)    Issue Sanction: "Plaintiff was able to permanently leave Singapore immediately upon his termination from Digital Realty Trust."

(2)    Evidentiary Sanction: Plaintiff may not solicit or present anything about Mr. Ruiz's whereabouts or residency during the period from 2011 to *June* 2014, including arguing that he did in fact reside in Singapore.

(3)    Issue Sanction: "Plaintiff failed to mitigate any of his alleged economic damages."

(4)    Evidentiary Sanction: Plaintiff  may not seek any damages based on business expenses that were not identified by Plaintiff prior to March 31, 2017.

Given Plaintiff's pro se status, the Court has afforded Plaintiff every opportunity to fully participate in the discovery process, instead of issuing sanctions.  Plaintiff's repeated failure to comply with his discovery obligations and the undersigned's orders, however, can no longer be accommodated.  Plaintiff's actions have had the effect of needlessly multiplying these proceedings, and wasting the time and resources of both Defendants and the Court.  The above granted sanctions are a last resort, which the Court has long sought to avoid ordering.

That said, the Court also observes that Defendants' own problematic behavior during discovery appears to have exacerbated the tensions between the parties.  (*See* Dkt. No. 138 at 2; 139 at 2; 159 at 1; 184 at 1; 199 at 2; 238 at 4; July 11, 2017 Ord. at 3 n.1.) While this does not justify or excuse Plaintiff's failure to cooperate in discovery, such behavior and its consequences highlights the importance of being civil and reasonable during the discovery process, even -- or perhaps, especially -- when one party is not represented.

IT IS SO ORDERED.

Dated: May 9, 2018

_Kandis Westmore_____

KANDIS A. WESTMORE
United States Magistrate Judge